UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN KABAK, AS TRUSTEE OF THE STEPHEN KABAK & JOY SCHARY LIVING TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, et al.,<br><br>Defendants. | Civil Action No. 20-2155 (SRC)<br><br>**OPINION & ORDER** |

**CHESLER**, District Judge

This matter comes before the Court on competing motions for appointment of a lead plaintiff and for approval of class counsel in this securities class action brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). On April 27, 2020, the Court received three separate motions by putative class members seeking to be appointed lead plaintiff, submitted by the following movants: named Plaintiff Stephen Kabak ("Kabak") [ECF 8]; Michael Kim ("Kim") [ECF 9]; and Industriens Pensionsforsikring A/S ("Industriens") [ECF 10]. Thereafter, Kabak withdrew his motion. The remaining motions by Kim and Industriens have been fully briefed, and the Court has considered all written submissions in connection with these motions, including a surreply filed by Kim. It proceeds to rule on the motions without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will appoint Industriens as Lead Plaintiff. It will also approve Industriens's selection of counsel to represent

1

the putative class, namely Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel and Carella Byrne Cecchi Olstein Brody & Agnello, PC ("Carella Byrne") as Liaison Counsel. Kim's motion will be denied in its entirety.

I. **BACKGROUND**

This putative class action was filed on February 27, 2020 by Kabak, a shareholder in Defendant Becton, Dickinson and Company ("Becton"), against Becton and several of Becton's current and former executive officers (collectively, "Defendants"). According to the Complaint, Becton is a medical technology company that "develops, manufactures, and sells a broad range of medical supplies, devices, laboratory equipment and diagnostic products." (Compl., ¶ 2.) One of these products is the Alaris pump, an infusion pump for the delivery of fluids, medication, and blood to patients of all ages.

The suit concerns Defendants' allegedly fraudulent statements and omissions regarding Becton's Alaris product. The Complaint alleges that, from November 5, 2019 to February 5, 2020, Defendants made misleading statements and omissions of material fact about software problems with the Alaris pump and the related need to remediate the problems as well as possibly recall the product. The Complaint further alleges that these misrepresentations and omissions artificially inflated the price of Becton's shares, which then fell nearly 12% on February 6, 2020. On that date, Becton disclosed, among other things, that it "expected revenue [for fiscal year 2020] to increase by only 1.5 to 2.5 percent, "'to reflect the impact of the remediation effort and anticipated loss of sales of the Alaris infusion system.'" (Compl., ¶ 3.) The Complaint seeks to recover the lost share value on behalf of a putative class of Becton investors consisting of "persons and entities that purchased or otherwise acquired Becton

securities between November 5, 2019 and February 5, 2020, inclusive (the "Class Period")." (Compl., ¶ 1.) It asserts claims for relief pursuant to Exchange Act Sections 10(b) and 20(a), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## II.   DISCUSSION

Under the PSLRA, the Court must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members . . . [i.e.] 'the most adequate plaintiff' . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute creates a presumption that the most adequate plaintiff is the investor that "has the largest financial interest in the relief sought by the class" and that "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); see also In re Cendant Corp. Litig., 264 F.3d 201, 263 (3d Cir. 2001) (holding that courts must apply the presumption set forth in the PSLRA). Once the presumption has been established, it may "be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). This Court proceeds, then, to apply this analysis to the competing motions brought by Industriens and Kim.

First, as to financial interest, the proof before the Court demonstrates that Industriens is the movant with the "largest financial interest" in the relief sought by the putative class of purchasers of Becton securities. According to the material submitted to the Court, Industriens has sustained losses of approximately $828,718. In contrast, competing movant Kim has lost

$143,045. Kim does not dispute that competing movant Industriens has lost over five times the amount he has lost as the alleged result of Defendants' securities fraud.

Second, as to the Rule 23 requirements, the Court is guided by the Third Circuit's holding that, in evaluating which member of the class in a PSLRA action should be appointed lead plaintiff, the inquiry "should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy." Cendant, 264 F.3d at 263. Industriens has demonstrated that it satisfies both of these criteria. The typicality requirement of Rule 23(a)(3) concerns whether a litigant's claims are "typical of the claims or defenses of the entire class." Fed. R. Civ. P. 23(a)(3). Industriens, like other class members, claims it purchased Becton securities during the Class Period at prices that were artificially inflated due to Defendants' allegedly misleading statements and omissions concerning the Alaris pump. Industriens has also satisfied Rule 23(a)(4)'s requirement of adequacy because it has made a prima facie showing that it can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Third Circuit has held that representation is adequate when a plaintiff "has the ability and incentive to represent the claims of the class vigorously," has obtained adequate counsel, and has interests which are sufficiently aligned with those of the absent class members. Cendant, 264 F.3d at 265. Industriens is a large and sophisticated institutional investor, with significant experience in leading class action suits under the PSLRA. These qualities, in addition to Industriens's own large stake in the dispute concerning Defendants' alleged fraud, demonstrate both the ability and incentive to litigate the class claims vigorously. Industriens's choice of counsel for the class further supports its adequacy as lead plaintiff. Kessler Topaz and Carella Byrne, the law firms selected by Industriens, are highly qualified and experienced in securities fraud class action litigation. Finally, as an investor in Becton securities claiming substantial

losses due to the alleged fraud, Industriens has demonstrated that its interests in recovering losses in securities purchased at allegedly artificially inflated prices aligns with the interests of other investors in the putative class. There is no indication that the claims asserted by Industriens in this suit conflict or would potentially conflict with the claims of the putative class as a whole.

