**CARELLA BYRNE CECCHI**
**OLSTEIN BRODY & AGNELLO, PC**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone:  (973) 994-1700

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Eric K. Gerard (*Pro Hac Vice*
application pending)
Melanie A. Rader (*Pro Hac Vice*
application pending)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Lead Plaintiff Industriens*
*Pensionsforsikring A/S and Lead*
*Counsel for the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BECTON, DICKINSON AND COMPANY, VINCENT A. FORLENZA, THOMAS E. POLEN, and CHRISTOPHER R. REIDY, <br><br> Defendants. | Case No. 2:20-cv-02155-SRC-CLW <br><br> Hon. Stanley R. Chesler <br> District Judge <br><br> Hon. Cathy L. Waldor <br> Magistrate Judge <br><br> **MOTION DAY:** November 2, 2020 <br><br> ORAL ARGUMENT REQUESTED |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO MICHAEL KIM'S MOTION FOR RECONSIDERATION OF ORDER
## APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

## TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ...................................................................1

II.    ARGUMENT.............................................................................................4

     A.     Legal Standard..................................................................................4

     B.     Mr. Kim Does Not Meet the "Heavy Burden" for Obtaining
         Reconsideration ................................................................................5

     C.     Mr. Kim's Motion Is Untimely under Local Civil Rule 7.1(i) ...........13

III.   CONCLUSION.......................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amatangelo v. Borough of Donora*,
212 F.3d 776 (3d Cir. 2000) ..............................................................................13

*Antoine v. Rucker*,
No. 03-3738(DRD), 2007 WL 789068 (D.N.J. Mar. 12, 2007).........................13

*In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act
(ERISA) Litig.*,
No. 09 MDL 2058(DC), 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010).......*passim*

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act
(ERISA) Litig.*,
No. 10 Civ. 275(PKC), 2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011).....7, 8, 10

*In re Barclays Bank Plc Sec. Litig.*,
No. 09 Civ. 1989 (PAC), 2016 WL 3235290 (S.D.N.Y. June 9, 2016)...............9

*Cevdet Aksut Ve Ogullari Koll, Sti. v. Cavusoglu*,
No. 14-3362 (WJM), 2014 WL 12815426 (D.N.J. Nov. 14, 2014) ...................13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ..........................................................2, 8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
MDL No. 12-2389, 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ...............8, 12

*Garrison v. Porch*,
No. 04-1114 (NLH), 2008 WL 1744730 (D.N.J. Apr. 11, 2008).......................14

*Harold Roucher Tr. U/A DTD 09/21/72 v. Franklin Bank Corp.*,
No. 4:08-cv-1810, 2009 WL 1941864 (S.D. Tex. July 6, 2009)...................11, 12

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) ................................................................................5

*Kabak v. Becton, Dickinson & Co.*,
No. 20-2155 (SRC), 2020 WL 3056281 (D.N.J. June 9, 2020) ..................*passim*

ii

*Krueger v. Wyeth, Inc.*,
No. 03cv2496 JLS (AJB), 2008 WL 481956 (S.D. Cal. Feb. 19, 2008)........9, 10

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
176 F.3d 669 (3d Cir. 1999) ................................................................................4

*Mitchell v. Twp. of Willingboro Municipality Gov't*,
913 F. Supp. 2d 62 (D.N.J. 2012) .....................................................................13

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
293 F.R.D. 483 (S.D.N.Y. 2013) .......................................................................11

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ......................................................................8

*Pearl v. Allied Corp.*,
102 F.R.D. 921 (E.D. Pa. 1984).............................................................................9

*Skladany v. Provanzano*,
No. 12-2497 (PGS), 2012 WL 5989380 (D.N.J. Nov. 28, 2012).........................5

*Takata v. Riot Blockchain, Inc.*,
No. 18-2293 (FLW) (TJB), 2019 WL 2710273 (D.N.J. June 26, 2019)............13

*Woerner v. Fram Grp. Operations, LLC*,
No. 12-cv-6648 (SRC), 2017 WL 6034146 (D.N.J. Dec. 5, 2017).....................4

*Woodson v. Unknown Agents of Unknown Agency*,
No. 14-7033 (RMB), 2015 WL 71156 (D.N.J. Jan. 6, 2015).....................2, 5, 12

**Other Authorities**

L.Civ.R. 7.1(i) ...........................................................................................4, 13

Fed. R. Civ. P. 60(b) ..........................................................................................4

Lead Plaintiff Industriens Pensionsforsikring A/S ("Industriens" or "Lead Plaintiff") respectfully submits this memorandum of law in opposition to Movant Michael Kim's ("Mr. Kim") motion for reconsideration (ECF No. 32) of the Court's order appointing a lead plaintiff and lead counsel.[1]

## I.      PRELIMINARY STATEMENT

On June 9, 2020, the Court appointed Industriens as Lead Plaintiff and approved Industriens's selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class and Carella Byrne Cecchi Olstein Brody & Agnello, PC ("Carella Byrne") as Liaison Counsel for the class. *See Kabak v. Becton, Dickinson & Co.*, No. 20-2155 (SRC), 2020 WL 3056281 (D.N.J. June 9, 2020) (the "Order"). In appointing Industriens Lead Plaintiff, the Court denied the competing motion filed by Mr. Kim, who argued that he should be appointed as a co-Lead Plaintiff alongside Industriens to represent Becton options traders because he "is the only party with *any* financial interest in Becton options contracts." *See* ECF No. 15 at 2 (emphasis in original); *see also* ECF No. 17. Specifically, the Court held that Mr. Kim's arguments did "not override the PSLRA's statutory scheme

---

[1]      Unless otherwise noted, all references to "ECF No. __" are to docket entries in *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co., et al.*, No. 2:20-cv-02155-SRC-CLW (D.N.J.), all emphasis is added, and all internal quotation marks and citations are omitted.

calling for the appointment of one lead plaintiff to exercise overall control of the litigation" and that Mr. Kim's motion therefore "lack[ed] merit." Order at *3-4.

Now, nearly *two months* after Lead Plaintiff filed an amended complaint, and in clear violation of Local Civil Rule 7.1(i)'s fourteen-day deadline for filing reconsideration motions, Mr. Kim contends that the Court should reconsider its Order and appoint him to serve as a "separate lead plaintiff for options purchasers." ECF No. 32 at 7. There is no basis for reconsideration. Mr. Kim has failed to establish "that the Court overlooked some dispositive factual or legal matter that was presented to it," and his reconsideration motion repackages arguments he raised in connection with the lead plaintiff motions. *Woodson v. Unknown Agents of Unknown Agency*, No. 14-7033 (RMB), 2015 WL 71156, at *2 (D.N.J. Jan. 6, 2015). Indeed, the Court has already appropriately determined that the Private Securities Litigation Reform Act of 1995 (the "PSLRA") "call[s] for the appointment of one lead plaintiff to exercise overall control of the litigation," and that Industriens should be that lead plaintiff here. Order at *3.

Moreover, Lead Plaintiff has appropriately exercised its discretion and authority to define the class. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) ("*Facebook II*") ("It is axiomatic . . . that a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class.").

2

Here, just as Lead Plaintiff has determined the appropriate length of the Class Period and the defendants to name in the action, Lead Plaintiff has also determined the appropriate claims to bring on behalf of the class *at this juncture*. Lead Plaintiff will continue to evaluate claims as the litigation unfolds and pursue claims in a manner consistent with their oversight of the litigation "as a whole." Order at *3 (quoting *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004)). Lead Plaintiff is fully empowered to make such decisions. *See In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058(DC), 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) ("*Bank of Am. I*") (refusing to allow options traders and debt holders to bring separate class actions where lead plaintiffs had chosen not to include them in class definition).

Mr. Kim and his counsel cannot circumvent the PSLRA and have themselves appointed to lead a sub-class of options traders by second-guessing Lead Plaintiff's litigation judgment. Case law makes clear that if Mr. Kim wishes to bring options-based claims against Defendants, the appropriate recourse is for him to file an individual action. *See, e.g.*, *id.* at *3 (holding that the excluded investors "are free to pursue their claims as individual cases-but not as class actions"). He has no right to litigate claims as a class action. *See id.* Indeed, any other result would guarantee that every securities class action would create a tangled web in which multiple investors demand separate leadership based on the class period pled, the defendants

3

named, the theories asserted, the corrective disclosures pursued, or the various types of securities purchased. This is the exact type of lawyer-driven litigation the PSLRA sought to end. Accordingly, the Court should deny Mr. Kim's motion for reconsideration.

## II.   ARGUMENT

### A.   Legal Standard

Federal Rule of Civil Procedure 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Because "[t]he purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence," a party seeking reconsideration must establish either "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A movant seeking reconsideration "bears a heavy burden" to meet the applicable standard. *Woerner v. Fram Grp. Operations, LLC*, No. 12-cv-6648 (SRC), 2017 WL 6034146, at *2 (D.N.J. Dec. 5, 2017). Further, this District's Local Civil Rules require reconsideration motions to be filed "within 14 days after the entry of the order or judgment on the original motion." L.Civ.R. 7.1(i).

### B.       Mr. Kim Does Not Meet the "Heavy Burden" for Obtaining Reconsideration

Mr. Kim argues that reconsideration is necessary "to prevent manifest injustice."  ECF No. 32 at 4.  "In the context of a motion to reconsider, the term 'manifest injustice' 'means that the Court overlooked some dispositive factual or legal matter that was presented to it'"—or, in other words, "an error in the trial court that is direct, obvious, and observable."  *Woodson*, 2015 WL 71156, at *2; *Skladany v. Provanzano*, No. 12-2497 (PGS), 2012 WL 5989380, at *2 n.2 (D.N.J. Nov. 28, 2012) (same).  No such error has occurred here.  Mr. Kim's entire argument depends on second-guessing Lead Plaintiff's litigation judgment.

As this Court has already recognized, *see* Order at *3, Industriens, as Lead Plaintiff, "is empowered to control the management of the litigation *as a whole*." *Bank of Am. I*, 2010 WL 1438980, at *2; *see also Hevesi*, 366 F.3d at 82 n.13 (stating that the "main purpose of having a lead plaintiff" is "to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole").  As a result, Lead Plaintiff is authorized "to decide what claims to assert on behalf of the class."  *Bank of Am. I*, 2010 WL 1438980, at *2.

Here, Lead Plaintiff and its counsel evaluated the potential claims and determined that it was not in the best interests of the *entire* class to assert claims on behalf of options traders at this time.  Lead Plaintiff will continue to evaluate claims and pursue options claims *if* doing so is in the whole class's best interest.  Lead

5

Plaintiff was well within its rights to make this judgment, just as Lead Plaintiff can, for example, determine, *inter alia*, the appropriate length of the Class Period, what defendants to name, and the theory of loss causation to pursue. Every decision a lead plaintiff makes cannot be subject to second-guessing by parties threatening to bring satellite class litigation.

The *Bank of America* litigation is instructive.[2] There, as here, "Lead Plaintiffs sue only on behalf of stock holders, and . . . elected not to sue on behalf of options holders" in the consolidated amended complaint. *See Bank of Am. I*, 2010 WL 1438980, at *2. Based on the allegations pled in the *Bank of America* consolidated amended complaint, investors who felt excluded from the defined class filed separate class actions on behalf of options traders and holders of debt securities, seeking appointment as lead plaintiff on behalf of those sub-classes. *See id.* After consolidating the options and debt actions with the original class action, the court declined to appoint any additional or separate lead plaintiffs, reasoning that "Lead Plaintiffs have the authority to decide what claims to assert on behalf of securities holders" and that "[p]ermitting other plaintiffs to bring additional class actions now, with additional lead plaintiffs and additional lead counsel, would interfere with Lead

---

[2]    The opinions from the *Bank of America* litigation were repeatedly cited in Lead Plaintiff's Opposition to Mr. Kim's unsuccessful effort to secure appointment as a co-lead plaintiff for options traders. *See* ECF No. 18 at 2-3, 7, 8, 9. Mr. Kim's instant motion makes no effort to distinguish these on-point authorities.

Plaintiffs' ability and authority to manage the Consolidated Securities Action." *Id.* Accordingly, the court concluded that options investors were "free to pursue their claims as individual cases-but not as class actions." *Id.* at *3.

Later in the *Bank of America* litigation—after the lead plaintiffs filed an amended complaint asserting claims on behalf of options traders, which the court dismissed for lack of standing—an options investor again sought to bring a separate class action on behalf of options traders, arguing that because the lead plaintiffs did not have standing to sue on behalf of options holders, the court should appoint a lead plaintiff to represent a class of options traders. *See In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 10 Civ. 275(PKC), 2011 WL 4538428, at *1 (S.D.N.Y. Sept. 29, 2011) ("*Bank of Am. II*"). The court disagreed, holding again that while the investor was "free to pursue his claims individually," he could "not assert claims on behalf of a class of options holders." *Id.* at *2. The court explained that, while the lead plaintiffs had "not sought leave to add additional class plaintiffs or otherwise attempted to amend the complaint to revive their claims on behalf of options holders," "[s]uch tactical decisions are the prerogative of a lead plaintiff." *Id.* at *1. As the court explained, "[i]nevitably, any class definition establishes boundaries as to who may recover," and "a lead plaintiff necessarily makes determinations that limit the class of shareholders." *Id.* at *2.

Ultimately, the "[i]ndividuals excluded from the class may pursue individual claims." *Id.*

The same reasoning applies here. It is Lead Plaintiff's "prerogative" to "establish[] boundaries" around the class definition—including, for example, the length of the Class Period and the types of securities included in the class—just as the lead plaintiffs in the *Bank of America* litigation twice opted to do. *Id.* at *1-2; *see also, e.g.*, *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 239 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) (rejecting settlement objections lodged by investors who were excluded from the class because "the decision whether to include GM warrant holders in this litigation fell within [New York State Teachers' Retirement System's] discretion as lead plaintiff"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2013 WL 4399215, at *4 (S.D.N.Y. Aug. 13, 2013) ("*Facebook I*") (citing the *Bank of America* litigation for proposition that "it is settled law that a litigant may not assert a separate class action to bring claims that the lead plaintiff has determined not to pursue on a class basis"); *Facebook II*, 343 F. Supp. 3d at 410 ("It is axiomatic . . . that a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class.").

Nor does Lead Plaintiff's decision not to pursue claims on behalf of options holders at this juncture implicate Lead Plaintiff's adequacy. Here, Lead Plaintiff has

not—as Mr. Kim suggests—failed to "pursue the interests of the entire Class zealously" by limiting the class to stockholders at this stage.  *See* ECF No. 32 at 3. Like options holders, investors who purchased Becton, Dickinson and Company common stock before November 5, 2019, or after February 5, 2020, are similarly not in the class at this point.  Lead Plaintiff can reassess the scope of the class as the case unfolds.  *See, e.g.*, *In re Barclays Bank Plc Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2016 WL 3235290, at *7 (S.D.N.Y. June 9, 2016) (rejecting a challenge to the adequacy of a lead plaintiff who declined to pursue certain types of claims, because the lead plaintiff "is permitted to make tactical decisions to pursue some claims and not others," and because the alternative—"denying certification and depriving [the lead plaintiff] of the opportunity to pursue any claims on behalf of the class"—would "leave the proposed class far worse [off]").[3]

---

[3]    The cases Mr. Kim cites in support of his claim that the exclusion of options investors undermines Lead Plaintiff's adequacy, *see* ECF No. 32 at 4, are inapposite, as both involve *res judicata* concerns (in non-PSLRA cases) that are not implicated here.  Specifically, the lead plaintiffs in both *Pearl* and *Krueger* asserted claims on behalf of a broad class before later abandoning the pursuit of ***certain categories of damages*** at class certification—leaving certain class members with no (or only partial) remedies.  *See Pearl v. Allied Corp.*, 102 F.R.D. 921, 924 (E.D. Pa. 1984) (noting that the plaintiffs abandoned claims for damages resulting from present physical injury, diminution in property value, or breach of express warranty at class certification—thereby exposing absent class members to the risk that they would be "precluded by the doctrine of *res judicata* from asserting those claims in subsequent actions"); *Krueger v. Wyeth, Inc.*, No. 03cv2496 JLS (AJB), 2008 WL 481956, at *3-4 (S.D. Cal. Feb. 19, 2008) (finding plaintiff inadequate because her abandonment of claims for damages and punitive damages (but not statutory damages) at the class certification stage raised *res judicata* concerns and constituted

Additionally, Mr. Kim has no absolute right to pursue a separate class action, rather than an individual action.  As the court in the *Bank of America* litigation repeatedly recognized, the appropriate recourse for investors who disagree with a lead plaintiff's litigation decision is to file individual claims.  *See Bank of Am. I*, 2010 WL 1438980, at *3 (stating that options traders "are free to pursue their claims as individual cases-but not as class actions"); *Bank of Am. II*, 2011 WL 4538428, at *2 ("[The options trader] may not assert claims on behalf of a class of options holders.  He remains free to pursue his claims individually.").[4]  Mr. Kim's preferred approach, which would allow him to instead represent a separate class of options holders, "invites the type of lawyer-driven litigation that the PSLRA seeks to avoid, and would likely promote near endless skirmishes about securities holders who fall outside a class definition and the degree to which their exclusion implicates matters of standing." *Id.*  Indeed, in this framework, "any consolidated securities fraud class action might then carry with it a corresponding ecosystem of separate class actions

---

improper claim splitting).  *Res judicata* concerns do not exist here and Mr. Kim's citations do not undermine PSLRA-specific case law directly rejecting his effort to undermine Lead Plaintiff's litigation decisions. *See, e.g.*, *Bank of Am. I*, 2010 WL 1438980, at *3.  Mr. Kim's motion continues his tactic of throwing arguments against the wall in the hope that one will stick. *See* Order at *3 ("Kim cites no authority supporting his position").

[4]    Mr. Kim's stated concern about the future expiration of the statute of limitations is unwarranted given that investors who wish to assert claims in connection with their options investors retain the ability to do so through individual actions.

seeking relief on behalf of securities holders whose claims vary from the lead plaintiffs." *Id.* Mr. Kim's request for a separate class of options holders should thus be denied.

*Franklin Bank* and *New Oriental*, cited by Mr. Kim, *see* ECF No. 32 at 6-7, do not support a different result. The courts in both cases initially appointed lead plaintiffs who had pledged to assert claims on behalf of purchasers of all securities, but backtracked on their assurances and later defined their classes more narrowly.

In *In re New Oriental Education & Technology Group Securities Litigation*, the court allowed an options trader to pursue claims on an individual basis (and left open the possibility of certifying an options class) after the lead plaintiff reneged on its promise to pursue claims on behalf of options investors in the consolidated action. 293 F.R.D. 483, 488-89 (S.D.N.Y. 2013). Critically, the court's decision turned on the fact that the appointment of the lead plaintiff ***was pursuant to a stipulation*** between various movants and the lead plaintiff secured the movants' acceptance of that stipulation only by promising that the consolidated action would assert claims on behalf of options investors. *Id.* at 488.

Similarly, in *Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*, the court appointed a separate lead plaintiff to represent options investors only after the initial lead plaintiff filed an amended complaint excluding options investors after "repeatedly stating that it would represent all purchasers of

[company] securities." No. 4:08-cv-1810, 2009 WL 1941864, at *1 (S.D. Tex. July 6, 2009).

No unfulfilled promises exist here, and there is no basis for reconsideration. *See Facebook I*, 2013 WL 4399215, at *5 (distinguishing *New Oriental* on the basis that the court there "severed the options claims specifically because [the lead plaintiff] induced the options plaintiff to 'stipulate[] to a lead plaintiff based on representations that the options class would be included in the action'") (alteration in original). To the contrary, Lead Plaintiff explicitly argued in its lead plaintiff briefing that options traders are *not* entitled to be included in the ultimate class, and could properly be excluded while remaining free to pursue individual (but not class) claims. *See, e.g.*, ECF No. 18 at 8-9 (quoting the *Bank of America* litigation for the proposition that options traders "are free to pursue their claims as individual cases-*but not as class actions*").

In sum, there is no "manifest injustice" by the Court, *Woodson*, 2015 WL 71156, at *2, and reconsideration of the Court's Order is unwarranted given that the Court properly empowered Lead Plaintiff to control the litigation, and Lead Plaintiff appropriately and consistently exercised its discretion and authority in defining the class. Moreover, Mr. Kim and other options traders remain free to pursue individual claims against the defendants.

12

## C.      Mr. Kim's Motion Is Untimely under Local Civil Rule 7.1(i)

Mr. Kim's motion—filed 115 days after the Order at issue—is also untimely. The Local Civil Rules require a motion for reconsideration be "served and filed within 14 days after the entry of the order or judgment on the original motion." L.Civ.R. 7.1(i); *see also Takata v. Riot Blockchain, Inc.*, No. 18-2293 (FLW) (TJB), 2019 WL 2710273, at *2 (D.N.J. June 26, 2019) (holding that the fourteen-day deadline under Local Civil Rule 7.1(i), and not the one-year deadline under Federal Rule of Civil Procedure 60, applies to motions for reconsideration of orders appointing lead plaintiffs).  A motion for reconsideration "may properly be denied solely on the basis that it is not timely filed."  *Cevdet Aksut Ve Ogullari Koll, Sti. v. Cavusoglu*, No. 14-3362 (WJM), 2014 WL 12815426, at *1 (D.N.J. Nov. 14, 2014) (denying as untimely a motion for reconsideration filed fifteen days after the entry of the order at issue); *see also Mitchell v. Twp. of Willingboro Municipality Gov't*, 913 F. Supp. 2d 62, 78 (D.N.J. 2012) (holding that a motion for reconsideration filed twenty-eight days after the court entered its order "is untimely as it was filed outside the fourteen-day period prescribed by L. Civ. R. 7.1(i) and can be denied on this ground alone"); *Antoine v. Rucker*, No. 03-3738(DRD), 2007 WL 789068, at *1 (D.N.J. Mar. 12, 2007) ("A motion filed untimely may be denied for that reason alone.").  Indeed, an untimely motion for reconsideration is "void and of no effect." *Amatangelo v. Borough of Donora*, 212 F.3d 776, 780 (3d Cir. 2000).

13

Even if Lead Plaintiff's filing of the amended complaint somehow altered the legal landscape so as to prevent Mr. Kim's motion from being untimely *vis-à-vis* the Order—an argument Mr. Kim has not made—Mr. Kim never explains his continued delay. Specifically, the amended complaint was filed on August 10, 2020, *see* ECF No. 31, and Mr. Kim did not move for reconsideration until nearly ***two months*** later on October 2, 2020. *See* ECF No. 32. The litigation is continuing and the parties are currently briefing defendants' motion to dismiss. *See* ECF No. 36. There is no reason to inject any delay in this litigation to accommodate Mr. Kim's tardy motion. Mr. Kim's motion is untimely and may be denied for this reason alone. *See, e.g.*, *Garrison v. Porch*, No. 04-1114 (NLH), 2008 WL 1744730, at *2 (D.N.J. Apr. 11, 2008) (finding untimely a motion seeking reconsideration based on new developments in case law, where the motion was filed months after the intervening decisions and the movant provided no explanation for his additional delay).

## III.    CONCLUSION

For the reasons stated above, Lead Plaintiff respectfully requests that the Court deny Mr. Kim's motion for reconsideration.

Dated:  October 19, 2020                    Respectfully submitted,

                                            s/ *James E. Cecchi*
                                            James E. Cecchi
                                            Donald A. Ecklund
                                            **CARELLA BYRNE CECCHI**
                                            **OLSTEIN BRODY & AGNELLO, PC**

14

5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Eric K. Gerard (*Pro Hac Vice* application pending)
Melanie A. Rader (*Pro Hac Vice* application pending)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jdancona@ktmc.com
egerard@ktmc.com
mrader@ktmc.com

*Counsel for Lead Plaintiff Industriens*
*Pensionsforsikring A/S and Lead Counsel*
*for the Putative Class*

15

## <u>CERTIFICATE OF SERVICE</u>

I, James E. Cecchi, hereby certify that on October 19, 2020, I caused a true and correct copy of the foregoing memorandum of law to be electronically filed with the Clerk of the Court using the ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 19, 2020

*s/ James E. Cecchi*
James E. Cecchi
**CARELLA BYRNE CECCHI**
**OLSTEIN BRODY & AGNELLO, PC**
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for the Putative Class*

16