**CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, PC**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Eric K. Gerard (admitted *Pro Hac Vice*)
Melanie A. Rader (admitted *Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Lead Plaintiff Industriens
Pensionsforsikring A/S and Lead Counsel
for the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, VINCENT A. FORLENZA, THOMAS E. POLEN, and CHRISTOPHER R. REIDY,<br><br>Defendants. | Case No. 2:20-cv-02155-SRC-CLW<br><br>Hon. Stanley R. Chesler<br>District Judge<br><br>Hon. Cathy L. Waldor<br>Magistrate Judge<br><br>**MOTION DAY**: December 21, 2020 |

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFF'S MOTION TO STRIKE

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT ........................................................................................................................4

I.   Defendants' Safe Harbor Argument Cannot Be Understood Without Reference to the Appendix, Which Extends the Argument of the Brief....................................................6

    A.   Defendants Identify Which Portions of the Alleged Misstatements They Claim to Be Forward-Looking *Only* In Their Color-Coded Appendix, Not In Their Brief............................................................................................. 7

    B.   Defendants Connect Cautionary Language to the Alleged Misstatements *Only* In the Appendix, Not In Their Brief........................................... 10

    C.   Other Statements and Alleged Corresponding Cautionary Language Are Not Discussed In the Brief *At All* ........................................................ 12

II.  The Appendix Contains a Host of Additional Legal Arguments Not Found In Defendants' Brief.................................................................................................13

III. There Is No Legal Basis for Considering the Appendix........................................15

CONCLUSION....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acadia Pharm. Inc. Sec. Litig.*,
2020 WL 2838686 (S.D. Cal. June 1, 2020)................................................................17

*Alexander v. Murdoch*,
2011 WL 2802899 (S.D.N.Y. May 27, 2011) .......................................................15, 16

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)..........................................................................................4

*Capaldi v. BJ's Wholesale Club, Inc.*,
2020 WL 2569965 (D.N.J. May 21, 2020) ...................................................................15

*Flaherty v. Filardi*,
2009 WL 749570 (S.D.N.Y. Mar. 20, 2009) ................................................................15

*Hill v. Myszak*,
2016 WL 1267757 (N.D. Ind. Mar. 30, 2016)..............................................................13

*King v. Enter. Rent-A-Car Co.*,
231 F.R.D. 255 (E.D. Mich. 2004) .................................................................................6

*In re Merck Co., Inc., Sec., Derivative & "ERISA" Litig.*,
2006 WL 8460903 (D.N.J. Jan. 20, 2006) ...................................................................4, 5

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002)..........................................................................................4

*In re Navient Corp. Sec. Litig.*,
2019 WL 7288881 (D.N.J. Dec. 30, 2019).....................................................................5

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ......................................................................................5

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000).............................................................................................4

*In re Paine Webber Sec. Litig.*,
1992 WL 725359 (S.D.N.Y. Sept. 18, 1992)................................................................15

*In re PTC Therapeutics, Inc. Sec. Litig.*,
2017 WL 3705801 (D.N.J. Aug. 28, 2017) ....................................................................5

*Steinberg v. Nationwide Mut. Ins. Co.*,
   224 F.R.D. 67 (E.D.N.Y. 2004) ......................................................................................16

*In re Synchronoss Sec. Litig.*,
   705 F. Supp. 2d 367 (D.N.J. 2010) ..................................................................................4

*Tadros v. Celladon Corp.*,
   2016 WL 5870002 (S.D. Cal. Oct. 7, 2016) ....................................................................5

*Thompson v. Eva's Vill. & Sheltering Program*,
   2008 WL 4661802 (D.N.J. Oct. 20, 2008).....................................................................15

**Other Authorities**

Fed. R. Civ. P. 12.................................................................................................................4, 16, 17

Fed. R. Evid. 201 ....................................................................................................................2, 3, 4

Local Civil Rule 7.1 ....................................................................................................................16

Local Civil Rule 7.2.................................................................................................................3, 16

Lead Plaintiff Industriens Pensionsforsikring A/S ("Plaintiff") respectfully submits this Memorandum of Law in support of its motion to strike Appendix A (ECF No. 36-2) ("Appendix" or "App'x") and all argument relying on the Appendix,[1] which was submitted along with Defendants' Motion to Dismiss the Amended Class Action Complaint (ECF No. 36) ("Motion to Dismiss" or "MTD") and Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint (ECF No. 36-1) ("Brief").[2]

**INTRODUCTION**

Accompanying their Motion to Dismiss, Defendants filed the Appendix, a thirty-page, intricately color-coded chart—complete with a "key" to explain its content—that they use as a vehicle for legal argument not included in their Brief. In some instances, Defendants present additional specificity in the Appendix that is necessary to make the arguments of their Brief intelligible. In others, Defendants present argument contained nowhere in the Brief. Their gambit to expand the unambiguous limits of the Parties' briefing through this extrinsic document is not permissible, and it should not be entertained.

The Appendix must be rejected for at least three reasons. ***First***, it is used to amplify and explain a safe-harbor section of Defendants' Brief that cannot be understood ***without*** reference to the Appendix. For example, Defendants fail to identify ***any*** of the specific portions of the alleged misstatements to which their safe-harbor claims supposedly apply within the four corners of their Brief. Instead, Defendants rely on the green-colored text in the Appendix (one of four colors employed, each representing a distinct legal argument) to point the Court to discrete portions of

---

[1] On November 18 and 20, 2020, counsel for Plaintiff and Defendants conferred regarding the Appendix but were unable to resolve this dispute.

[2] Unless otherwise defined capitalized terms have the meanings ascribed to them in the Amended Class Action Complaint (ECF No. 31) ("Complaint" or "Compl."), all emphasis is added, and all internal citations and quotation marks are omitted.

1

long passages that they contend fall within the safe harbor. Similarly, the Appendix is the *only* place in Defendants' papers where they link and identify the cautionary language that they claim protects particular statements—necessary connective tissue for their argument that Defendants should have set forth in their Brief, but did not. Finally, the Appendix argues for the first time that certain statements incorporate by reference wholly extrinsic "cautionary language" that, until the Appendix, neither Plaintiff nor the Court had heard.

*Second*, the Appendix supplements arguments noted in the Brief with additional, crucial detail. Its elaborate color-coding, underlining, and argument "Category" column advance specific legal points regarding each alleged misstatement—indeed, parsing particular clauses of each individual statement—that Defendants fail to present in the Brief.[3] Yet a motion seeking dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) is not meant to be simply a preliminary introduction, presenting case law and general propositions, with the real work of applying the movant's arguments to the allegations reserved for an appended chart two-thirds the length of the movant's primary brief.

*Third*, Defendants have provided no legal basis for considering their improper Appendix, and Plaintiff has found none. Defendants separate the Appendix from the documents they argue the Court may judicially notice: Exhibits A-N (ECF Nos. 36-4 - 36-17) to the Declaration of James P. Smith III (ECF No. 36-3) ("Smith Decl."). *See* Brief 6 n.5. On this point, at least, they are correct, as Federal Rule of Evidence 201 does not permit judicial notice of such an obvious piece of advocacy. *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts "generally known within

---

[3] According to Defendants, the Appendix lists, for "each of the twenty-five purported misstatements": "(a) the paragraph of the Complaint in which it is alleged; (b) when, by whom and in what document it was made; and (c) *on what grounds it should be dismissed*." Brief 10 n.12.

2

the trial court's territorial jurisdiction" or those that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Yet Defendants provide no other justification for its consideration either, noting only that provision of these arguments not contained in their Brief is for "ease of reference." Brief 10 n.12. This is not a legitimate basis on which to ask the Court to consider extraneous material. To the contrary, the Appendix is improper argument beyond the Court's generous extension of the local page limits that flouts the Local Civil Rules and skirts the Federal Rules of Civil Procedure. Therefore, it should be stricken, just as courts across the country have rejected similar addenda when faced with similar attempts by parties to expand their briefing improperly.

## BACKGROUND

On October 7, 2020, the Court granted Defendants' consented-to request (ECF Nos. 33-34) for permission to file a motion to dismiss brief of forty-five pages in length and twelve-point font, exceeding the forty-page/fourteen-point font (or thirty-page/twelve-point font) limit provided by Local Civil Rule 7.2(d). ECF No. 35. On October 9, 2020, Defendants filed a forty-five-page/twelve-point-font Brief accompanying their Motion to Dismiss, attaching, *inter alia*, the Appendix, a thirty-page, single-spaced, multi-colored chart.

The chart contains six columns including "Stmt.," "Compl. ¶," "Source (Speaker/Document)," "Alleged Misstatement," "Category," and "Cautionary Language (Where Statement is Forward-Looking)." App'x 1. The "Alleged Misstatement" column purports to include the text of each alleged misstatement in the Complaint. Defendants divide each statement in the "Alleged Misstatement" column into separate parts or clauses, assigning to various clauses or portions of the statement one of four colors of ink (blue, green, purple, and red) that they wish to set off from the remaining statement text in black. In a "key" included on the final page,

Defendants explain that each font color corresponds to a different legal basis supporting dismissal of the statement in question. *Id.* 30.

## ARGUMENT

In evaluating a motion to dismiss, a court generally may not consider "matters extraneous to the pleadings" without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also* Fed. R. Civ. P. 12(d). The Third Circuit observes two narrow exceptions to this general prohibition. First, a court may consider documents attached to a motion to dismiss if the "document [is] integral to or explicitly relied upon in the complaint." *Burlington*, 114 F.3d at 1426 ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *see also Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (same). Second, a court may take judicial notice of a fact when it is "not subject to reasonable dispute." Fed. R. Evid. 201(b); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). Defendants offer no argument or authority for the proposition that their Appendix falls within either of these exceptions; indeed, Defendants offer no authority at all to support consideration of the Appendix.[4]

---

[4] The fact that the Appendix contains extensive argument and advocacy over contested facts at the heart of this dispute constitutes a further reason that it is not the proper subject of judicial notice. *See In re Merck Co., Inc., Sec., Derivative & "ERISA" Litig.*, 2006 WL 8460903, at *3 (D.N.J. Jan. 20, 2006) ("[a] judicially noticed fact must be one not subject to reasonable dispute") (citing Fed. R. Evid. 201(b)). While "facts capable of immediate and certain verification . . . whose accuracy is beyond dispute" may be properly judicially noticed, "accurate records or other sources of a judicially-noticed fact must necessarily exist and be known to the court." *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 390-91 (D.N.J. 2010). Here, whether the alleged misstatements are actionable is a central question of this action, and supplementary briefing setting forth a range of arguments against and defenses to Plaintiff's allegations cannot reasonably be construed as judicially noticeable. Such partisan advocacy is also not subject to incorporation by reference. *Cf. Merck*, 2006 WL 8460903, at *5 (incorporating by references documents on which plaintiffs' claims were based).

Outside the doctrines of incorporation-by-reference and judicial notice, the dispositive inquiry in determining whether an extraneous document (such as the Appendix) may be considered at the motion-to-dismiss stage is whether that document extends the offering party's legal argument beyond the party's briefing. To be sure, courts sometimes permit the attachment of non-substantive, purely organizational appendices that merely compile—without argument—material set forth fully in the briefing or that is otherwise subject to the doctrines of incorporation by reference or judicial notice. *See, e.g.*, *Merck,* 2006 WL 8460903, at \*4-5 (accepting for consideration chart compiling SEC Forms 4). However, those courts that do so make clear that such "organizational tools" are permitted precisely because they contain no legal argument and do not prejudice the plaintiff. *See, e.g.*, *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at \*3 n.5 (D.N.J. Aug. 28, 2017) (finding chart admissible because it does not prejudice plaintiff and "does nothing more than organize portions of the AC (reprinted verbatim) and refer to arguments already raised in the papers"); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 65 (S.D.N.Y. 2009) (permitting appendix whose contents did not "rise[] to the level of legal argument," where the appendix "***does not constitute an impermissible continuation of the [defendants'] legal argument***").

When an addendum ***does*** continue the defendant's argument, the document is improper, and it is disregarded. *See, e.g.*, *In re Navient Corp. Sec. Litig.*, 2019 WL 7288881, at \*7 (D.N.J. Dec. 30, 2019) ("It is the Defendants' version of facts, legal arguments . . . and transcripts supporting same that comprise the majority of Exhibit 8. . . . Accordingly, this request [for judicial notice] is denied."); *Tadros v. Celladon Corp.*, 2016 WL 5870002, at \*8, \*8 n.5 (S.D. Cal. Oct. 7, 2016), *aff'd*, 738 F. App'x 448 (9th Cir. 2018) (striking "argumentative" column headings while otherwise considering a chart containing an "***unaltered***" set of "allegedly misleading statements");

5

*King v. Enter. Rent-A-Car Co.*, 231 F.R.D. 255, 265 (E.D. Mich. 2004) ("Defendants added a twenty-two page [exhibit], which supposedly summarizes each of the Plaintiff's specific claims and cites evidence to refute those assertions. This, too, is tantamount to additional argument going to the merits. . . . [and] is not a proper use of exhibits."). As explained below, Defendants' Appendix impermissibly sets forth extensive further legal argument beyond what they raised in their Brief, violating the Court's page limitations and the Local Civil Rules, and unduly burdening the Court and Plaintiff.[5] It should thus be stricken.

## I.   Defendants' Safe Harbor Argument Cannot Be Understood Without Reference to the Appendix, Which Extends the Argument of the Brief

While Defendants argue that no fewer than eighteen of the twenty-five misstatements alleged in the Complaint are protected by the PSLRA's safe harbor, Defendants' briefing on this issue is both threadbare and vague—an infirmity that their lengthy Appendix seeks to cure. To begin, they do not discuss the substance of any ***specific*** purportedly forward-looking statement in the Brief, instead directing the Court to the Appendix, where, through a color-coding and underlining system, they clarify their contention that only certain portions of those eighteen statements are forward-looking. Moreover, it is only in the Appendix that they also match specific purported cautionary language generally discussed in the Brief with the alleged misstatements to which the language supposedly applies. Finally, Defendants set forth in their Appendix—for the first time—additional cautionary language discussed ***nowhere*** in the Brief that Defendants argue

---

[5] Around midday on November 20, 2020, Defendants informed Plaintiff that Defendants would offer Plaintiff an additional ten pages in Plaintiff's brief opposing Defendants' MTD if Plaintiff would forego filing the instant motion. In that this offer was made one business day before Plaintiff's deadline to file its opposition brief, would have required a formal request to the Court and Court approval, would not have cured the various deficiencies of the Appendix set forth herein, and still would not have provided the Parties with equal pages of factual and legal argument, Plaintiff respectfully declined.

6

protects certain other alleged misstatements. None of this could be discerned without heavy reliance on the Appendix.

A.     **Defendants Identify Which Portions of the Alleged Misstatements They Claim to Be Forward-Looking *Only* In Their Color-Coded Appendix, Not In Their Brief**

In their Brief, Defendants do not present the alleged misstatements they claim fall within the safe harbor, let alone adequately identify the specific portions of the alleged misstatements that they claim implicate safe-harbor protection. *See* Brief 22-26. Instead, Defendants cite the eighteen alleged misstatements that they contend are forward-looking by numerical reference in two footnotes, directing the Court to the thirty pages of color-coded entries in the Appendix. *See id.* 22 n.24, 23 n.26 (collectively citing to "Stmts. 1-4, 6-11, 13, 17-20 & 23-25" of App'x). There, and there only, do Defendants make the inherently detailed (yet incorrect) safe-harbor arguments that they fail to make in their Brief, subdividing each statement into distinct utterances that they contend to be forward-looking, and color-coding the relevant clauses using green ink explained by the Appendix's "key." *See* App'x 30.

These supposedly forward-looking statements fall into two categories. The first are those that Defendants claim are "either the FY20 Guidance itself or a statement reaffirming it." Brief 22. Defendants identify those statements only by reference to "Stmt." numbers in the Appendix in a footnote; they do not present, describe, or otherwise engage with the text of *any* of these statements in their Brief. *Id.* 22 n.24 (citing to "Stmts. 1-4, 7, 9, 19, 20, 23 & 24" of App'x). Upon reference to those numbered statements in the Appendix, however, it becomes clear that Defendants contend that only ***particular portions*** of certain statements are forward-looking. For example, "Stmt. 3," made by Defendant Forlenza on BD's November 5, 2019 earnings call, reads:

> [Y]ou will see our initial **guidance for fiscal year 2020**, which reflects continued momentum across our businesses and strong revenue growth of 5% to 5.5%. On the bottom line, **we expect to deliver adjusted EPS between $12.50 and $12.65**.

7

> This represents currency-neutral growth of 9.5% to 11% that is driven by strong underlying growth that is breaching high teens. All in all, we **expect** to drive earnings growth of about 7% to 8.5%. Our outlook is based on our current view of the environment.

App'x 3 (alteration in original). The portions bolded above are presented in green font in the Appendix, which, according to the "key," corresponds to the portions Defendants argue are forward-looking. *See id.* 30. However, the remainder of this passage is apparently ***not*** forward-looking according to Defendants—significant because Plaintiff has alleged that Defendants' claim of "continued momentum" was itself false or misleading. *See* Compl. ¶¶ 231, 240-41; Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint ("MTD Opp.") 12-23 (filed herewith). Without consulting the Appendix, Plaintiff and the Court would not know which portions of this passage are supposedly forward-looking and which are not, and thus could not properly analyze Defendants' safe-harbor claim. Moreover, Defendants' underlining of "we expect" and "expect" places clear emphasis on the supposed importance of these words to their safe-harbor argument—a claim that also finds no expression in their Brief.[6] Defendants also apply these devices to all but one of the other statements that they describe as the FY20 Guidance or reaffirmations of that guidance. *See* App'x 1-3, 5, 7-9, 25-27 ("Stmts. 1, 4, 7, 9, 19, 20, 23, 24"); *cf. id.* 2 ("Stmt. 2," reproducing slides presented on November 5, 2019 earnings call). In all instances, they constitute critical development of Defendants' legal claims beyond the Brief.

---

[6] Defendants assert at the beginning of the Appendix that "[w]ith the exception of font color, unless otherwise specified, quoted typeface in the 'Alleged Misstatements' column is as it appears in the Amended Class Action Complaint." App'x 1. Not so. The underlining that Defendants employ throughout the Appendix is not found in the Complaint, independently constituting a form of improper legal argument in extraneous briefing.

Defendants' second category of purportedly forward-looking statements (some of which overlap with the first) is even more problematic. In their Brief, Defendants contend that the fourteen alleged misstatements in this group "discuss the Company's future plans and expectations," and broadly assert that the PSLRA protects forward-looking statements. Brief 23. But while the first category—statements issuing or reaffirming the FY20 Guidance—provide the reader at least some clue as to the substance of the relevant statements and refer to terms defined in the Complaint, Defendants say *nothing* further in the Brief about this second batch of statements. Instead, they again simply enumerate the statements comprising this category by reference to "Stmt." numbers in a footnote. *Id.* 23 n.26 (identifying "Stmts. 1, 3, 4, 6, 7-11, 13, 17, 18, 23, 25" of the Appendix). Cross-referencing the corresponding multi-colored text of the Appendix, the reader learns which statements Defendants are referring to and once again finds numerous, detailed arguments that are not stated in the Brief.

For example, "Stmt. 6" is a passage from Defendant Reidy's remarks on BD's November 5, 2019 earnings call. App'x 4. Defendants argue by way of green and blue font and the Appendix's "key" that only the bolded portion below is forward-looking, while the italicized portion is an "accurate statement of historical or present fact not alleged to be false" (App'x 4, 30):

> From a phasing perspective, **we <u>expect</u> revenue growth in the first half of the fiscal year to be approximately 100 basis points below the full year guidance range driven by first quarter revenue growth of 1% to 2%.** In our MMS business, *we are planning to make some improvements to our Alaris pump software, including upgrades to alarm prioritization and optimization. We are in discussions with the FDA about the timing of implementation of these upgrades and the possibility of bundling them with a new software version release.* **This <u>is expected</u> to move the timing of some sales from Q1 to the balance of the fiscal year**.

App'x 4-5. Again, without reference to the Appendix's color-coding and "key," the reader would have no indication that Defendants' safe-harbor argument was limited to the first and last sentences of this four-sentence paragraph. Nor would the reader know that Defendants claim the second and

9

third sentences are "accurate statement[s] of historical or present fact not alleged to be false."[7] In the Appendix, Defendants apply a similar system of baroque color-coding, an explanatory "key," and strategic underlining to the remaining statements in this category, supplying argument points and nuance that appear nowhere in the Brief. This is flatly improper.

**B.      Defendants Connect Cautionary Language to the Alleged Misstatements _Only_ In the Appendix, Not In Their Brief**

Defendants' claims regarding the adequacy of supposed cautionary language also impermissibly rely on the Appendix to explain them. Defendants' Brief invokes purportedly cautionary language in only a general fashion, asserting broadly that warning language in two documents—BD's November 5, 2019 press release and 2019 Form 10-K—protects certain general categories of statements, but the Brief fails to connect that language to the specific portions of the alleged misstatements that Defendants claim are protected. _See_ Brief 24-25. For that critical step of the argument, Defendants direct the Court to the Appendix, where they provide the complete cautionary language they fail to cite in the Brief and link, _**for the first time**_, that language to specific misstatements. _See_ Brief 22 n.24, 23 n.26 (citing App'x).

For example, Defendants point to language in BD's November 5, 2019 press release describing "risks relating to . . . difficulties inherent in product development . . . ; product efficacy or safety concerns resulting in product recalls or actions taken by the FDA or other regulators." Brief 24 (alterations in original). They then say that "[t]he earnings call later that day referred back to this cautionary language"—and nothing more. _Id._ Hence, there is no indication which portions of the various alleged misstatements made that day are covered by this language. Only upon

---

[7] This argument is wholly inaccurate, as Plaintiff alleges that Defendants' characterizations of the Alaris software changes as "upgrades" and of talks with the FDA as limited to "timing" were false or misleading. _See_ Compl. ¶¶ 238-39; MTD Opp. 12-23.

10

consulting the Appendix can the reader decipher which portions this language purportedly protects by (1) looking at the column entitled "Cautionary Language," (2) finding those boxes in that column where the supposed warnings noted above are reproduced, (3) reading across to the column entitled "Alleged Misstatement," (4) consulting the key at the end of the document to determine which portion of those boxes is allegedly forward-looking (the green text), and (5) isolating and analyzing the green portion of those passages. *See* App'x 1-7. Even then, there is no explanation (in the Appendix or Brief) as to how Defendants' cursory analysis of the warning language cited in the Brief ***applies*** to the specific false statements set forth in the Appendix.

This same problem is even more pronounced with BD's 2019 Form 10-K, which provides the only other purported cautionary language discussed anywhere in the Brief. *See* Brief 23-26. Defendants rely on passages warning of "[d]elays in obtaining necessary approvals or clearances from [FDA]" (*Id*. 25 (second alteration in original)) and "[p]roduct efficacy or safety concerns regarding our products resulting in product holds or recalls, regulatory action on the part of the FDA," along with certain hypothetical risk disclosures that Plaintiff alleges were themselves false or misleading. *Id.*; *see also* Compl. ¶¶ 251-56. Again, however, there is no indication within the forty-five pages of Defendants' Brief of the particular statements to which these disparate warnings supposedly apply. Rather, the reader must analyze the Appendix separately, at which point the reader learns for the first time that Defendants argue the Form 10-K inoculates several statements BD Medical CFO John E. Gallagher ("Gallagher") made at a November 21, 2019 healthcare conference (App'x 7-14)—***six days before the Form 10-K was filed***. *See* Smith Decl. ¶ 2. That unexplained incongruity aside, there is no indication outside the Appendix ***what*** cautionary language purportedly protects Gallagher's November 21, 2019 misstatements.

11

The identical problem arises as to Defendant Reidy's statements at the December 4, 2019 Evercore HealthCONx Conference, which Defendants claim are protected by the same Form 10-K language. App'x 21-25. Again, neither Plaintiff nor the Court would know that Defendants were advancing this argument absent the Appendix. The same is true for Defendants' tenuous claim that BD's February 4, 2020 "voluntary recall" letters are protected by the Form 10-K language discussed above. *Id.* 27-30. Without the Appendix, Defendants' arguments are unintelligible.

**C.**     **Other Statements and Alleged Corresponding Cautionary Language Are Not Discussed In the Brief *At All***

Finally, for four remaining allegedly forward-looking statements, Defendants do not mention the purported corresponding cautionary language ***anywhere*** in the Brief. *See* App'x A, Stmts. 19-20, 23-24; *cf.* Brief 22-26. In the Appendix, however, Defendants explain that two of Polen's statements during the January 14, 2020 JPMorgan Healthcare Conference ("Stmts. 19-20") are purportedly forward-looking and elaborate that these statements were immunized by a disclaimer that stated, "[f]actors that could cause our actual results to differ appear in our fourth quarter press release and our recent SEC filings." App'x 25-26 (citing Smith Decl. Ex. K). Yet Defendants neither explain how this language is meaningful nor identify what language in their press release or "recent SEC filings" should be incorporated to protect their statements.

Even more opaque is Defendants' argument—again made only in the Appendix—that Defendant Forlenza's reaffirmations of the FY20 Guidance at the January 28, 2020 Annual Shareholder Meeting (App'x 27) are shielded by his statement that "[w]e have information posted on our website regarding forward-looking statements." *Id*. (citing Smith Decl. Ex. M). Forlenza's statements are not discussed in the safe-harbor portion of the Brief, nor is the purported adequacy of this "cautionary language." Indeed, neither the Brief nor the Appendix explains what this

12

information "posted on [the Company's] website" actually was or how it serves to immunize Forlenza's statements.

Because Defendants rely on the Appendix to identify which portions of the specific misstatements they contend are forward-looking, link each statement to the cautionary language they claim applies, and set forth additional supposedly cautionary language mentioned nowhere in the Brief, the Appendix constitutes improper, unauthorized, supplemental legal argument that should be stricken or disregarded. *See Hill v. Myszak*, 2016 WL 1267757, at \*5 (N.D. Ind. Mar. 30, 2016) (striking fifty-eight-page "Statement of Facts" exhibit as violation of local rules pertaining to page limits when offering party's brief included just two-sentence fact section that referred reader to exhibit).

## II.    The Appendix Contains a Host of Additional Legal Arguments Not Found In Defendants' Brief

The problem of Defendants presenting novel legal argument in the Appendix extends beyond the safe harbor issue. Indeed, Defendants use the Appendix to set forth ***all*** of the legal defenses and arguments that they contend apply to each misstatement, an exercise they omit from their Brief. Along with designating select portions of alleged misstatements forward-looking with green font, the Appendix's "key" sets forth three other colors, each representing a distinct legal claim that Defendants argue—only in the Appendix—applies specifically to text presented in that color. *See* App'x 30. The "key" explaining this scheme makes clear that it constitutes legal argument.

For example, the "key" states that "[b]lue text represents the portion of each an [sic] alleged misstatement that is an ***accurate*** statement of historical or present fact ***not alleged to be false***." *Id.* By presenting select portions of certain statements in blue, Defendants ***argue*** that those particular portions are "accurate"—a partisan assertion that is an act of advocacy, as ***that same text is***

13

***explicitly alleged to be false or misleading in the Complaint***. *See, e.g.*, *id*. 5-7 ("Stmt. 8" presenting Defendant Polen's characterizations of Alaris software changes as "upgrades" and "enhancements" alleged to be false in paragraph 237 of the Complaint in blue text as an "accurate statement of historical or present fact ***not*** alleged to be false").

Similarly, the "key" states that red text represents "the portion of an alleged misstatement that is a risk factor warning made ***prior to materialization of the risk identified***." *Id*. 30. Plaintiff alleges exactly the opposite, however: that these statements were misleading precisely because the warned-of risk ***had*** already appeared. *Compare, e.g.*, App'x 18-19 ("Stmt. 15" arguing through use of red text that warning of adverse events that "could . . . cause delays in regulatory approval of new products or the imposition of post-market approval requirements" are warnings "made prior to materialization of the risk") *with* Compl. ¶ 256 (alleging same passage was false or misleading because it "characterized as contingent or speculative risks that had already come into being or that were reasonably projected to occur"). Finally, that Defendants' designation of purple text as representing "inactionable opinion, belief or corporate optimism" constitutes legal argument is self-evident. App'x 30.[8] Defendants apply their four font colors keyed to particular legal arguments throughout the Appendix and to virtually all of the alleged misstatements. These nuanced, multi-point, statement-by-statement arguments are presented nowhere in the Brief, but ***exclusively*** through the Appendix's color-coding scheme.

On top of the color-coding scheme, Defendants state their legal arguments in the "Category" column of the Appendix, attacking each statement on one or more bases with

---

[8] Such argument becomes even more complicated where Defendants employ multiple colors in a single passage or ***even single clause***, signaling nuances that receive not even a passing explanation in the Brief. *See, e.g.*, App'x 15-17 (presenting in a single passage ("Stmt. 13") ***four*** distinct legal arguments through color-coding and underlining).

14

particularity sorely lacking from the safe-harbor section of their Brief. Coupled with the color-coding and use of underlining to emphasize words and phrases of the alleged misstatements to support their claims, this column merely confirms Defendants' own description of the Appendix, which they say presents "*on what grounds [the statement] should be dismissed*"—in other words, Defendants' legal arguments for dismissal of each alleged misstatement. Brief 10 n.12. These arguments should have been stated expressly in their Brief, not relegated to a thirty-page, single-spaced attachment.

### III.    There Is No Legal Basis for Considering the Appendix

Because the Appendix presents extensive argument contained nowhere in the page-limited Brief and was not authorized by the Court or any applicable rule, it is the proper subject of a motion to strike on several grounds.

*First*, the thirty-page Appendix, which adds over 5,500 words of legal argument beyond the forty-five-page Brief, constitutes an impermissible attempt by Defendants to circumvent the Court's page limit on the Parties' briefing. *See* ECF Nos. 35, 53. Courts within this district and elsewhere routinely reject such efforts to circumvent court-ordered page limits. *See, e.g.*, *Thompson v. Eva's Vill. & Sheltering Program*, 2008 WL 4661802, at *2 (D.N.J. Oct. 20, 2008) (collecting cases), *aff'd*, 321 F. App'x 108 (3d Cir. 2009)*; Capaldi v. BJ's Wholesale Club, Inc.*, 2020 WL 2569965, at *2 (D.N.J. May 21, 2020) ("Courts may disregard or strike overlength briefs."); *In re Paine Webber Sec. Litig.*, 1992 WL 725359, at *1 n.2 (S.D.N.Y. Sept. 18, 1992) (refusing to review or consider an eighteen-page summary of Rule 9(b) deficiencies as it was "effectively evading the three page limitation . . . by including legal arguments in the form of exhibits rather than in the [defendants'] memorandum of law"); *Flaherty v. Filardi*, 2009 WL 749570, at *20 (S.D.N.Y. Mar. 20, 2009) (granting defendant's motion to strike plaintiff's declaration and attached exhibits that exceeded court-imposed page limits); *Alexander v. Murdoch*,

15

2011 WL 2802899, at *3 n.4 (S.D.N.Y. May 27, 2011) (rejecting party's "tactics" of using undersized font, cramped spacing, and reduced margins "in an effort to circumvent [the court's] refusal to grant a further enlargement of the page limit"); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 71 (E.D.N.Y. 2004) (granting defendant's motion to strike legal arguments set forth in plaintiff's counsel's reply affidavit, which had "the effect of circumventing the Court's page limits on memoranda"). The Defendants' effective expansion of the Court-imposed page limit should likewise be rejected.

*Second*, Defendants' Appendix defies multiple Local Civil Rules. Local Civil Rule 7.1 directs that "[n]o application will be heard unless the moving papers and a brief, [are] prepared in accordance with L.Civ.R. 7.2." L. Civ. R. 7.1(d)(1). Local Civil Rule 7.2 directs that briefs of greater length than contemplated by the rules will only be accepted if special permission of the judge is obtained before submission of the brief. L. Civ. R. 7.2(b). As noted above, the Court limited the Parties' briefing to forty-five pages, which the Appendix violates. Moreover, Local Civil Rule 7.2 directs that all briefs "***shall be in black lettering***" and with double-spaced text and single-spaced footnotes. L. Civ. R. 7.2(c)-(d). Defendants' intricate color-coding scheme and "key," without which the Appendix would be indecipherable, violate this Rule as well, as does the document's single-spaced text. Defendants' failure to adhere to the clear briefing rules of this Court further warrants rejection of the Appendix.

*Third*, the Appendix violates the Federal Rules of Civil Procedure. First, Rule 12(d) provides that "[i]f, on a motion under Rules 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). As noted above, the doctrines of incorporation by

16

reference and judicial notice do not apply, nor does any cognizable exception to Rule 12(d).[9]

Meanwhile, Rule 12(f) provides an independent basis for striking the Appendix. Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). Indeed, the Appendix is precisely the sort of extrinsic advocacy that other courts have found properly stricken under Rule 12(f) in the past. *See, e.g.*, *In re Acadia Pharm. Inc. Sec. Litig.,* 2020 WL 2838686, at *3 (S.D. Cal. June 1, 2020) (striking a twenty-five-page appendix under Rule 12(f) because it was "simply an extension of Defendants' argument and . . . exceeded the 25-page limit"). The Court should do the same here.

## CONCLUSION

For these reasons, the Appendix and all references and argument concerning, relating to, or relying on the Appendix should be stricken from the record.

Dated: November 23, 2020

**CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC**

s/ James E. Cecchi
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Liaison Counsel for the Putative Class*

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Eric K. Gerard (admitted *Pro Hac Vice*)
Melanie A. Rader (admitted *Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
jdancona@ktmc.com
egerard@ktmc.com
mrader@ktmc.com

*Counsel for Lead Plaintiff Industriens Pensionsforsikring A/S and Lead Counsel for the Putative Class*

---

[9] If the Court were to consider the Appendix, Defendants' Motion to Dismiss should be converted into one for summary judgment, and Plaintiff should be given a chance to conduct discovery and present evidence of its own. Fed. R. Civ. P. 12(d).

17

## <u>CERTIFICATE OF SERVICE</u>

I, James E. Cecchi, hereby certify that on November 23, 2020, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Lead Plaintiff's Motion to Strike to be filed electronically with the Clerk of the Court using the ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: November 23, 2020          *s/ James E. Cecchi*
James E. Cecchi
**CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, PC**
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for the Putative Class*

18