**CARELLA BYRNE CECCHI**
**OLSTEIN BRODY & AGNELLO, PC**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Eric K. Gerard (admitted *Pro Hac Vice*)
Vanessa Milan (admitted *Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Lead Plaintiff Industriens*
*Pensionsforsikring A/S and Lead Counsel*
*for the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, VINCENT A. FORLENZA, THOMAS E. POLEN, and CHRISTOPHER R. REIDY,<br><br>Defendants. | Case No. 2:20-cv-02155-SRC-CLW<br><br>Hon. Stanley R. Chesler<br>District Judge<br><br>Hon. Cathy L. Waldor<br>Magistrate Judge<br><br>**MOTION DAY**: June 7, 2021 |

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFF'S MOTION TO STRIKE

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

ARGUMENT.........................................................................................................................3

I.      Defendants' Safe Harbor Argument Cannot Be Understood Without Reference to
        the Appendix, Which Explains and Impermissibly Extends the Argument of the
        Brief ..........................................................................................................................6

        A.      Defendants Identify Which Portions of the Alleged Misstatements They
                Claim to Be Forward-Looking *Only* in Their Color-Coded Appendix, Not
                in Their Brief ................................................................................................ 6

        B.      Only the Appendix Connects Cautionary Language to Specific Portions
                of Alleged Misstatements that Are Forward-Looking ......................................... 9

II.     The Appendix Contains Additional Legal Arguments Not Found in Defendants'
        Brief ........................................................................................................................11

III.    There Is No Legal Basis for Considering the Appendix.....................................13

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acadia Pharms. Inc. Sec. Litig.*,
  2020 WL 2838686 (S.D. Cal. June 1, 2020)................................................................15

*Alexander v. Murdoch*,
  2011 WL 2802899 (S.D.N.Y. May 27, 2011) ..............................................................14

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)....................................................................................3, 4

*Capaldi v. BJ's Wholesale Club, Inc.*,
  2020 WL 2569965 (D.N.J. May 21, 2020)...............................................................13, 14

*Flaherty v. Filardi*,
  2009 WL 749570 (S.D.N.Y. Mar. 20, 2009) ...............................................................14

*Hill v. Myszak*,
  2016 WL 1267757 (N.D. Ind. Mar. 30, 2016)..............................................................11

*King v. Enter. Rent-A-Car Co.*,
  231 F.R.D. 255 (E.D. Mich. 2004) ...............................................................................5

*In re Merck Co., Inc., Sec., Derivative & "ERISA" Litig.*,
  2006 WL 8460903 (D.N.J. Jan. 20, 2006) ..................................................................4, 5

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002).......................................................................................4

*In re Navient Corp. Sec. Litig.*,
  2019 WL 7288881 (D.N.J. Dec. 30, 2019)....................................................................5

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ...................................................................................5

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000)..........................................................................................4

*In re Paine Webber Sec. Litig.*,
  1992 WL 725359 (S.D.N.Y. Sept. 18, 1992)...............................................................14

*In re PTC Therapeutics, Inc. Sec. Litig.*,
  2017 WL 3705801 (D.N.J. Aug. 28, 2017) ...................................................................5

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................................................14

*In re Synchronoss Sec. Litig.*,
    705 F. Supp. 2d 367 (D.N.J. 2010) ...........................................................................................4

*Tadros v. Celladon Corp.*,
    2016 WL 5870002 (S.D. Cal. Oct. 7, 2016) .............................................................................5

*Thompson v. Eva's Vill. & Sheltering Program*,
    2008 WL 4661802 (D.N.J. Oct. 20, 2008).............................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(d) .............................................................................................................3, 4, 15

Fed. R. Evid. 201(b)...................................................................................................................2, 4

L. Civ. R. 7.1..............................................................................................................................14

L. Civ. R. 7.2..............................................................................................................................14

Lead Plaintiff Industriens Pensionsforsikring A/S ("Plaintiff") respectfully submits this Memorandum of Law in support of its motion to strike Appendix A (ECF No. 69-17) ("Appendix" or "App'x") and all argument relying on the Appendix,[1] which was submitted along with Defendants' Motion to Dismiss the Second Amended Class Action Complaint (ECF No. 69) ("Motion to Dismiss" or "MTD") and Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Class Action Complaint (ECF No. 69-1) ("Brief").[2]

**INTRODUCTION**

Along with their Motion to Dismiss, Defendants filed the Appendix, a thirty-page, intricately color-coded chart—and an explanatory "key" necessary to understand its content—that they use to expand on the arguments in their Brief. At times, Defendants present specificity in the Appendix that makes the arguments of their Brief intelligible. At others, Defendants present argument contained nowhere in the Brief. Their gambit to expand the unambiguous, Court-ordered page limits of the Parties' briefing through this extrinsic document setting forth a rainbow of arguments is not permissible, and should not be countenanced.

The Appendix should be rejected for at least three reasons. *First*, it is used to amplify and explain a safe harbor section of Defendants' Brief (Section I.A.2) that cannot be understood *without* reference to the Appendix. For example, Defendants identify *none* of the specific portions of the alleged misstatements to which their safe harbor arguments supposedly apply within the four corners of their Brief. Instead, Defendants rely on the green-colored text in the Appendix (one of four colors employed, each representing a distinct legal argument) to point the Court to discrete

---

[1] Counsel for Plaintiff and Defendant conferred over the relief requested in this motion in communications on April 29 and 30, and May 2, 2021, but were unable to resolve the dispute.

[2] Unless otherwise defined, capitalized terms have the meanings ascribed to them in the Second Amended Class Action Complaint (ECF No. 60-2) ("Complaint" or "Compl."), all emphasis is added, and all internal citations and quotation marks are omitted.

portions of long passages that they contend fall within the safe harbor. Similarly, Defendants' Brief makes only a perfunctory connection between the cautionary language they rely upon and the particular statements it supposedly protects, relegating much of their substantive analysis to the Appendix.

*Second*, the Appendix supplements arguments noted in passing in the Brief with critical added detail. Through elaborate color-coding, underlining, and argument, its "Category" column sets forth specific legal points directed at each alleged misstatement—indeed, parsing particular *clauses* of each statement—that Defendants fail to present in the Brief.[3] Yet a motion seeking dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) is not meant to be simply a preliminary overview, presenting case law and general propositions, with the real work of applying the movant's arguments to the allegations reserved for an appendix that is three-fifths the length of the primary, page-limited brief.

*Third*, Defendants have provided no legal basis for considering their improper Appendix, and Plaintiff has found none. Defendants do not include the Appendix among the documents they argue the Court may judicially notice: Exhibits A-N to the Declaration of James P. Smith III (ECF Nos. 69-2 & 69-3 – 69-16) ("Smith Decl."). *See* Brief 7 n.5. On this point, at least, they are correct, as Federal Rule of Evidence 201 does not permit judicial notice of such an obvious piece of advocacy. *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts "generally known within the trial court's territorial jurisdiction" or those that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Yet Defendants provide no other justification for its consideration either, noting only that provision of these arguments not in their

---

[3] Defendants concede the Appendix lists, for "each of the twenty-five purported misstatements": "(a) the paragraph of the Complaint in which it is alleged; (b) when, by whom and in what document it was made; and (c) ***on what grounds it should be dismissed***." Brief 10 n.12.

2

Brief is for "ease of reference." Brief 10 n.12. This is not a legitimate basis on which to ask the Court to consider advocacy outside the Brief. To the contrary, the Appendix is an end run that exceeds the Court's generous extension of the local page limits, flouts the Local Civil Rules, and skirts the Federal Rules of Civil Procedure. Therefore, it should be stricken, just as courts across the country have rejected similar addenda when faced with comparable attempts by parties to expand their briefing improperly.

## BACKGROUND

On March 18, 2021, the Court granted Defendants' consented-to request (ECF No. 67) for permission to file a motion to dismiss brief of fifty pages in length and twelve-point font, exceeding the forty-page/fourteen-point font or thirty-page/twelve-point font limit provided by Local Civil Rule 7.2(d). ECF No. 68. On March 19, 2021, Defendants filed the fifty-page/twelve-point-font Brief with their Motion to Dismiss, attaching, among other things, the Appendix, a thirty-page, single-spaced, multi-colored chart.

The chart contains six columns including "Stmt.," "Compl. ¶," "Source (Speaker/Document)," "Alleged Misstatement," "Category," and "Cautionary Language (Where Statement is Forward-Looking)." *See generally* App'x 1. The "Alleged Misstatement" column purports to set forth the text of each alleged misstatement in the Complaint. Defendants divide each alleged misstatement into separate parts or clauses, assigning various portions of the statement one of four colors of ink (blue, green, purple, and red) to set them off from the remaining statement text in black. In a "key," Defendants explain that each font color corresponds to a different legal basis supporting dismissal of the statement in question. *Id.* at 30.

## ARGUMENT

In evaluating a motion to dismiss, a court generally may not consider "matters extraneous to the pleadings" without converting the motion to dismiss into one for summary judgment. *In re*

3

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also* Fed. R. Civ. P. 12(d). The Third Circuit observes two narrow exceptions to this general prohibition. First, a court may consider documents attached to a motion to dismiss if the "document [is] integral to or explicitly relied upon in the complaint." *Burlington*, 114 F.3d at 1426 ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *see also Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (same). Second, a court may take judicial notice of a fact when it is "not subject to reasonable dispute." Fed. R. Evid. 201(b); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). Defendants offer no argument or authority for the proposition that their Appendix is subject to either incorporation-by-reference or judicial notice; indeed, Defendants offer no authority at all to support consideration of the Appendix.[4]

Where, as here, the doctrines of incorporation-by-reference and judicial notice do not apply, the dispositive inquiry in determining whether an extraneous document (such as the Appendix) may be considered at the motion-to-dismiss stage is whether that document extends the offering party's legal argument beyond the party's briefing. To be sure, courts sometimes permit the attachment of non-substantive, organizational appendices that merely compile—without

---

[4] That the Appendix contains extensive argument regarding contested facts at the heart of this dispute constitutes a further reason that it is not the proper subject of judicial notice. *See In re Merck Co., Inc., Sec., Derivative & "ERISA" Litig.*, 2006 WL 8460903, at *3 (D.N.J. Jan. 20, 2006) ("[a] judicially noticed fact must be one not subject to reasonable dispute") (citing Fed. R. Evid. 201(b)). While "facts capable of immediate and certain verification . . . whose accuracy is beyond dispute" may be properly judicially noticed, "accurate records or other sources of a judicially-noticed fact must necessarily exist and be known to the court." *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 390-91 (D.N.J. 2010). Here, whether the alleged misstatements are actionable is a central question of this action, and supplementary points arguing against Plaintiff's allegations cannot reasonably be construed as judicially noticeable. Such advocacy is also not subject to incorporation by reference. *Cf. Merck*, 2006 WL 8460903, at *5 (incorporating by references documents on which plaintiffs' claims were based).

argument—material set forth in the briefing or that is otherwise subject to the doctrines of incorporation-by-reference or judicial notice. *See, e.g.*, *Merck,* 2006 WL 8460903, at *4-5 (accepting for consideration chart compiling information from SEC Forms 4). However, courts that do so make clear that such "organizational tools" are permitted precisely because they contain no legal argument and do not prejudice the opposing party. *See, e.g.*, *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *3 n.5 (D.N.J. Aug. 28, 2017) (finding chart admissible because it does not prejudice plaintiff and "does nothing more than organize portions of the AC (reprinted verbatim) and refer to arguments already raised in the papers"); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 65 (S.D.N.Y. 2009) (permitting appendix whose contents did not "rise[] to the level of legal argument," where the appendix "***does not constitute an impermissible continuation of the [defendants'] legal argument***").

When an addendum ***does*** continue the defendant's argument, the document is improper and is disregarded. *See, e.g.*, *In re Navient Corp. Sec. Litig.*, 2019 WL 7288881, at *7 (D.N.J. Dec. 30, 2019) ("It is the Defendants' version of facts, legal arguments . . . and transcripts supporting same that comprise the majority of Exhibit 8. . . . Accordingly, this request [for judicial notice] is denied."); *Tadros v. Celladon Corp.*, 2016 WL 5870002, at *8, *8 n.5 (S.D. Cal. Oct. 7, 2016), *aff'd*, 738 F. App'x 448 (9th Cir. 2018) (striking "argumentative" column headings while otherwise considering a chart containing an "***unaltered***" set of "allegedly misleading statements"); *King v. Enter. Rent-A-Car Co.*, 231 F.R.D. 255, 265 (E.D. Mich. 2004) ("Defendants added a twenty-two page [exhibit], which supposedly summarizes each of the Plaintiff's specific claims and cites evidence to refute those assertions. This, too, is tantamount to additional argument going to the merits. . . . [and] is not a proper use of exhibits."). As explained below, the Appendix impermissibly sets forth further legal argument beyond what Defendants raised in their Brief,

5

violating the Court's page limits and the Local Civil Rules, and unduly burdening the Court and Plaintiff. It should thus be stricken.

**I.      Defendants' Safe Harbor Argument Cannot Be Understood Without Reference to the Appendix, Which Explains and Impermissibly Extends the Argument of the Brief**

While Defendants concede that this case mainly concerns alleged material omissions (Brief 18), they also argue that no fewer than eighteen of the twenty-five misstatements alleged in the Complaint are protected by the PSLRA's safe harbor.  Defendants' briefing on this issue is both threadbare and fatally vague—an infirmity that their thirty-page Appendix seeks to cure. Defendants' Brief fails to discuss the substance of any ***specific*** purportedly forward-looking statement, instead directing the Court to the Appendix, where, through a color-coding and underlining system, Defendants explain their contentions, and assert that only certain portions of the eighteen statements in question are forward-looking.

**A.      Defendants Identify Which Portions of the Alleged Misstatements They Claim to Be Forward-Looking *Only* in Their Color-Coded Appendix, Not in Their Brief**

In their Brief, Defendants do not present the alleged misstatements they claim fall within the safe harbor, let alone adequately identify the specific portions of the alleged misstatements that they claim implicate safe harbor protection. *See* Brief 24-29. Instead, Defendants cite the eighteen alleged misstatements that they contend are forward-looking by numerical reference in two footnotes, directing the Court to the thirty pages of color-coded entries in the Appendix. *See id.* 24 n.29, 25 n.31 (collectively citing Stmts. 1-4, 6-11, 13, 17-20 & 23-25 of App'x). There, and ***only*** there, do Defendants make the inherently detailed (though incorrect) safe harbor arguments that they fail to make in their Brief, subdividing each statement into distinct utterances and identifying the clauses that they contend to be forward-looking using green ink, as explained by the Appendix's "key." *See* App'x 30.

The supposedly forward-looking statements fall into two categories. The first are those that Defendants claim are "either the FY20 Guidance itself or a statement reaffirming it." Brief 24. Defendants do not present, describe, or otherwise engage with the text of *any* of these statements in their Brief, instead identifying them only by reference to the "Stmt." numbers Defendants assigned to them in the Appendix, which Defendants set forth in a footnote. *Id.* 24 n.29 (citing "Stmts. 1-4, 7, 9, 19, 20, 23 & 24" of App'x). Upon reference to those numbered statements in the Appendix, however, it becomes clear that Defendants contend that only particular portions of certain statements are forward-looking. For example, "Stmt. 3," made by Defendant Forlenza on BD's November 5, 2019 earnings call, reads:

> [Y]ou will see our initial **guidance for fiscal year 2020**, which reflects continued momentum across our businesses and strong revenue growth of 5% to 5.5%. On the bottom line, **we expect to deliver adjusted EPS between $12.50 and $12.65**. This represents currency-neutral growth of 9.5% to 11% that is driven by strong underlying growth that is breaching high teens. All in all, we **expect** to drive earnings growth of about 7% to 8.5%. Our outlook is based on our current view of the environment.

App'x 3 (alteration in original). The portions bolded above are presented in green font in the Appendix, which, according to the "key," signifies the portions Defendants argue are forward-looking. *See id.* 30. The rest of this passage is apparently *not* forward-looking according to Defendants—significant because Plaintiff has alleged that Defendants' claim of "continued momentum" was itself false or misleading. *See* Compl. ¶¶ 267, 276-77; Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Class Action Complaint 16-27 (filed herewith). Without consulting the Appendix, Plaintiff and the Court would not know which portions of this passage are supposedly forward-looking and which are not, and thus could not properly analyze Defendants' safe harbor claim. Moreover, Defendants' underlining of the terms "we expect" and "expect" places clear emphasis on the supposed importance of these words to their safe harbor argument—a point that also finds no expression in

7

their Brief. Defendants apply these devices to all but one of the other statements they describe as the FY20 Guidance or reaffirmations of that guidance. *See* App'x 1-3, 5, 7-9, 25-27 ("Stmts. 1, 4, 7, 9, 19, 20, 23, 24"); *cf. id.* 2 ("Stmt. 2," reproducing slides presented on November 5, 2019 earnings call). In all instances, this constitutes impermissible continuation of Defendants' legal claims beyond the Brief.

Defendants' second category of purportedly forward-looking statements (some of which are also in the first) is even more problematic. In their Brief, Defendants contend that the fourteen alleged misstatements in this group "discuss the Company's future plans and expectations" and broadly assert that the PSLRA protects forward-looking statements. Brief 25. But while the first category (statements issuing or reaffirming the FY20 Guidance) provides the reader at least some clue as to the substance of the relevant statements and refers to terms defined in the Complaint, Defendants say ***nothing*** further in the Brief about this second batch of statements. Instead, they again simply identify the statements comprising this category by listing "Stmt." numbers in a footnote. *Id.* 25 n.31 (identifying "Stmts. 1, 3, 4, 6, 7-11, 13, 17, 18, 23, 25" of App'x). Only by cross-referencing the corresponding multi-colored text of the Appendix can the reader determine to which pieces of which statements Defendants are referring. And the Appendix once again contains detailed arguments about these statements that are not stated in the Brief.

For example, "Stmt. 13" is a passage from BD's 2019 Form 10-K. App'x 15-16. Defendants argue through colored fonts and the Appendix's "key" that only the bolded portion below (which is in green font in the Appendix) is forward-looking, while the italicized portion (blue font in the Appendix) is an "accurate statement of historical or present fact not alleged to be false" (App'x 30):

> *While this BD organizational unit remains subject to the amended consent decree,*
> *which includes the requirements of the original consent decree, it has made*

8

*substantial progress in its compliance efforts.* However, we cannot predict the outcome of this matter, and the amended consent decree authorizes the FDA, in the event of any violations in the future, to order us to cease manufacturing and distributing infusion pumps, recall products and take other actions. . . .

**We also cannot currently <u>predict</u>** whether additional monetary investment will be incurred to resolve this matter or the matter's ultimate impact on our business. **We may be** obligated to pay more costs in the future because, among other things, **the FDA may determine** that we are not fully compliant with the amended consent decree and therefore impose penalties under the amended consent decree, and/or we may be subject to future proceedings and litigation relating to the matters addressed in the amended consent decree. As of September 30, 2019, <u>we do not believe</u> that a loss is probable in connection with the amended consent decree, and accordingly, we have no accruals associated with compliance with the amended consent decree.

App'x 15-16 (ellipsis in original). Again, without reference to the Appendix's color-coding and "key," the reader would have no indication that Defendants' safe harbor argument was limited to three short phrases—twelve words—interspersed throughout a statement consisting of two paragraphs. Nor would the reader know that Defendants claim the first sentence, and only the first sentence, is an "accurate statement[s] of historical or present fact not alleged to be false," as they do not even suggest this point in the Brief. In the Appendix, Defendants apply a similar system of color-coding portions of statements, an explanatory "key," and strategic underlining to the remaining statements in this category, supplying supplemental argument points and nuance that continue and amplify the Brief. This is flatly improper.

**B.      Only the Appendix Connects Cautionary Language to Specific Portions of Alleged Misstatements that Are Forward-Looking**

Defendants' arguments about the cautionary language they claim protects these forward-looking statements similarly hinge on the Appendix. Defendants' Brief invokes purportedly cautionary language in only a general fashion, asserting broadly that warning language in two discrete documents filed at the outset of the Class Period—BD's November 5, 2019 press release and 2019 Form 10-K—protects statements made in various settings over three months. The Brief,

9

however, fails to connect the referenced language to the specific portions of the alleged misstatements that Defendants claim are protected. *See* Brief 26.

For instance, Defendants point to language in BD's November 5, 2019 press release describing "risks relating to . . . difficulties inherent in product development . . . ; product efficacy or safety concerns resulting in product recalls or actions taken by the FDA or other regulators." Brief 26 (alterations in original). They then say that "[t]he earnings call later that day referred back to this cautionary language." *Id.* Yet there is no indication in the Brief which portions of the various alleged misstatements made that day are covered by this language. Only upon consulting the Appendix can the reader decipher which portions this language purportedly protects by (1) looking at the column entitled "Cautionary Language," (2) finding those boxes in that column where the supposed warnings noted above are reproduced, (3) reading across to the column entitled "Alleged Misstatement," (4) consulting the key at the end of the document to determine which portion of that Alleged Misstatement is allegedly forward-looking (the green text), and (5) isolating and analyzing the green portion of those passages to determine whether the cautionary language actually warns investors of the relevant risk. *See* App'x 1-7, 30. Even then, there is no explanation (in the Appendix or Brief) as to how Defendants' cursory analysis of the warning language cited in the Brief ***applies*** to the specific false statements set forth in the Appendix.

This same problem is even more pronounced with BD's 2019 Form 10-K, filed November 27, 2019, which supplies the only other supposedly cautionary language mentioned in the Brief. *See* Brief 25-29. Defendants rely on passages warning of "[d]elays in obtaining necessary approvals or clearances from [FDA]" (second alteration in original) and "[p]roduct efficacy or safety concerns regarding our products resulting in product holds or recalls, regulatory action on the part of the FDA," along with certain hypothetical risk disclosures that Plaintiff alleges were

10

themselves false or misleading. *Id.* 27; *see also* Compl. ¶¶ 287-92. With no further explanation or analysis, Defendants fleetingly assert in a footnote: "The 2019 Form 10-K warnings thus apply to the statements at the November 21, 2019 and December 4, 2019 conferences, the January 28, 2020 shareholder meeting and in the February 4, [2020] recall letter." *Id.* 26 n.35. Defendants do not bother to explain how warnings issued on November 27, 2019, could adequately caution investors about a statement made a week earlier, on November 21, 2019. More broadly, Defendants' argument again hinges on the Appendix to clarify which statements at these events are purportedly protected, which portions of those statements are argued to be forward-looking, and how the cautionary language applies to protect the forward-looking portions of those statements. Put simply, without the Appendix, Defendants' arguments are unintelligible.

Because Defendants rely on the Appendix to identify which portions of the specific misstatements they contend are forward-looking and to link each portion of the statement to the cautionary language they claim applies, the Appendix constitutes improper supplemental legal argument that should be stricken or disregarded. *See Hill v. Myszak*, 2016 WL 1267757, at \*5 (N.D. Ind. Mar. 30, 2016) (striking fifty-eight-page "Statement of Facts" exhibit as violation of local rules pertaining to page limits when offering party's brief included just two-sentence fact section that referred reader to exhibit).

## II. The Appendix Contains Additional Legal Arguments Not Found in Defendants' Brief

The problem of Defendants presenting additional legal argument in the Appendix extends beyond the safe harbor issue. Indeed, Defendants use the Appendix to set forth ***all*** the legal defenses and arguments they contend apply to each misstatement, an exercise they omit from their Brief. Along with designating select portions of alleged misstatements forward-looking with green font, the Appendix's "key" sets forth three other colors, each representing a distinct legal claim

that Defendants argue—often only in the Appendix—applies to text presented in that color. *See* App'x 30. The "key" explaining this scheme makes clear that it constitutes legal argument.

For example, the "key" states that "[b]lue text represents the portion of each an [sic] alleged misstatement that is an ***accurate*** statement of historical or present fact ***not alleged to be false***." *Id.* By presenting select portions of certain statements in blue, Defendants ***argue*** that those portions are "accurate"—a partisan assertion that is an act of advocacy, as that same text is explicitly alleged to be false or misleading in the Complaint. *See, e.g.*, *id*. 5-7 ("Stmt. 8" presenting Defendant Polen's characterizations of Alaris software changes as "upgrades" and "enhancements" alleged to be false in paragraph 237 of the Complaint but set forth in blue text as an "accurate statement of historical or present fact not alleged to be false").

Similarly, the "key" states that red text represents "the portion of an alleged misstatement that is a risk factor warning made prior to materialization of the risk identified." *Id*. 30. Plaintiff alleges the opposite, however—that these statements were misleading precisely because the problem ***had already*** appeared. *Compare, e.g.*, App'x 18-19 ("Stmt. 15" arguing through use of red text that warning of adverse events that "could . . . cause delays in regulatory approval of new products or the imposition of post-market approval requirements" are warnings "made prior to materialization of the risk") *with* Compl. ¶ 292 (alleging same passage was false or misleading because it "characterized as contingent or speculative risks that had already come into being or that were reasonably projected to occur"). Finally, that Defendants' designation of purple text as representing "inactionable opinion, belief or corporate optimism" constitutes legal argument is self-evident. App'x 30.[5] Defendants apply their four font colors keyed to legal arguments

---

[5] Such argument becomes even more complicated where Defendants employ multiple colors in a single passage or even single clause, signaling nuances that receive not even a passing explanation

throughout the Appendix and virtually all of the alleged misstatements. These nuanced, multi-point, statement-by-statement arguments appear nowhere in the Brief, but are presented exclusively through the Appendix's color-coding scheme.

Further, Defendants state their legal arguments in the "Category" column of the Appendix, attacking each statement on one or more bases with particularity that is sorely lacking from the safe harbor section of their Brief. Coupled with the color-coding and use of underlining to emphasize words and phrases of the alleged misstatements to support their claims, this column merely confirms Defendants' own description of the Appendix, which they say presents "on what grounds [the statement] should be dismissed"—in other words, Defendants' legal arguments for dismissing each alleged misstatement. Brief 11 n.12. These arguments should have been stated expressly in their Brief, not saved for a thirty-page, single-spaced appended document.

**III.    There Is No Legal Basis for Considering the Appendix**

Because the Appendix presents extensive argument contained nowhere in the page-limited Brief and was not authorized by the Court or any applicable rule, it is the proper subject of a motion to strike on several grounds.

***First***, the Appendix, which adds over 5,500 words of legal argument beyond the fifty-page Brief, constitutes an impermissible attempt by Defendants to circumvent the Court's page limit on the Parties' briefing. *See* ECF No. 68. Courts within this district and elsewhere routinely reject such efforts to circumvent court-ordered page limits. *See, e.g.*, *Thompson v. Eva's Vill. & Sheltering Program*, 2008 WL 4661802, at *2 (D.N.J. Oct. 20, 2008) (collecting cases), *aff'd*, 321 F. App'x 108 (3d Cir. 2009)*; Capaldi v. BJ's Wholesale Club, Inc.*, 2020 WL 2569965, at *2

---

in the Brief. *See, e.g.*, App'x 15-17 (presenting in a single passage ("Stmt. 13") ***four*** distinct legal arguments through color-coding and underlining).

(D.N.J. May 21, 2020) ("Courts may disregard or strike overlength briefs."); *In re Paine Webber Sec. Litig.*, 1992 WL 725359, at *1 n.2 (S.D.N.Y. Sept. 18, 1992) (refusing to review or consider an eighteen-page summary of Rule 9(b) deficiencies as it was "effectively evading the three page limitation . . . by including legal arguments in the form of exhibits rather than in the [defendants'] memorandum of law"); *Flaherty v. Filardi*, 2009 WL 749570, at *20 (S.D.N.Y. Mar. 20, 2009) (granting defendant's motion to strike plaintiff's declaration and attached exhibits that exceeded court-imposed page limits); *Alexander v. Murdoch*, 2011 WL 2802899, at *3 n.4 (S.D.N.Y. May 27, 2011) (rejecting party's "tactics" of using undersized font, cramped spacing, and reduced margins "in an effort to circumvent [the court's] refusal to grant a further enlargement of the page limit"); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 71 (E.D.N.Y. 2004) (granting defendant's motion to strike legal arguments set forth in plaintiff's counsel's reply affidavit, which had "the effect of circumventing the Court's page limits on memoranda"). The Defendants' effective expansion of the Court-imposed page limit should likewise be rejected.

***Second***, Defendants' Appendix defies multiple Local Civil Rules. Local Civil Rule 7.1 directs that "[n]o application will be heard unless the moving papers and a brief, [are] prepared in accordance with L.Civ. R. 7.2." L. Civ. R. 7.1(d)(1). Local Civil Rule 7.2 directs that briefs of greater length than contemplated by the rules will be accepted only if special permission of the judge is obtained before submission of the brief. L. Civ. R. 7.2(b). As noted above, the Court limited the Parties' briefing to fifty pages, which the Appendix violates. Moreover, Local Civil Rule 7.2 directs that all briefs "shall be in black lettering" and with double-spaced text and single-spaced footnotes. L. Civ. R. 7.2(c)-(d). Defendants' intricate color-coding scheme and "key," without which the Appendix would be indecipherable, violate this Rule as well, as does the

14

document's single-spaced text. Defendants' failure to adhere to the clear briefing rules of this Court further warrants rejection of the Appendix.

*Third*, the Appendix violates the Federal Rules of Civil Procedure. First, Rule 12(d) provides that "[i]f, on a motion under Rules 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). As noted above, the doctrines of incorporation by reference and judicial notice do not apply, nor does any cognizable exception to Rule 12(d).[6] Meanwhile, Rule 12(f) provides an independent basis for striking the Appendix. Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). Indeed, the Appendix is precisely the sort of extrinsic advocacy that other courts have found properly stricken under Rule 12(f) in the past. *See, e.g.*, *In re Acadia Pharms. Inc. Sec. Litig.,* 2020 WL 2838686, at *3 (S.D. Cal. June 1, 2020) (striking a twenty-five-page appendix under Rule 12(f) because it was "simply an extension of Defendants' argument and . . . exceeded the 25-page limit"). The Court should do the same here.

## CONCLUSION

For these reasons, the Appendix and all references and argument concerning, relating to, or relying on the Appendix should be stricken from the record.

---

[6] If the Court were to consider the Appendix, Defendants' Motion to Dismiss should be converted into one for summary judgment, and Plaintiff should be given a chance to conduct discovery and present evidence of its own. Fed. R. Civ. P. 12(d).

15

Dated: May 3, 2021

**CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, PC**

*s/ James E. Cecchi*
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Liaison Counsel for the Putative Class*

Respectfully submitted,

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Eric K. Gerard (admitted *Pro Hac Vice*)
Vanessa Milan (admitted *Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
jdancona@ktmc.com
egerard@ktmc.com
vmilan@ktmc.com

*Counsel for Lead Plaintiff Industriens
Pensionsforsikring A/S and Lead Counsel
for the Putative Class*

16

**<u>CERTIFICATE OF SERVICE</u>**

I, James E. Cecchi, hereby certify that on May 3, 2021, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Lead Plaintiff's Motion to Strike to be filed electronically with the Clerk of the Court using the ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 3, 2021

<u>*s/ James E. Cecchi*</u>
James E. Cecchi
**CARELLA BYRNE CECCHI**
**OLSTEIN BRODY & AGNELLO, PC**
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for the Putative Class*

17