James P. Smith III (admitted *pro hac vice*)
Matthew L. DiRisio (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
jpsmith@winston.com
mdirisio@winston.com

Richard Hernandez
Omar A. Bareentto
**MCCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
rhernandez@mccarter.com
obareentto@mccarter.com

*Counsel for Defendants Becton, Dickinson and Company,*
*Vincent A. Forlenza, Thomas E. Polen and Christopher R. Reidy*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, VINCENT A. FORLENZA, THOMAS E. POLEN, and CHRISTOPHER R. REIDY,<br><br>Defendants. | Case No. 2:20-cv-02155-SRC-CLW<br><br>Honorable Stanley R. Chesler<br>District Judge<br><br>Honorable Cathy L. Waldor<br>Magistrate Judge<br><br>**MOTION DAY:** June 2, 2021 |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO LEAD PLAINTIFF'S MOTION TO STRIKE

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................... 1

ARGUMENT..................................................................................................................... 2

    A.    THE APPENDIX CONTAINS NO ADDITIONAL ARGUMENTS BEYOND
    THOSE ASSERTED IN THE BRIEF ..................................................................3

        1.    The Brief's Safe-Harbor Argument is Self-Contained Without
        Reference to the Appendix...................................................................... 3

            a.    The Brief identifies and categorizes each forward-looking
            statement alleged in the SAC ........................................................ 4

            b.    The cautionary language immunizing the forward-looking statements
            is either quoted or cited in the Brief or contained in an exhibit..................... 6

        2.    The Appendix Merely Summarizes the Brief's Arguments ................................ 10

    B.    COURTS CONSISTENTLY REJECT EFFORTS TO USE RULE 12(F) TO
    STRIKE APPENDICES THAT AMPLIFY PLEADING DEFICIENCIES ..................11

        1.    Plaintiff's Motion is Procedurally Improper........................................................... 11

        2.    Plaintiff Cannot Satisfy the Standard on a 12(f) Motion ..................................... 12

        3.    Courts Across the Country Have Denied Motions to Strike Similar Charts......... 13

CONCLUSION................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amarin Corp. PLC Sec. Litig.*,
No. 3:19-cv-06601 (BRM) (TJB), 2021 WL 1171669 (D.N.J. Mar. 29, 2021) ......................12

*In re Anadigics, Inc., Sec. Litig.*,
Civil Action No. 08–5572 (MLC), 2011 WL 4594845 (D.N.J. Sept. 30, 2011),
*aff'd* 484 F. App'x 742 (3d Cir. 2012)...................................................................................12

*Bauer v. Eagle Pharm., Inc.*,
Civil Action No.: 16–3091(JLL), 2017 WL 2213147 (D.N.J. May 19, 2017) .....................8, 9

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004).....................................................................................................8

*Ibrahim v. DeFilippo*,
No. 3:19-cv-5021 (BRM) (TJB), 2021 WL 753898 (D.N.J. Feb. 26, 2021) ..........................12

*U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*,
456 F. Supp. 2d 46 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008)...............3, 11, 14, 15

*In re Merck & Co. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005).................................................................................................8, 9

*In re Merck Co., Inc., Sec., Derivative & "Erisa" Litig.*,
Civil Action No. 05-1151 (SRC), 2006 WL 8460903 (D.N.J. Jan. 20, 2006)...................13, 14

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) ...............................................................................4, 7, 14

*In re Navient Corp. Sec. Litig.*,
No. 17-8373, 2019 WL 7288881 (D.N.J. Dec. 30, 2019).........................................................2

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ..............................................................................................14

*Potter v. Newkirk*,
No. 17-08478, 2020 WL 6144756 (D.N.J. Oct. 20, 2020) ..................................................2, 12

*In re PTC Therapeutics, Inc. Sec. Litig.*,
Civ. No. 16–1124 (KM) (MAH), 2017 WL 3705801 (D.N.J. Aug. 28, 2017)............10, 13, 14

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)..........................................................................13

**Other Authorities**

Fed. R. Civ. P. 7(a) ...............................................................................................2, 11, 12

Fed. R. Civ. P. 12(f)................................................................................................ *passim*

Local Civil Rule 7.1 ....................................................................................................... 2

Local Civil Rule 7.2 ....................................................................................................... 2

Defendants Becton, Dickinson and Company ("BD" or the "Company") and Vincent A. Forlenza, Thomas E. Polen and Christopher R. Reidy ("Individual Defendants," and, with BD, "Defendants") respectfully submit this memorandum of law in opposition to Lead Plaintiff's Motion to Strike (ECF No. 76) and supporting memorandum of law (ECF No. 76-1).

## BACKGROUND

Lead Plaintiff Industriens Pensionsforsikring A/S ("Plaintiff") filed its Second Amended Class Action Complaint in this action on February 2, 2021 (ECF No. 60-2) ("SAC"). It spans nearly 100 pages and cites to 25 alleged misstatements from no less than eight extrinsic documents, none of which were attached. Plaintiff's support as to why each statement is purportedly misleading – which must be particularized under the PSLRA – consists of rote reference back to the same two or three paragraphs of the SAC (SAC ¶¶ 274-77).

Defendants filed their opening brief in support of their motion to dismiss the SAC on March 19, 2021 (ECF No. 69-1) ("Brief" or "Br."), together with the extrinsic documents incorporated by reference in the SAC and other judicially noticeable documents. For ease of reference, the Defendants also included a chart titled Appendix A ("Appendix" or "App'x A") that: (i) reproduced each challenged statement from the SAC; (ii) identified its source document; and (iii) repeated the grounds for dismissal asserted in the Brief with respect to each. Br. at 10 n.12; App'x A. As to those statements the Brief argued were forward-looking and protected by the PSLRA statutory safe-harbor, the chart recited the applicable cautionary language that qualified it – language that was either in the Brief itself or in an exhibit that the Brief cited and attached. The chart also used a color code to distinguish among the Brief's asserted grounds for dismissal, since many challenged statements were inactionable for several reasons. Simply put, the Appendix was provided for the Court's ease of reference.

On May 3, 2021, in conjunction with its opposition to Defendants' motion to dismiss, Plaintiff filed a motion to strike the Appendix under Fed. R. of Civ. P. 12(f) and Local Civil Rules 7.1 and 7.2 and an accompanying brief (ECF No. 76-1)[1] on the ground that it contains additional legal arguments not included in the Brief and thus exceeds the page limitation agreed to by the parties and so ordered by the Court. Mot. at 13.[2] For the reasons below, Plaintiff's claims are meritless and its motion to strike should be dismissed.

## **ARGUMENT**

Courts have "considerable discretion in disposing of a motion to strike under Rule 12(f)" (*id.*), which, dispositively in this case, applies only to pleadings, not motions to dismiss. Fed. R. Civ. P. 12(f) ("court may strike from a ***pleading*** an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter") (emphasis added); *Potter v. Newkirk*, No. 17-08478 (RBK/KMW), 2020 WL 6144756, at *4 (D.N.J. Oct. 20, 2020) (motions to strike are disfavored and courts regularly deny them "unless ***the allegations*** have no possible relation to the controversy and may cause prejudice to one of the parties or if ***the allegations*** will confuse the issues.") (emphasis added).[3] That alone dooms Plaintiff's motion. Even if it didn't, Plaintiff's motion fails because (i) the Appendix adds no substantive legal argument above and beyond those

---

[1] Citations to Plaintiff's memorandum of law in support of its motion are denoted "Mot. at __."

[2] In a footnote on the last page, Plaintiff alternatively states that, if the Court considers the Appendix, it should treat Defendants' motion as a motion for summary judgment. Such conversion would be premature, however, since the parties have not yet engaged in meaningful discovery. *See, e.g.*, *In re Navient Corp. Sec. Litig.*, No. 17-8373 (RBK/AMD), 2019 WL 7288881, at *7 (D.N.J. Dec. 30, 2019) (declining "to convert the motion to dismiss into a motion for summary judgment, as the parties appear to be at an early stage in discovery") (internal quotation omitted).

[3] Fed. R. Civ. P. 7(a) identifies pleadings as: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim …; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer.

2

asserted in the Brief and (ii) Plaintiff cannot come close to satisfying the standard imposed by Rule 12(f).

## A.    THE APPENDIX CONTAINS NO ADDITIONAL ARGUMENTS BEYOND THOSE ASSERTED IN THE BRIEF

Even if Rule 12(f) were applicable to a brief in support of a motion to dismiss, it would be entirely inapt here.  Plaintiff does not assert that the Appendix is irrelevant or scandalous.[4]  Neither does it say that the Appendix is redundant – on the contrary, Plaintiff asserts that the Appendix contains additional arguments that were not raised in the Brief.  Even if that were a viable ground for a Rule 12(f) motion (it is not), it is wrong.  As shown below, the Appendix simply organizes the misstatements alleged in the SAC in the form of a chart with the corresponding ground(s) for dismissal laid out in the Brief, using formatting to clarify which portions of the alleged misstatements are subject to which grounds, *as explained in the Brief*.

### 1.    The Brief's Safe-Harbor Argument is Self-Contained Without Reference to the Appendix

Plaintiff's primary contention is that the statutory safe harbor defense raised in the Brief – *i.e.*, that several of the challenged statements are immune from liability because they are forward-looking and accompanied by meaningful cautionary language – cannot be understood without reference to the Appendix.  Specifically, Plaintiff asserts that Defendants do not (a) identify the forward-looking statements in the Brief or (b) sufficiently connect the relevant cautionary language to the forward-looking statement(s) it immunizes.  Neither assertion withstands scrutiny.

---

[4] In the context of Rule 12(f), "[a] matter is immaterial or impertinent when not relevant to the resolution of the issue at hand." *U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 51 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008).  "Material is scandalous if it generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Id.* (internal quotation omitted).

>           a.      The Brief identifies and categorizes each forward-looking
>                   statement alleged in the SAC.

Plaintiff's argument is based on the faulty assertion that Defendants do not "discuss the substance of any *specific* purportedly forward-looking statement" in the Brief.  Mot. at 6 (emphasis in original).  In fact, the pertinent portions of seven of the forward-looking statements are *quoted* in the Brief:  Stmts. 1, 6, 10, 17-18, 23, and 25.  Br. at 9-12.  The fact that the quoted language is not reprinted in the Brief's safe harbor argument section – Plaintiff's apparent grievance – is of no moment; the background section of the Brief quotes, describes and assigns a number to each of these seven statements, to which the argument section refers back as shorthand.  This is the equivalent of using a defined term – ubiquitous in written advocacy.  As such, Plaintiff's assertion that the Brief does "not present, describe, or otherwise engage with the text of *any* of these statements" (Mot. at 7 (emphasis in original)) is demonstrably wrong.

Regardless, the fact that Defendants did not reproduce in the Brief the full text of every forward-looking statement set forth in the Appendix – each of which was pulled directly from the SAC – is irrelevant.  The Brief indisputably identifies and cites to each forward-looking statement alleged in the SAC and explains that each statement falls into one (or both) of two categories that makes it "forward-looking": (i) FY20 earnings guidance; and (ii) the Company's expected future performance.  Br. at 24-25.[5]  The accompanying Appendix presents in green, underlined typeface the portions of the challenged statements that, *as explained in the Brief*, fall into one or both of

---

[5] This Court has blessed this "categorization" approach to PSLRA safe harbor arguments even where, unlike in this case, defendants did *not* identify each forward-looking statement in the complaint.  *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 530 (D.N.J. 2010) (adopting defendants' proffered categories of forward-looking statements where they "d[id] not specifically indicate which statements in the Amended Complaint [we]re forward-looking [and] instead … provide[d] examples[]" of statements falling into each category).  Again, Defendants did indicate which statements were forward-looking in the Brief, and then simply laid them out in a more user-friendly format for the Court's convenience in the Appendix.

these categories.  In other words, it simply repackages the same grounds for dismissal in an easily digestible chart, as opposed to narrative form.

For instance, Defendants argue in their Brief that Stmt. 3 is an inactionable forward-looking statement because it consists of FY20 guidance and a discussion of the Company's future expectations.  Br. at 18, nn.18-19, 24-25, nn.29 & 31.  In the Appendix, the portions of Stmt. 3 reading "guidance for fiscal year 2020" and "expect[ed]" earnings are presented in green typeface and underlined.  App'x A, at 3.  The Appendix is not necessary to decipher the argument.  That the phrases "guidance for fiscal year 2020" and "expected" are the forward-looking components of Stmt. 3 is self-evident.  Plaintiff's assertion to the contrary (Mot. at 7-8) defies law and common sense.

Plaintiff's objection to the Appendix's treatment of Stmt. 13 is equally baseless.  Stmt. 13 appears as follows in the Appendix:

> ***While this BD organizational unit remains subject to the amended consent decree, which includes the requirements of the original consent decree, it has made substantial progress in its compliance efforts***.  However, we cannot predict the outcome of this matter, and the amended consent decree authorizes the FDA, in the event of any violations in the future, to order us to cease manufacturing and distributing infusion pumps, recall products and take other actions ….
>
> We also cannot currently predict whether additional monetary investment will be incurred to resolve this matter or the matter's ultimate impact on our business.  ***We may be obligated to pay more costs in the future because, among other things, the FDA may determine** that we are not fully compliant with the amended consent decree and therefore impose penalties under the amended consent decree*, and/or we may be subject to future proceedings and litigation relating to the matters addressed in the amended consent decree.  ***As of September 30, 2019, we do not believe** that a loss is probable in connection with the amended consent decree*, and accordingly, we have no accruals associated with compliance with the amended consent decree."

App'x A, at 15-16.  Plaintiff asserts that, absent the foregoing color-coding:

> the reader would have no indication that Defendants' safe-harbor argument was limited to three short phrases—twelve words—interspersed throughout a statement consisting of two paragraphs.  Nor would the reader know that Defendants claim

5

the first sentence, and only the first sentence, is an 'accurate statement[s] of historical or present fact not alleged to be false,' as they do not even suggest this point in the Brief.

Mot. at 9 (internal quotation omitted). Wrong again. To begin with, the green-colored portions contain the words "predict" and "may" – words that are paradigmatically forward-looking. Any reader of the Brief, when cross-referencing the cited statement, would understand that Defendants' safe harbor argument is predicated on those phrases. Moreover, Stmt. 13 actually appears in BD's 2019 10-K risk disclosures, which by their nature relate to future risks and events.[6] In short, the plain language of Stmt. 13, when read in conjunction with the applicable portion of the Brief, leaves no doubt as to which portions relate to which arguments for dismissal – regardless of whether or not one refers to the Appendix. The same goes for the balance of the challenged statements.

        b.     *The cautionary language immunizing the forward-looking statements is either quoted or cited in the Brief or contained in an exhibit.*

Plaintiff also asserts that, absent the Appendix, the Brief would fail to "connect" the immunizing cautionary language to the forward-looking statement or statements to which it corresponds, *i.e.*, the Brief (i) only identifies "warning language in two discrete documents filed at the outset of the Class Period" (Mot. at 9); (ii) fails to apply cautionary language from the November 5, 2019 guidance and the 2019 10-K to certain forward-looking statements in other documents (*id*. at 10); and (iii) does not "explain how warnings issued on November 27, 2019,

---

[6] Nor is it a revelation (much less a "partisan assertion") (Mot. at 12) that the first sentence of Stmt. 13, warning of the Company's continued obligation to comply with the consent decree (color coded in blue, but also *quoted* in the Brief), is an accurate statement of historical fact not alleged to be false. Indeed, Plaintiff itself relies on the accuracy of that statement in its own pleading. SAC ¶ 83 ("Defendant's knew BD was subject to the Amended Consent Decree … as the Company acknowledged in its 2019 Form 10-K[.]").

could adequately caution investors about a statement made a week earlier, on November 21, 2019"
(*id.* at 11).  None of these arguments has merit.

*First*, Plaintiffs' contention that the Brief relies solely on cautionary language from the
November 5, 2019 press release and the 2019 Form 10-K is patently wrong.  In addition to the
warnings in Exhibits A (the 2019 10-K) and J (the Nov. 5, 2019 press release), the Brief discusses
cautionary language in Exhibits C, K, and M.  *See* Br. at 26 (citing to Exhibit C and explaining
that "the earnings call later that day referred back to this cautionary language [in Exhibit J]")[7]; *id.*
at 26 n.34 (quoting cautionary language from Exhibits K and M).  Thus, wholly independent of
the Appendix, the Brief clearly identifies the relevant cautionary language by citing to the source
documents annexed as exhibits.

*Second*, Plaintiffs' argument that the Brief fails to specify which forward-looking
statements (or portions thereof) are covered by the warning language in the November 5, 2019
press release describing "difficulties inherent in product development …; product efficacy or
safety concerns resulting in product recalls or actions taken by the FDA or other regulators" (Mot.
at 10) ignores the surrounding context.  The very same portion of the Brief quoting that cautionary
language unequivocally identifies the type of forward-looking statements to which it applies – *i.e.*
statements related to "BD's performance, *including future revenues and earnings per share*" –
and identifies "product development" risks and "product recalls or actions being taken by the
FDA" as "factors [that] could cause actual results to vary materially."  Br. at 26.  As such, the
cautionary language from the November 5, 2019 press release plainly protects both forward-
looking revenue estimates as well as the Company's future performance expectations (*i.e.* "BD's

---

[7] *See Nat'l Junior Baseball League*, 720 F. Supp. 2d at 535 n.16 (finding reference to cautionary
language contained in a separate document sufficient for purposes of safe harbor).

performance").  The Brief goes on to specify each of the challenged statements falling into these two categories in footnotes 29 and 31 – all without need to resort to the Appendix (which, again, simply lays it all out in a ready-reference format).  *Id*. at 24-25.

Similarly, the cautionary language from the 2019 10-K excerpted in the Brief identifies "[a]ll statements that address our future operating performance or events or developments that we expect or anticipate will occur in the future" as forward-looking statements and discloses various "factors that could cause our actual results to differ from our expectations in any forward-looking statements."  *Id*. at 27.  It likewise explains that "[f]orward-looking statements may be identified by the use of words such as 'plan,' 'expect,' 'believe,' 'intend,' 'will,' 'may,' 'anticipate,' 'estimate' and other words of similar meaning."  *Id.*  Thus, Plaintiff's assertion that the Brief fails to tie the 10-K cautionary language to statements like "the FDA *may* determine" in Stmt. 13 (*see* above) – which, to be clear, is plucked from the same 2019 10-K – is nonsensical.

*Finally*, Plaintiff's grievance that certain cautionary language does not reside in the same document as the forward-looking statement(s) it qualifies is (i) a substantive argument inappropriate for a motion to strike and should not be considered[8] and (ii) wrong as a matter of law.  To satisfy the PSLRA safe harbor for forward-looking statements, cautionary language need only be "directly related to the alleged misrepresentations," and does not have to "actually accompany the alleged misrepresentation."  *Bauer v. Eagle Pharm., Inc.*, Civil Action No.: 16–3091(JLL), 2017 WL 2213147, at *8 (D.N.J. May 19, 2017) (quoting *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 243 (3d Cir. 2004)); *see also In re Merck & Co. Sec. Litig.,*432 F.3d

---

[8] Plaintiff thus cynically violates the very principle it purports to advance, effectively using this motion to strike in the manner it (incorrectly) suggests Defendants used the Appendix:  to arrogate additional pages to itself to make substantive arguments that belong in its brief in opposition to the motion to dismiss, but would have caused it to exceed the page limit.

261, 273 n.11 (3d Cir. 2005) ("Cautionary statements do not have to be in the same document as the forward looking statements"). In *Bauer v. Eagle Pharmaceuticals*, cautionary language in the defendant's 10-Q and 10-K filings warned that it could not ensure timely FDA approval of its products. 2017 WL 2213147, at \*10. The court found that these cautionary statements were "directly related to … alleged misrepresentations" made in separate press releases and earnings calls about the potential effect of FDA approval on future prospects and thus were sufficient to inoculate such forward-looking statements. *Id.* at \*8, 11.

So too, here. By way of example, the Brief makes clear that the 2019 10-K cautionary language was "tailored precisely to the risk that eventuated" by warning of the effect of delays and adverse action by the FDA on earnings guidance and future expectations. Br. at 26-28. Indeed, the Brief demonstrates that the 10-K's "extensive cautionary language" is "applicable to all forward-looking statements made 'in publicly released materials, both written and oral[.]'" *Id.* at 26 (quoting Ex. A, BD's 2019 10-K). In other words, the Brief clearly establishes the link between the cautionary language in the 2019 10-K and forward-looking statements in other documents.[9]

In sum, without any reference to the Appendix, all of the relevant cautionary language is either quoted or cited in the brief, included in exhibits incorporated by reference in the SAC and tied in the Brief to the forward-looking statements it qualifies.[10]

---

[9] It is thus irrelevant that the Jefferies conference occurred days before the 2019 10-K was filed. In any event, the statements there merely reiterated FY20 guidance, which was already subject to cautionary language in the November 5, 2019 press release announcing it. Br. at 11, 24.

[10] Ex. A, BD's 2019 10-K, is discussed at SAC ¶¶ 286-92; Ex. J, the November 5, 2019 Press Release is discussed at SAC ¶¶ 263-64; Ex. C, the November 5, 2019 Earnings Call Transcript is discussed at SAC ¶¶ 265-77; Ex. K, the JPMorgan Healthcare Conference Transcript is discussed at SAC 299-306; and Ex. M, the Annual Shareholder Meeting is discussed at SAC ¶¶ 307-10.

### 2.    The Appendix Merely Summarizes the Brief's Arguments

Plaintiff's theory that the Appendix's use of color-coding, underlining and a "Category" column constitutes "legal argument" beyond that contained in the Brief is not supportable. Plaintiff does not point to any substantive argument reflected in the Appendix that is not already made in the Brief. Nor could it. The Appendix neither asserts new legal arguments nor seeks to introduce extrinsic documents not already incorporated by the SAC and thus appropriately attached as exhibits to Defendants' motion to dismiss. Rather, the Appendix simply categorizes in chart form, for the convenience of the Court, the grounds for dismissal already set forth in the Brief. This is indisputably permissible. *See, e.g.*, *In re PTC Therapeutics, Inc. Sec. Litig.*, Civ. No. 16–1124 (KM) (MAH), 2017 WL 3705801, at *3 n.5 (D.N.J. Aug. 28, 2017) (declining to strike a similar chart that "does nothing more than organize portions of the AC (reprinted verbatim) and refer to arguments already raised in the papers").[11]

Specifically, the color-coding in the Appendix corresponds to the grounds for dismissal already set forth in the Brief with regard to that particular statement. For instance, as noted, green typeface corresponds to statements identified in the Brief as forward-looking in footnotes 18-19, 29 and 31 (the underlining serves only to reemphasize the portion(s) of the statement most obviously tied to the corresponding argument/case law in the Brief).[12] And the "Category" column essentially just reiterates in narrative form what the color-coding conveys visually.

---

[11] Plaintiff also takes issue with the Appendix's "key," which it characterizes as additional argument. But the key merely uses color-coding to convey in a chart what footnote 17 of the Brief already said in narrative form. *Compare* App'x at 30 (red typeface applied to Stmts. 12-16 represents "the portion of an alleged misstatement that is a risk factor warning made prior to materialization of the risk identified") *with* Br. at 16 n.17 ("**Stmts. 12-16** are from BD's 2019 10-K, which discloses risks that had not yet materialized when the 10-K was filed.").

[12] Plaintiff's contention that the Appendix contains additional argument because the color-coding contradicts allegations in the SAC is a red herring. Mot. at 12 (blue typeface represents Stmt. 8 as accurate, while the SAC alleges it to be false). The inquiry here is whether the Appendix adds

10

The Appendix is helpful precisely because of *Plaintiff's* tactic of piling block quote on top of block quote without specific support for the alleged falsity of each particular statement and instead alleging, in one fell swoop, that dozens of statements (and vast swaths of text) are false or misleading based on the same two or three paragraphs in the Complaint. Having unpacked and marshalled those scattershot allegations in their Brief, Defendants went on to provide the Appendix "[f]or ease of reference" (Br. at 10 n.12), and to save the Court from having to endlessly flip back and forth between the Brief and the numerous, often voluminous cited exhibits and ponderous SAC. In other words, the Appendix was intended to do for the Court "organizational work that the Court would otherwise have to take upon itself," *See U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 53 (D.D.C. 2006), *aff'd,* 530 F.3d 980 (D.C. Cir. 2008) (denying a motion to strike a chart the court found was "was submitted in good faith as a demonstrative exhibit, not as part of a bad faith effort to evade and undermine the purpose of the Local Rules").

**B.     COURTS CONSISTENTLY REJECT EFFORTS TO USE RULE 12(f) TO STRIKE APPENDICES THAT AMPLIFY PLEADING DEFICIENCIES**

Federal courts have consistently rejected motions to strike appendices similar to the one at issue here, particularly in securities class actions where lengthy pleadings often contain a multitude of block quotes and cross-references that obscure pleading deficiencies. For the reasons discussed below, Plaintiff's motion should meet the same fate.

**1.     Plaintiff's Motion is Procedurally Improper**

In federal courts, motions to strike are governed by Rule 12(f), which on its face is limited to ***pleadings***. Fed. R. Civ. P. 12(f). Papers that constitute "pleadings" are enumerated in Federal

---

argument ***to the Brief***, which quite clearly identifies Stmt. 8 as an accurate statement of historical fact. *See* Br. at 30.

11

Rule of Civil Procedure 7(a), and do not include motions, briefs or appendices attached thereto. *See* Fed. R. Civ. P. 7(a); *In re Anadigics, Inc., Sec. Litig.,* Civil Action No. 08–5572 (MLC), 2011 WL 4594845, at \*12 (D.N.J. Sept. 30, 2011), *aff'd* 484 F. App'x 742 (3d Cir. 2012) (denying plaintiff's motion to strike the appendix submitted with defendant's motion to dismiss as procedurally improper under Rule 12(f)); *see also In re Amarin Corp. PLC Sec. Litig.*, No. 3:19-cv-06601 (BRM) (TJB), 2021 WL 1171669, at \*6 (D.N.J. Mar. 29, 2021) (denying the motion to strike because it "does not attack a pleading, rather it attacks exhibits attached to Defendants' motion to dismiss, which is procedurally improper"); *Ibrahim v. DeFilippo*, No. 3:19-cv-5021 (BRM) (TJB), 2021 WL 753898, at \*14 (D.N.J. Feb. 26, 2021) (denying "Plaintiff's motion to strike [because it] does not attack a pleading, rather it attacks motions to dismiss, which is procedurally improper").

## 2. Plaintiff Cannot Satisfy the Standard on a 12(f) Motion

In any event, Plaintiff does not (and cannot) satisfy the standard for a Rule 12(f) motion. Motions to strike should be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Potter*, 2020 WL 6144756, at \*4 (internal citation omitted).[13] Here, the Appendix's relation to the controversy cannot seriously be challenged and the Appendix eliminates confusion, rather than creates it.

Moreover, Plaintiff has failed to allege that it will suffer any prejudice by virtue of the Appendix. As discussed above, the Appendix does not add any substantive legal argument beyond that contained in the Brief. As such, neither the Plaintiff nor the Court is "unduly burdened" by

---

[13] The very use of the word "allegations" to describe the material sought to be stricken further demonstrates, as shown in the prior section, that attempting to strike the Appendix is trying to force a square peg into a round hole.

12

the Appendix.  On the contrary, the Appendix is "an organizational tool" routinely permitted by courts designed precisely in order to *lessen* the burden on the Court.  *In re PTC Therapeutics*, 2017 WL 3705801, at *3 n.5 ("Plaintiffs do not argue, however, that they are prejudiced in any way by the chart.  Nor can I discern prejudice: The chart does nothing more than organize portions of the AC (reprinted verbatim) and refer to arguments already raised in the papers.").

Regardless, Plaintiff cannot establish prejudice because it has had an opportunity to respond.  *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2011 WL 1303387, at *9 (N.D. Ill. Mar. 31, 2011) (because Plaintiffs had submitted a response to the chart, they would suffer no prejudice if the court considered both the chart and Plaintiffs' response).[14]  Indeed, as noted above, Plaintiff has improperly used this very motion to mount its substantive arguments in response to the arguments for dismissal that it claims were made in the Appendix, but were in fact advanced in the Brief.

> **3.**     **Courts Across the Country Have Denied Motions to Strike Similar Charts**

For the foregoing reasons, federal courts have repeatedly rebuffed efforts to misuse Rule 12(f) under these very circumstances.  Plaintiff's assertion that "Defendants have provided no legal basis for considering their improper Appendix, and Plaintiff has found none" (Mot. at 2), is misleading at best.  Plaintiff acknowledges that courts accept organizational charts that accompany motions to dismiss securities class action complaints, but characterizes that authority as "permit[ting] the attachment of nonsubstantive, purely organizational appendices."  *Id*. at 4-5 (citing *In re Merck Co., Inc., Sec., Deriv. & "Erisa" Litig.,* Civil Action No. 05-1151 (SRC), 2006

---

[14] Notably, the chart accepted in *Garden City Employees' Retirement Systems v. Anixter International, Inc.* included a column that categorized the defenses applicable to each challenged statement and "contain[ed] a short description of why the statement is inactionable (for example, 'Immaterial puffery')[.]"  2011 WL 1303387, at *9.

WL 8460903, at *4-5 (D.N.J. Jan. 20, 2006)); *see also In re PTC Therapeutics*, 2017 WL 3705801, at *3 n.5; *In re NYSE Specialists Sec. Litig.,* 260 F.R.D. 55, 65 (S.D.N.Y. 2009). That's exactly what the Appendix is.

Indeed, many of Plaintiff's cases dealt with appendices that are substantially identical to the Appendix here. This Court in *In re PTC Therapeutics, Inc. Securities Litigation* declined to strike a chart that "compare[d] the alleged misstatements side-by-side with defendants' arguments as to why those statements are not false or misleading." 2017 WL 3705801, at *3 n.5. Although plaintiff "gripe[d] … that defendants effectively augmented the size of their … brief by attaching the chart as an exhibit," the Court found the chart did "nothing more than organize portions of the AC (reprinted verbatim) and refer to arguments already raised in the papers." *Id.* The Appendix here does the same thing. *See also Nat'l Junior Baseball League* ., 720 F. Supp. 2d 517 at 535 (granting motion to dismiss in part under statutory safe harbor and relying on "[c]hart documenting relevant cautionary statements made by [defendant] before and during the Class Period").

Finally, in *K & R Ltd.*, the court denied a motion to strike a chart annexed to a motion to dismiss notwithstanding that it included "five entries that arguably were not presented in [defendant's] brief, and thus would be argued for the first time in the chart." 456 F. Supp. 2d at 53. In the court's view, "the fact that the chart consist[ed] overwhelmingly—or perhaps entirely— of information and argument presented elsewhere in the parties' various submissions supports the notion that the chart was submitted in good faith as a demonstrative exhibit, not as part of a bad faith effort to evade and undermine the purpose of the Local Rules." *Id.* The court thus denied the motion because plaintiff had failed to demonstrate it would have to "shoulder a formidable burden" nor "any concrete way in which it would be prejudiced by admission of the exhibit." *Id.*

14

(internal quotation omitted).  Moreover, the court blessed the chart as "organizational work that the Court would otherwise have to take upon itself." *Id.*  Exactly.

Here, as shown above, it cannot be seriously disputed that the Appendix "consists overwhelmingly—or perhaps entirely—of information and argument presented elsewhere in the parties' various submissions," and imposes no prejudice on Plaintiff.  Instead, as the court in *K & R Ltd.* observed, the Appendix solves exactly the type of organizational jigsaw puzzle the Court would otherwise have to do on its own.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion in its entirety.

Dated:  June 2, 2021

Respectfully submitted,

**MCCARTER & ENGLISH, LLP**

/s/  Richard Hernandez
Richard Hernandez
Omar A. Bareentto
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
rhernandez@mccarter.com
obareentto@mccarter.com

**WINSTON & STRAWN LLP**
James P. Smith III (admitted *pro hac vice*)
Matthew L. DiRisio (*pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jpsmith@winston.com
mdirisio@winston.com

*Counsel for Defendants Becton, Dickinson and Company, Vincent A. Forlenza, Thomas E. Polen and Christopher R. Reidy*

15

**CERTIFICATE OF SERVICE**

I, Richard Hernandez, hereby certify that on June 2, 2021, I caused a true and correct copy of the foregoing Memorandum of Law in Opposition to Lead Plaintiff's Motion to Strike to be filed electronically with the Clerk of the Court using the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  June 2, 2021

/s/  Richard Hernandez

Richard Hernandez
Omar A. Bareentto
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
rhernandez@mccarter.com
obareentto@mccarter.com

*Counsel for Defendants Becton, Dickinson and Company, Vincent A. Forlenza, Thomas E. Polen and Christopher R. Reidy*