**CARELLA BYRNE CECCHI**
 **OLSTEIN BRODY & AGNELLO, PC**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Eric K. Gerard (admitted *Pro Hac Vice*)
Vanessa Milan (admitted *Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Lead Plaintiff Industriens
Pensionsforsikring A/S and Lead Counsel
for the Putative Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, VINCENT A. FORLENZA, THOMAS E. POLEN, and CHRISTOPHER R. REIDY,<br><br>Defendants. | Case No. 2:20-cv-02155-SRC-CLW<br><br>Hon. Stanley R. Chesler<br>District Judge<br><br>Hon. Cathy L. Waldor<br>Magistrate Judge |

**REPLY IN FURTHER SUPPORT OF**
**LEAD PLAINTIFF'S MOTION TO STRIKE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

I. Defendants' Inappropriate Appendix Is Properly Stricken Under Rule 12(f) and the Court's Inherent Authority to Control Its Docket ............................................2

II. The Appendix Amounts to Additional Briefing and Should Be Stricken ...........5

    A. Defendants' Safe Harbor Argument Is Unintelligible Absent the Appendix ............................................................................................ 5

    B. Defendants Rely on the Appendix to Furnish the Necessary Detail Sorely Lacking From Their Brief ....................................................... 11

CONCLUSION ................................................................................................... 12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acadia Pharms. Inc. Sec. Litig.*,
 2020 WL 2838686 (S.D. Cal. June 1, 2020)................................................................................3

*Barry v. Barry*,
 78 F.3d 375 (8th Cir. 1996) ........................................................................................................2

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997)......................................................................................................4

*CSR Ltd. v. Cigna Corp.*,
 2005 WL 3132188 (D.N.J. Nov. 21, 2005) .................................................................................5

*Fogel v. Wal-Mart de México SAB de CV*,
 2017 WL 751155 (S.D.N.Y. Feb. 27, 2017)................................................................................3

*In re Hypodermic Prods. Antitrust Litig.*,
 2007 WL 1959225 (D.N.J. June 29, 2007)...................................................................................5

*Kelsey v. Allin*,
 2016 WL 825236 (N.D. Ill. Mar. 2, 2016)...................................................................................3

*LaRouche v. Dep't of the Treasury*,
 2000 WL 805214 (D.D.C. Mar. 31, 2000)....................................................................................2

*Mayer v. Belichick*,
 605 F.3d 223 (3d Cir. 2010).........................................................................................................3

*Mirabal v. Comm'r of Soc. Sec.*,
 2009 U.S. Dist. LEXIS 12668 (D.N.J. Feb. 17, 2009) ................................................................5

*Moret v. Geren*,
 494 F. Supp. 2d 329 (D. Md. 2007)..............................................................................................2

*Nat'l Jr. Baseball League v. Pharmanet Dev. Grp. Inc.*,
 720 F. Supp. 2d 517 (D.N.J. 2010) ..............................................................................................5

*Potter v. Newkirk*,
 2020 WL 6144756 (D.N.J. Oct. 20, 2020)....................................................................................2

*In re PTC Therapeutics, Inc. Sec. Litig.*,
 2017 WL 3705801 (D.N.J. Aug. 28, 2017) ...............................................................................4, 5

*Schiller v. Physicians Res. Grp., Inc.*,
    2002 WL 318441 (N.D. Tex. Feb. 26, 2002)...............................................................3

*U.S. of Am. v. Est. of Elson*,
    421 F. Supp. 3d 1 (D.N.J. 2019) ....................................................................................3

*U.S. of Am. ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin.* Agency,
    456 F. Supp. 2d 46 (D.D.C. 2006) .................................................................................4

**Other Authorities**

D.D.C. LCvR 7(h)(1) ........................................................................................................4

Fed. R. Civ. P. 12(b)(6)....................................................................................................11

L. Civ. R. 7.2....................................................................................................................11

In response to Defendants' Memorandum of Law in Opposition to Lead Plaintiff's Motion to Strike (ECF No. 79) ("Opp."), Lead Plaintiff Industriens Pensionsforsikring A/S ("Plaintiff") respectfully submits this Reply in further support of its Motion (ECF No. 76) ("Motion to Strike" or "MTS") Defendants' Appendix A (ECF No. 69-17) ("Appendix" or "App'x"), which was submitted with Defendants' Motion to Dismiss the Second Amended Class Action Complaint (ECF No. 69) and Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Class Action Complaint (ECF No. 69-1) ("Brief" or "Br.").[1]

## **INTRODUCTION**

Nowhere in Defendants' fifteen-page defense of the Appendix do they provide a legal justification for the lengthy annex filled with fact-specific contentions that the impressionistic approach of their Brief failed to deliver. Instead, Defendants sidestep this threshold question, relying on a procedural claim that Rule 12(f) is not the correct means by which to address their improper filing. Yet numerous cases, including their own authority, make clear that it is.

Meanwhile, Defendants devote most of their opposition to a convoluted, highly detailed—and largely inaccurate—explanation of where they claim various elements of the Appendix can be found in the Brief if the reader looks hard enough. That Defendants require such a windup is itself testament to the Brief's incompleteness when read on its own. In truth, if the Appendix were disregarded (the real test of whether it is an integral addition or merely a redundant summary), the reader would be unable to reliably decipher, among other things: (1) which of Defendants' assigned "Stmt." numbers apply to which alleged misstatements in the Complaint; (2) which alleged misstatements Defendants contend are forward-looking; (3) which *portions* of those

---

[1] Unless otherwise defined, capitalized terms have the meanings ascribed to them in the Second Amended Class Action Complaint (ECF No. 60-2) ("Complaint" or "Compl.") or the Motion to Strike, all emphasis is added, and all internal citations and quotation marks are omitted.

alleged misstatements Defendants contend are forward-looking; (4) what purported cautionary language supposedly applies to those forward-looking portions; and (5) what other legal arguments apply to various other portions of the alleged misstatements. Because the Appendix supplies the specifics needed to apply the abstractions of the Brief to Plaintiff's particularized allegations, it can only be viewed as a necessary supplement that improperly expands, to Defendants' advantage, the page limits set by the Court. It should thus be stricken.

I.      **Defendants' Inappropriate Appendix Is Properly Stricken Under Rule 12(f) and the Court's Inherent Authority to Control Its Docket**

Dodging Plaintiff's observation that they have not identified a basis for their Appendix, Defendants rest their main opposition to the Motion to Strike on a claim that Rule 12(f) only permits the Court to strike a "pleading." *See* Opp. 11-12 (citing Fed. R. Civ. P. 7(a) & 12(f)). Not so. District courts have long recognized that Rule 12(f) is a proper vehicle by which to strike an improper submission even after the pleading stage, as it is "the only method of attack" available to the opposing party. *LaRouche v. Dep't of the Treasury*, 2000 WL 805214, at \*13 (D.D.C. Mar. 31, 2000), *amended in part sub nom. LaRouche v. U.S. Dep't of Treasury*, 2000 WL 33122742 (D.D.C. Nov. 3, 2000) (rejecting argument that motion to strike did not apply to affidavits because of omission from Rule 7(a)'s definition of "pleading"); *see also Moret v. Geren*,  494 F. Supp. 2d 329, 336 (D. Md. 2007) (finding that Rule 12(f) can be used to strike a non-pleading because "the Federal Rules provide no other means to contest their sufficiency"); *Barry v. Barry*, 78 F.3d 375, 379 (8th Cir. 1996) (striking non-pleadings).[2]

---

[2] Defendants' reliance on a passage from *Potter v. Newkirk* (quoting a case that addressed a motion to strike a counterclaim) is misplaced. *See* Opp. 12 (quoting 2020 WL 6144756, at \*4 (D.N.J. Oct. 20, 2020) (quoting *River Road Dev. Corp. v. Carlson Corp.*, 1990 WL 69085, at \*2 (E.D. Pa. May 23, 1990)). As discussed above, the federal courts recognize Rule 12(f) as an appropriate way to address improper filings, and Defendants do not contest that the Court can strike or disregard unauthorized or deficient documents from its docket.

2

Even were Defendants' arguments regarding Rule 12(f)'s limitations correct (they are not), they do not contend that the Court lacks authority to reject an improper filing. Indeed, this Court's authority in that regard cannot be questioned. Federal courts' "inherent right to control their own dockets. . . . includes the right to strike documents other than pleadings from its dockets." *In re Acadia Pharms. Inc. Sec. Litig.,* 2020 WL 2838686, at *3 (S.D. Cal. June 1, 2020). Exercise of this power is especially justified when a party uses an appendix to circumvent court-ordered page limits, as Defendants have tried to do here. *See Fogel v. Wal-Mart de México SAB de CV*, 2017 WL 751155, at *18 (S.D.N.Y. Feb. 27, 2017), *aff'd sub nom. Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018) ("[t]he Court certainly has the authority to strike exhibits and pages that are attached to circumvent its page limits"). Courts also often disregard offending materials even when they do not actually strike them from the record. *See, e.g.*, *U.S. of Am. v. Est. of Elson*, 421 F. Supp. 3d 1, 5 (D.N.J. 2019) ("When presented with extrinsic documents not properly considered on a motion to dismiss, the Court may of course simply disregard them . . . ."); *Kelsey v. Allin*, 2016 WL 825236, at *1 n.1 (N.D. Ill. Mar. 2, 2016) (declining to consider a chart summarizing public filings); *Schiller v. Physicians Res. Grp., Inc.*, 2002 WL 318441, at *1 n.1 (N.D. Tex. Feb. 26, 2002), *aff'd Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563 (5th Cir. 2003) (declining to consider appended charts).

Defendants fail to explain why the Court should not exercise that authority here. Their attempt to shift the burden to Plaintiff to prove that the Appendix should be stricken ignores well-settled law limiting the materials that may be considered on a motion to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (court deciding Rule 12(b)(6) motion "must consider *only* the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents");

3

*see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997) (finding district court's reliance on the defendant's brief and accompanying affidavit was impermissible when ruling on the motion to dismiss). Meanwhile, conceding that the Appendix is not subject to judicial notice, Defendants offer no other cognizable legal basis for their improper submission.

The dusting of case law Defendants offer in support of their Appendix does not redress this deficiency. They misread *United States of America ex rel. K & R Ltd. Partnership v. Massachusetts Housing Finance Agency*, erroneously claiming that the court there "denied a motion to strike a chart annexed to a motion to dismiss." Opp. 14 (citing 456 F. Supp. 2d 46, 53 (D.D.C. 2006), *aff'd U.S. ex rel. K & R Ltd. P'Ship v. Mass. Hous. Fin. Agency*, 530 F.3d 980 (D.C. Cir. 2008)). In fact, the *K & R Ltd.* opinion came at the summary-judgment stage and, among other things, addressed a motion to strike a chart summarizing the parties' positions on the movant's statement of undisputed material facts that the local rules *required*. 456 F. Supp. 2d at 53; *see also* D.D.C. LCvR 7(h)(1) (requiring movant to submit statement of undisputed material facts in conjunction with motion for summary judgment and opponent to submit corresponding statement in response). Defendants here find no analogous basis for their Appendix, which *violates* several provisions of this Court's Local Civil Rules. *See* MTS 14-15 (citing L. Civ. R. 7.1(d)(1), 7.2(b)-(d)). Moreover, *K & R Ltd.* ***confirms that a motion to strike under Rule 12(f) is the correct vehicle by which to address an improper filing*** even at so late a stage as summary judgment, in direct conflict with Defendants' present position. *See* 456 F. Supp. 2d at 51 n.4 (citing *LaRouche*, 2000 WL 805214, *13 (rejecting argument that motion to strike did not apply to affidavits because of omission from Rule 7(a)'s definition of "pleading")); *cf.* Opp. 2, 11-12.

*In re PTC Therapeutics, Inc. Securities Litigation* is similarly unhelpful to Defendants' cause. The chart there did "nothing more than organize portions of the [complaint] (***reprinted***

4

*verbatim*) and refer to arguments already raised in the papers," thus causing no prejudice to the opposing party. 2017 WL 3705801, *3 n.5 (D.N.J. Aug. 28, 2017) (cited at Opp. 14). In contrast, Plaintiff has explained at length how Defendants' Brief fails to make the highly particularized arguments set forth in their Appendix, causing Plaintiff prejudice by unilaterally (and unfairly) expanding Court-imposed briefing limits. *See* MTS 6-13; *see also infra* Section II.[3] Courts in this District and elsewhere rebuff such gamesmanship under similar circumstances. *See, e.g.*, *In re Hypodermic Prods. Antitrust Litig.*, 2007 WL 1959225, at *15 n.31 (D.N.J. June 29, 2007) (disregarding excessive cross-referencing that evaded page limits and included arguments not raised in brief); *CSR Ltd. v. Cigna Corp.*, 2005 WL 3132188, at *16 n.15 (D.N.J. Nov. 21, 2005) (deeming collection of deposition testimony in appendix a "transparent attempt to avoid page limitations set forth in Local Civil Rule 7.2(b)"). The Court should do the same here.

## II.    The Appendix Amounts to Additional Briefing and Should Be Stricken

### A.    Defendants' Safe Harbor Argument Is Unintelligible Absent the Appendix

Seeking to salvage a safe harbor argument sketched in only skeletal terms outside the Appendix, Defendants repeatedly misrepresent the contents and clarity of their Brief. Their assertion that "[t]he Brief indisputably identifies and cites to each forward-looking statement" is simply not true. Opp. 4. To begin, Defendants do not even attempt to argue that they quote or otherwise identify which of the alleged misstatements are purportedly forward-looking in the section of their Brief devoted to that very argument, where they would naturally reside. Instead,

---

[3] Defendants' claim that "Plaintiff cannot establish prejudice because it has had an opportunity to respond" (Opp. 13) ignores such authorities and, if accepted, would render courts' page limits on briefing purely discretionary any time a response or reply brief were to follow. *Cf. Mirabal v. Comm'r of Soc. Sec.*, 2009 U.S. Dist. LEXIS 12668 (D.N.J. Feb. 17, 2009) (striking brief for being over-length per Local Civil Rule 7.2(b) and requiring filing of compliant brief). Separately, Defendants' reliance on *National Junior Baseball League v. Pharmanet Development Group Inc.* is unfounded, as the chart at issue was not challenged by the opposing party, and the district court did not assess its propriety. 720 F. Supp. 2d 517 (D.N.J. 2010) (cited at Opp. 14).

their safe harbor section sweepingly asserts that "[n]o fewer than ten . . . are either the FY20 Guidance itself or a statement reaffirming it," attaching a footnote listing a series of "Stmt." numbers without further explanation. Br. 24; *see also id*. 24 n.29. Defendants take the same tack on the next page, where they claim "fully fourteen of the alleged misstatements discuss the Company's future plans and expectations"; they again only hang a footnote with the "Stmt." numbers to which this categorical argument applies, doing nothing more to identify for the reader what these statements actually are. *Id*. 25; *see also id.* 25 n.31. Reference to the safe harbor section alone thus does not allow a reader to identify the purportedly forward-looking statements.

Recognizing this deficiency, Defendants now pivot to claim that it was in the "background section" of their Brief that they clearly identified and numbered each alleged misstatement. *See* Opp. 4 (citing Br. 9-12). Yet a closer look at that section proves this claim a mirage. There, Defendants provide general summaries of the events at which they made the alleged misstatements and assign a batch of "Stmt." numbers to each event—nothing more. *See* Br. 9-10 ("Nov. 5, 2019 Earnings Results," encompassing "Stmts. 1-8"), 11 ("Nov. 21, 2019 Jefferies London Healthcare Conference (Stmts. 9-11)"), *id.* ("Dec. 4, 2019 Evercore HealthCONx Conference (Stmts. 17 & 18)"), 11-12 ("Jan. 14, 2020 JPMorgan Healthcare Conference (Stmts. 19-22)"), 12 ("Jan. 28, 2020 Annual Meeting" encompassing "Stmts. 23 & 24"). They do not specify which number applies to which alleged statement by reproducing the statement or noting the corresponding paragraph number of the Complaint. One thus cannot read the "background section" and determine with certainty which alleged misstatement corresponds to which "Stmt." Number.

Defendants further muddy the water by suggesting that the "Stmt." numbers assigned to each event correspond to the quoted passages appearing in the discussion of that event. For example, littering their treatment of the November 5, 2019 earnings call with *eight* distinct

quotations, they end with the assertion that "Defendants' statements on November 5, 2019, *as described above*, comprise the first *eight* of the twenty-five purported misstatements alleged in the Complaint. (*See* App'x A, Stmts. 1-8)." Br. 10. Yet seven of the eight quoted passages in the November 5, 2019 discussion are drawn from the same *three* alleged misstatements (*compare* Br. 9-10 *with* Compl. ¶¶ 264, 270, 273), while the last is not an alleged misstatement at all but rather came during the February 6, 2020 earnings call that provided the *corrective disclosures* to Defendants' Class Period misstatements. *See* Br. 10 (quoting Smith Decl. Ex. D at 5, 12). It is therefore impossible to reliably determine the "Stmt." number assigned to each misstatement alleged in the Complaint. In turn, the reader cannot decipher which alleged misstatements Defendants claim to be forward-looking by way of the safe harbor section's footnotes.

Beyond this deficiency, the Brief nowhere shows that Defendants contend that only *narrow snippets* of the statements tagged in those footnotes are forward-looking, with distinct arguments applying to other parts of the *same statements*. A cursory review of the Appendix, however, makes this patchwork approach clear. *See, e.g.*, MTS 8-9 (discussing "Stmt. 13"). In their opposition, Defendants do not deny this fact, instead declaring that the forward-looking "components" of the statements are "self-evident." Opp. 5. In support, they reproduce their multi-colored "Stmt. 13" in its entirety (again violating Local Civil Rule 7.2) and assert that "the green-colored portions [of Stmt. 13] contain the words '*predict*' and '*may*' – words that are *paradigmatically forward-looking*," such that "[a]ny reader of the Brief . . . would understand that Defendants' safe harbor argument is predicated on those phrases." *Id.* 6. A quick look at the same example proves the fallacy of Defendants' claim. The second sentence of Defendants' block text *also* "contain[s] the word[] '*predict*'" (along with an express reference to "the future"), yet it is *not* designated as forward-looking in green text. *Id.* 5. Nor is the later passage, "we *may* be subject to *future*

7

proceedings and litigation relating to the matters addressed in the amended consent decree," despite its inclusion of a "paradigmatically forward-looking" word. *Id*. 5-6. Similar incongruities appear elsewhere, dooming Defendants' claim that the forward-looking portions are "self-evident." *Id*. 5; *see, e.g.*, App'x, Stmt. 6 (designating statement of expected revenue growth as forward-looking but **not** statement regarding plans of future Alaris software changes).

Equally weak is Defendants' insistence that "the pertinent portions of seven of the forward-looking statements are quoted in the Brief." Opp. 4 (citing Br. 9-12). Here, Defendants claim that "the background section of the Brief quotes, describes and assigns a number to each of those seven statements, to which the argument section refers back to as shorthand." *Id*. Yet the "background section" in fact **nowhere** identifies **any** of those seven passages by number, flags any as forward-looking, or otherwise suggests that any is entitled to safe harbor protection. Again, it is only by reference to the Appendix that the reader can decipher which particular statements contain portions that are purportedly forward-looking, let alone what those portions are. Moreover, Defendants' claim that "seven of the forward-looking statements are quoted in the Brief" effectively concedes that Defendants address the remaining eleven statement excerpts that they claim are forward-looking **only** in the Appendix. *Compare* Opp. 4 (claiming "pertinent portions" of "Stmts. 1, 6, 10, 17-18, 23, and 25" are quoted in "background section") *with* Br. 24 n.29, 25 n.31 (also designating Stmts. 2-4, 7-9, 11, 13, 19, 20, 24 as forward-looking).

Defendants' treatment of the cautionary language that supposedly protects those forward-looking statements is similarly infirm. First, their contention that the Brief relies in any legally significant fashion on cautionary language **other than** the (1) November 5, 2019 press release and (2) 2019 Form 10-K is without support. *See* Opp. 7. Defendants' only claim of additional warnings are: (1) a nod in the November 5, 2019 earnings call **to the November 5, 2019 press release** (Br.

8

26 (citing Smith Decl. Ex. C at 4)); (2) a perfunctory reference in the January 14, 2020 JPMorgan Healthcare Conference to the *same November 5, 2019 press release* and unspecified "recent SEC filings" (which Defendants do not suggest comprise anything *other* than the November 5, 2019 press release and 2019 Form 10-K) (*Id*. 26 n.34 (citing Smith Decl. Ex. K at 4)); and (3) a vague remark during BD's January 28, 2020 Shareholders' Meeting that "[w]e have information posted on our website regarding forward-looking statements," which Defendants *even now* do not identify or describe. *Id.* (citing Smith Decl. Ex. M at 6). Simply put, there were no other warnings.

Defendants have also done nothing to refute Plaintiff's observation that the Brief fails to tie any cautionary language to any specific statement. *See* MTS 10. For example, their present insistence that "[t]he very same portion of the Brief quoting [the November 5, 2019 press release's supposed] cautionary language unequivocally identifies the type of forward-looking statements to which it applies" is simply untrue (Opp. 7 (quoting Br. 26)[4]); Defendants do *not* identify a *single* purportedly forward-looking statement covered by the November 5, 2019 press release's supposed warnings in that section (or any other). *See* Br. 23-26. Rather, circularly, they cite the *same November 5, 2019 press release's* generic reference to "BD's performance, including future revenues and earnings per share" and assert that the press release "plainly" applies to all statements concerning BD's revenue estimates and "future performance expectations," further assuring that "[t]he Brief goes on to specify each of the challenged statements falling into these two categories in footnotes 29 and 31 – all without resort to the Appendix." Opp. 7-8. Yet upon "resort to the Appendix," the reader learns that Defendants do *not* contend that the press release covers all statements in footnotes 29 and 31 after all. Rather, according to the Appendix, the November 5, 2019 press release covers *only* Defendants' forward-looking statements on November 5, 2019

_____

[4] Defendants' citation is incorrect. These quotations appear on page 24 of their Brief. *See* Br. 24.

9

("Stmts." 1-8) and January 14, 2020 ("Stmts." 19 & 20), while their statements at the November 21, 2019 Jefferies London Healthcare Conference ("Stmts." 9-11), in BD's 2019 Form 10-K ("Stmt." 13), at the December 4, 2019 Evercore HealthCONx Conference ("Stmts." 17 & 18), and in BD's February 4, 2020 recall notices ("Stmt." 25) are all supposedly shielded *not* by the press release, but instead by the 2019 Form 10-K. *See* App'x.[5] It is thus not "plain" at all which alleged misstatements are supposedly covered by the press release without use of the Appendix.

Defendants' approach to the 2019 Form 10-K is similarly problematic. Defendants never explain how that document, filed on November 27, 2019, could have warned investors at the Jefferies London Healthcare Conference that occurred *six days earlier*. Instead, they dismiss the point as "irrelevant," offering no supporting authority for this bewildering position. Opp. 9 n.9. Meanwhile, their contention that certain "magic words" in the Form 10-K alert the reader as to which misstatements the Form 10-K's warnings supposedly cover unravels because *the very same magic words* are used in passages of the misstatements that Defendants do *not* designate as forward-looking in the Appendix. *Compare* Opp. 8 (quoting Br. at 27) ("[f]orward-looking statements may be identified by the use of words such as 'plan,' 'expect,' 'believe,' '*intend*,' 'will,' '*may*,' anticipate,' 'estimate' and *other words of similar meaning*") (alteration in original) *with* App'x, Stmt. 25 (designating sentence in Stmt. 25 "BD *intends* to address the issues through an upcoming software release" as "an accurate statement of historical or present fact not alleged to be false") and *id*., Stmt. 13 (designating certain phrases containing words "predict" and "may" as forward-looking and others using identical words as *not* forward-looking). As with the press

---

[5] Even in their Appendix, Defendants do not identify the supposed cautionary language protecting Forlenza's remarks at BD's Annual Shareholder Meeting. *See* App'x 27 ("Stmts." 23 & 24).

release, nowhere outside the Appendix can the reader discern the passages to which the Form 10-K's warnings supposedly apply.[6]

### B. Defendants Rely on the Appendix to Furnish the Necessary Detail Sorely Lacking From Their Brief

Defendants' claim that "Plaintiff does not point to any substantive argument reflected in the Appendix that is not already made in the Brief" misses the point. Opp. 10. While the Brief paints several legal arguments in broad strokes, it is primarily in the Appendix that Defendants set about identifying which specific portions of particular statements are the subject of each argument through an elaborate system of color-coding, underlining, and internal references to the explanatory "key." *See* MTS 11-13. Hence, the same lack of specificity plaguing the safe harbor section persists throughout the Brief, as Defendants' arguments hinge on the careful parsing of phrases within each alleged misstatement that appears only in the Appendix. Were the Appendix set aside, Defendants' specific contentions as to each individual alleged misstatement would be lost—and with them, Defendants' bid for dismissal as to each misstatement. The Appendix is thus an impermissible expansion of the Court-ordered limits on the parties' briefing.[7]

---

[6] Defendants badly overreach in accusing Plaintiff of "cynically violat[ing] the very principle it purports to advance" by asserting the "grievance" that "certain cautionary language does not reside in the same document as the forward-looking statement(s) it qualifies." Opp. 8, 8 n.8. In fact, Plaintiff does not assert such a "grievance" anywhere in its Motion to Strike (as reflected in Defendants' lack of citation in lodging this accusation). *Id*. 8. While Plaintiff *does* note the illogicality of Defendants' claim that certain misstatements were immunized by warnings issued **days later** (*see* MTS 11), it does so to illustrate that Defendants' matching of statements and warnings is not "self-evident" and requires reference to the Appendix. Opp. 5.

[7] Defendants look to justify their casual approach to briefing by pointing to Plaintiff's supposed "tactic" of "piling block quote on top of block quote without specific support for the alleged falsity of each particular statement" in the "ponderous" Complaint. Opp. 11. This is both *a non sequitur* and inaccurate. **Defendants** bear the burden of establishing that the Complaint is insufficient as a matter of law **within the page limits set by the Court**, not using those claimed shortcomings as a pretext to expand the Court's page limits by way of an extensive supplement. See Fed. R. Civ. P. 12(b)(6); L. Civ. R. 7.2. Regardless, the Complaint recounts Defendants' fraud with the highly

11

## CONCLUSION

For these reasons, the Appendix and all references and argument concerning, relating to, or relying on the Appendix should be stricken from the record.

Dated: July 1, 2021                                      Respectfully submitted,

**CARELLA BYRNE CECCHI**                    **KESSLER TOPAZ**
**OLSTEIN BRODY & AGNELLO, PC**          **MELTZER & CHECK, LLP**
                                                              Joshua E. D'Ancona
_s/ James E. Cecchi_                                Eric K. Gerard (admitted _Pro Hac Vice_)
James E. Cecchi                                       Vanessa Milan (admitted _Pro Hac Vice_)
Donald A. Ecklund                                    280 King of Prussia Road
5 Becker Farm Road                                  Radnor, PA 19087
Roseland, NJ 07068-1739                           Telephone: (610) 667-7706
Telephone: (973) 994-1700                         jdancona@ktmc.com
Facsimile: (973) 994-1744                          egerard@ktmc.com
jcecchi@carellabyrne.com                          vmilan@ktmc.com
decklund@carellabyrne.com

_Liaison Counsel for the Putative Class_          _Counsel for Lead Plaintiff Industriens Pensionsforsikring A/S and Lead Counsel for the Putative Class_

---

particularized allegations that the PSLRA requires and specifically identifies which facts render misleading each specific misstatement; that many of the same facts apply to multiple misstatements is unsurprising, as Defendants unspooled the same deception throughout the Class Period.

12

## CERTIFICATE OF SERVICE

I, James E. Cecchi, hereby certify that on July 1, 2021, I caused a true and correct copy of the foregoing Reply in Further Support of Lead Plaintiff's Motion to Strike to be filed electronically with the Clerk of the Court using the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: July 1, 2021

s/ *James E. Cecchi*
James E. Cecchi
**CARELLA BYRNE CECCHI**
**OLSTEIN BRODY & AGNELLO, PC**
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for the Putative Class*

13