In light of the foregoing, Industriens clearly satisfies the PSLRA's lead plaintiff requirements. It is, therefore, the presumptive lead plaintiff, and must be appointed to this role unless another class member comes forward with proof to rebut the presumption. 15 U.S.C. § 78u-4(a)(3)(B). The Third Circuit has held that "if no class member succeeds in rebutting the presumption, the district court should appoint the presumptive lead plaintiff as the lead plaintiff." Cendant, 264 F.3d at 268.

Kim does not come forward with any evidence demonstrating that Industriens is not the most adequate plaintiff to represent the class or otherwise make any attempt to rebut the presumption. Instead, Kim argues that he should be appointed as a co-lead plaintiff because, unlike Industriens, Kim traded in options in Becton securities and thus, he argues, he is the only movant with standing to assert claims stemming from options investments. Kim further maintains that as an individual investor, he would contribute a different perspective that would complement the leadership of a large, foreign investor such as Industriens.

The fragmented lead plaintiff arrangement Kim proposes finds no support in the PSLRA, which not only sets forth two objective factors for lead plaintiff but in fact requires that the class member meeting those factors be appointed to direct the litigation on behalf of all plaintiffs unless contrary evidence is presented. Kim's argument regarding Industriens's standing to assert the claims of options investors is unavailing. This expressed concern with a lead plaintiff's standing with respect to the claims of each and every class member does not override the

PSLRA's statutory scheme calling for the appointment of one lead plaintiff to exercise overall control of the litigation. Hevesi v. Citigroup Inc., 366 F.3d 70, 83 (2d Cir. 2004); see also Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 112 (2d Cir. 2013) (observing that, in light of the PSLRA's requirement, "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."). Indeed, with regard to the statutory directive for a lead plaintiff in securities class actions, the Second Circuit has noted that "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." Hevesi, 366 F.3d at 82 n.13. To the extent that the claims of class members that have purchased Becton options differ from the claims of Industriens, this consideration can be addressed by adding named plaintiffs on which the lead plaintiff can rely for aid in representing a class. See id. at 83. As noted by Industriens in response to Kim's motion, Kim cites no authority supporting his position that his status as an options trader in the subject securities warrants appointing him a "co-lead" plaintiff.

For the foregoing reasons, the Court therefore concludes that (1) Industriens qualifies under the PSLRA to serve as Lead Plaintiff in this securities fraud class action against Becton and the other Defendants and (2) Kim's motion to be appointed as a co-lead plaintiff lacks merit.

Industriens has also moved for the Court's approval of its selection of counsel to represent the class. The PSLRA authorizes the lead plaintiff to select and retain counsel, subject to the approval of the court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Third Circuit has indicated that a court should defer to the lead plaintiff's choice of counsel and intervene only if it is necessary to protect the interests of the class. Cendant, 264 F.3d at 273-74. Industriens has selected Kessler

Topaz to serve as lead counsel for the class and Carella Byrne to serve as liaison counsel. As noted above, both firms have extensive experience in litigating securities class actions, and their work in other lawsuits of a similar nature demonstrates that they are qualified to represent the putative class in this action. The Court will therefore approve the counsel selection made by Industriens.

### III.   ORDER

For the reasons set forth above, **IT IS** on this 9th day of June, 2020,

**ORDERED** that the motion filed by Michael Kim to be appointed lead plaintiff [ECF 9] be and hereby is **DENIED**; and it is further

**ORDERED** that the motion filed by Industriens Pensionsforsikring A/S to be appointed lead plaintiff [ECF 10] be and hereby is **GRANTED** and

**ORDERED** that, pursuant to  15 U.S.C. § 78u-4(a)(3)(B), Industriens Pensionsforsikring A/S is appointed to serve as Lead Plaintiff in this action; and it is further

**ORDERED** that, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), Industriens Pensionsforsikring A/S's selection of Kessler Topaz Meltzer & Check, LLP as Lead Counsel for the class and Carella Byrne Cecchi Olstein Brody & Agnello, PC as Liaison Counsel for the class is approved; and it is further

**ORDERED** that Lead Counsel shall have the authority to speak for all plaintiffs and class members in all matters regarding the litigation, including, but not limited to, pre-trial proceedings, motion practice, trial, and settlement; and it is further

**ORDERED** that Lead Counsel shall have the following responsibilities on behalf of Lead Plaintiff and the putative class:

a. to brief and argue motions;

b. to initiate and conduct discovery, including, but not limited to coordination of discovery with defendants' counsel and the preparation of written interrogatories, requests for admissions, and requests for production of documents;

c. to direct and coordinate the examination of witnesses in depositions;

d. to act as spokesperson at pretrial conferences;

e. to initiate and conduct any settlement negotiations with defendants' counsel;

f. to be the contact among plaintiffs' counsel and to direct and coordinate the activities of plaintiffs' counsel;

g. to consult with and employ experts; and

h. to perform such other duties as may be expressly authorized by further order of this Court; and it is further

**ORDERED** that no motions, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiff without the approval of Lead Counsel; and it is further

**ORDERED** that in the event Lead Counsel and/or Liaison Counsel enter into any future agreements, written or unwritten, with any other attorney, party, or putative class member regarding the allocation of fees and work relating to this matter, Lead Counsel and/or Liaison Counsel shall advise the Court of such agreement and shall submit the agreement to the Court for *in camera* review.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge