James P. Smith III (admitted *pro hac vice*)
Matthew L. DiRisio (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
jpsmith@winston.com
mdirisio@winston.com

Matthew A. Sklar
Omar A. Bareentto
**MCCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 622-4444
msklar@mccarter.com
obareentto@mccarter.com

*Counsel for Defendants Becton, Dickinson and Company,*
*Vincent A. Forlenza, Thomas E. Polen and Christopher R. Reidy*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:20-cv-02155-SRC-CLW |
| Plaintiff, | Honorable Stanley R. Chesler |
| v. | **Oral Argument Requested** |
| BECTON, DICKINSON AND COMPANY, VINCENT A. FORLENZA, THOMAS E. POLEN, and CHRISTOPHER R. REIDY, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT ............................................................................................................................. 4

    **A.**    THE TAC FAILS TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION .................................................................................................... 4

        1.    BD's November 2019 Announcement of the Q1 Upgrades Disclosed All  Material Information ............................................ 4

        3.    The Opposition Underscores the Unreliability of the TAC's  New FE Allegations ................................................... 11

        4.    The Opposition's Remaining Arguments Fail ......................................... 14

    **B.**    THE TAC FAILS TO PLEAD SCIENTER .......................................................... 16

        1.    The Relevant Issue is Defendants' Intent to Deceive .............................. 16

        2.    The FE Allegations Do Not Support a Strong Inference of Scienter........ 17

        3.    Plaintiff's Conclusory Allegations Regarding Access to Information, Public Statements and Core Operations Fail to Plead Scienter ..................................................................................... 21

        4.    Plaintiff's Motive Allegations Do Not Support a Strong Inference of Scienter ................................................................ 23

CONCLUSION ........................................................................................................................ 26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Able Lab'ys Sec. Litig.*,
  2008 WL 1967509 (D.N.J. Mar. 24, 2008)..................................................................12

*In re Advance Auto Parts, Inc. Sec. Litig.*,
  2020 WL 599543 (D. Del. Feb. 7, 2020)....................................................................14

*In re Allergan Generic Drug Pricing Sec. Litig.*,
  2019 WL 3562134 (D.N.J. Aug. 6, 2019) ..................................................................23

*In re AT&T Corp. Sec. Litig.*,
  2002 WL 31190863 (D.N.J. Jan. 30, 2002)................................................................15

*In re ATI Techs., Inc. Sec. Litig.*,
  216 F. Supp. 2d 418 (E.D. Pa. 2002) ...........................................................................6

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3rd Cir. 1977) ...................................................................................14

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004)...........................................................................11, 14, 26

*In re Cambrex Corp. Sec. Litig.*,
  2005 WL 2840336 (D.N.J. Oct. 27, 2005).............................................................16, 17

*In re Campbell Soup Co. Sec. Litig.*,
  145 F. Supp. 2d 574 (D.N.J. 2001) .............................................................................23

*Carmignac Gestion, S.A. v. Perrigo Co. PLC*,
  2019 WL 3451523 (D.N.J. July 31, 2019)..................................................................19

*In re Cephalon Sec. Litig.*,
  1997 WL 570918 (E.D. Pa. Aug. 29, 1997) ...............................................................15

*Chan v. New Oriental Educ. & Tech. Grp. Inc.*,
  2019 WL 2865452 (D.N.J. July 3, 2019).....................................................................20

*City of Hialeah Emps.' Ret. Sys. & Laborers Pension Tr. Funds for N. Cal. v. Toll
  Bros., Inc.*, 2008 WL 4058690 (E.D. Pa. Aug. 28, 2008).........................................15

*City of Pontiac Gen. Empls' Ret. Sys. v. Stryker Corp.*,
  865 F. Supp. 2d 811 (W.D. Mich. 2012) ...................................................................19

*Curran v. Freshpet, Inc.*,
　2018 WL 394878 (D.N.J. Jan. 12, 2018) ...........................................................................14, 15

*De Vito v. Liquid Holdings Grp., Inc.*,
　2018 WL 6891832 (D.N.J. Dec. 31, 2018) .................................................................................22

*In re Dr. Reddy's Lab. Ltd. Sec. Litig.*,
　2019 WL 1299673 (D.N.J. Mar. 21. 2019) ................................................................12, 20, 23

*Dura Pharms., Inc. v. Broudo*,
　544 U.S. 336 (2005) .................................................................................................................25

*In re Egalet Corp. Sec. Litig.*,
　340 F. Supp. 3d 479 (E.D. Pa. 2018) .......................................................................................23

*In re Enzymotec Sec. Litig.*,
　2015 WL 8784065 (D.N.J. Dec. 15, 2015) ...............................................................................23

*Fain v. USA Techs., Inc.*,
　707 F. App'x 91 (3d Cir. 2017) ...............................................................................................22

*Frater v. Hemispherx Biopharma, Inc.*,
　996 F. Supp. 2d 335 (E.D. Pa. 2014) ....................................................................7, 14, 17, 18

*In re Genta, Inc. Sec. Litig.*,
　2005 WL 2416970 (D.N.J. Sept. 30, 2005) ..............................................................................22

*Gov't of Guam Ret. Fund v. Invacare Corp.*,
　2014 WL 4064256 (N.D. Ohio Aug. 18, 2014) ........................................................................5

*Hall v. Johnson & Johnson*,
　2019 WL 7207491 (D.N.J. Dec. 27, 2019) ...............................................................................23

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
　2020 WL 1479128 (E.D. Pa. Mar. 25, 2020) .............................................................................9

*Inst. Invs. Grp. v. Avaya, Inc.*,
　564 F.3d 242 (3d Cir. 2009) .........................................................................................11, 16, 19

*Liu v. Intercept Pharms., Inc.*,
　2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020) ..........................................................................22

*In re Lucent Techs., Inc. Sec. Litig.*,
　217 F. Supp. 2d 529 (D.N.J. 2002) .............................................................................................6

*Marsden v. Select Med. Corp.*,
　2007 WL 1725204 (E.D. Pa. June 12, 2007) ...........................................................................25

*McCabe v. Ernst & Young LLP*,
  494 F.3d 418 (3d Cir. 2007)...................................................................................................25

*In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.*,
  2011 WL 3444199 (D.N.J. Aug. 8, 2011) ..............................................................................25

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
  761 F.3d 245 (2d Cir. 2014)......................................................................................................9

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ........................................................................................19

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000).....................................................................................................21

*Odeh v. Immunomedics, Inc.*,
  2020 WL 4381924 (D.N.J. July 31, 2020)................................................................................9

*In re PTC Therapeutics, Inc. Sec. Litig.*,
  2017 WL 3705801 (D.N.J. Aug. 28, 2017) .......................................................................18, 22

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013)...............................................................................................20, 22

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004).....................................................................................................15

*Roofer's Pension Fund v. Papa*,
  2018 WL 3601229 (D.N.J. July 27, 2018).........................................................................15, 19

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
  351 F. Supp. 3d 874 (E.D. Pa. 2018) .................................................................................15, 18

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000).....................................................................................................16

*Stevelman v. Alias Research Inc.*,
  174 F.3d 79 (2d Cir. 1999).......................................................................................................24

*In re Suprema Spec., Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006).....................................................................................................24

*Tanaskovic v. Realogy Holdings Corp.*,
  2021 WL 211049 (D.N.J. Jan. 21, 2021)...........................................................................15, 26

*In re Toronto-Dominion Bank Sec. Litig.*,
  2018 WL 6381882 (D.N.J. Dec. 6, 2018)..........................................................................13, 24

iv

*In re Urb. Outfitters, Inc., Sec. Litig.*,
   103 F. Supp. 3d 635 (E.D. Pa. 2015) ...............................................................................23, 24

*In re Viropharma Inc. Sec. Litig.*,
   21 F. Supp. 3d 458 (E.D. Pa. 2014) ..................................................................................15, 18

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   2015 WL 3755218 (E.D. Pa. June 16, 2015) ........................................................................23

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir. 1996)......................................................................................................9

Defendants respectfully submit this reply memorandum in further support of their motion to dismiss the TAC (ECF No. 99).[1]

## PRELIMINARY STATEMENT

As alleged in the TAC, on the very first day of the Class Period in early November 2019, Defendants publicly disclosed that BD sales of Alaris would be delayed pending implementation of the Q1 Upgrades. They further disclosed the reasons – including that BD was, at the time, in ongoing discussions with the FDA about the "timing and implementation" of the Q1 Upgrades – and the fact that the delay was not expected to last beyond the first quarter of the Company's 2020 fiscal year, forecasting that Alaris sales would be weighted toward subsequent quarters due to the ship hold during Q1. On January 14, 2020, Defendants publicly announced that Alaris sales had fully resumed during Q1, exactly as expected.

On February 3, 2020, the FDA informed BD that it would require clearance of a comprehensive 510(k) submission for Alaris for BD to continue shipping the product, indefinitely halting sales and distribution other than for medical necessity. This regulatory action was publicly announced a few days later, on February 6, 2020.

On these facts, this Court held in the Dismissal Decision (Dkt. 87) that Plaintiff had failed to state any cognizable claim for securities fraud. And the bar for any attempt to replead was unambiguous:

> Absent a demonstration that the FDA had in some manner or other ***made clear*** that it would ***require*** a new 510(k) application for Alaris products, ***and that BD would be required to stop marketing Alaris until that application was successfully resolved***, the mere possibility of administrative action is not enough to require disclosure.

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in Defendants' opening brief in support of the current motion to dismiss ("Moving Br." or "Moving Brief") (ECF No. 99-1).

*See Becton I* at 22.[2]  Thus, the Court held, the allegations attributed to Plaintiff's FEs did not support an inference of scienter because (among other things) they:

> fail[ed] to demonstrate that any Individual Defendant was aware, prior to February 3, 2020, that the FDA would ***require*** BD to receive ***comprehensive 510(k) approval prior to the continued marketing of the Alaris product***.

*Id.* at 35.

Cognizant that the standard set forth above is unattainable here, Plaintiff now disavows its primary theory of the case, flatly denying in its opposition brief that the TAC seeks to allege a failure to disclose ongoing FDA scrutiny of Alaris, that BD had made numerous modifications to Alaris without 510(k) clearance and that it was certain to face adverse regulatory action as a result. Opp. 29.[3]

Instead, Plaintiff now attempts to suggest that FDA actually took some sort of "administrative action" against BD prior to the Class Period.[4]  Specifically, Plaintiff points to FE allegations suggesting that FDA told BD, prior to the November ship hold, that it did not "***think*** [BD] ***should*** be shipping" Alaris with certain (unspecified) issues unaddressed and that BD "***should*** do a 510(k)" with respect to certain others.  While that is obviously a far cry from a regulatory directive to cease shipments pending comprehensive 510(k) clearance, Plaintiff, focusing largely on a handful of allegations from new FEs, argues that what Defendants ***really*** omitted to disclose was that the FDA's supposed pre-Class Period comments prompted not the

---

[2] Unless indicated otherwise, all emphasis in this brief is added.

[3] "Opp." or "Opposition" refers to Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Third Amended Complaint (ECF No. 102).

[4] Elsewhere, further bridling against the Court's explicit holding quoted in the text above, Plaintiff suggests that no such definitive action is even necessary to trigger a disclosure obligation. *See* Opp. 31-32.

ultimate indefinite cessation of sales, but the November 2019 ship hold. Indeed, Plaintiff goes so far as to suggest that issues relating to "the 510(k) clearance process" are irrelevant because they have "little bearing on whether Defendants actionably misrepresented the main, adverse factor driving the [November] ship hold," which, according to Plaintiff, was the FDA's pre-Class Period "think" and "should" comments. Opp. 33 & n. 25. But these new FE allegations, like the old ones, are both internally and mutually contradictory and, even if credited, utterly fail to plead with particularity that any of the Defendants knew of an FDA determination, prior to February 2020, that a comprehensive 510(k) would be required for Alaris sales to continue. As such, the TAC, like its predecessor, fails to plead falsity, scienter or any duty to disclose.

Much of the rest of the Opposition reads as if Plaintiff had never seen the Dismissal Decision or Moving Brief, standing up arguments that the decision rejected and our opening brief already anticipated and knocked down.[5] In fact, their temporal sequence notwithstanding, the Moving Brief reads almost like a comprehensive reply to the Opposition. Accordingly, this reply brief focuses solely on those few aspects of the Opposition that warrant any further response. Beyond that, a comparison of the Moving Brief and the Opposition side-by-side illustrates that the TAC should be dismissed like its predecessor.[6]

---

[5] This includes, among other things, the TAC's failure to overcome the statutory safe harbor for numerous forward-looking statements, sidestep the indisputable accuracy of various statements of present fact, or plead loss causation or any Section 20(a) or 20A claim.

[6] We note that nowhere in the TAC or the Opposition does Plaintiff offer any explanation for why the "new" allegations on which it now relies could not have been included in the SAC. *See* Opp. 30 & n.22.

## ARGUMENT

### A.    THE TAC FAILS TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION

#### 1.    BD's November 2019 Announcement of the Q1 Upgrades Disclosed All Material Information

To reiterate, there is no allegation anywhere in the TAC that FDA told BD prior to February 2020 that a new comprehensive 510(k) for Alaris, covering all changes past and present, would have to be submitted and cleared, requiring BD to cease marketing the product in the interim. Under the Dismissal Decision, that should end the inquiry.

A mere suggestion by FDA that BD "should" file a 510(k) for certain changes, as allegedly occurred some time prior to November 2019 (*see, e.g.*, Opp. 26, 29-31), would not require BD to cease marketing and thus would not be material.  (Nor, as this Court held in the Dismissal Decision, would BD have any independent duty to disclose it, having never before spoken on the subject of 510(k) clearance.)  As shown below, the distinction between a statement from FDA that BD "should" obtain new 510(k) clearance (*e.g.,* Opp. 34), versus a determination that it "must" do so for BD to continue shipping the product, makes all the difference.

This is so in part because the fact that FDA may have suggested that a 510(k) "should" be submitted for certain changes[7] does not suggest that marketing of the product would be prohibited in the meantime.  In this regard, BD's experience with the abortive 2017 Project Monterey 510(k) filing (which Plaintiff inexplicably continues to highlight notwithstanding this Court's determination that it undercuts any culpable inference) is the proof in the pudding.  With Project Monterey, BD actually *submitted* a 510(k) for Alaris (addressing, among other things, the so-called "low battery alarm" or "LBA" issue the Opposition also highlights), the FDA then *rejected*

---

[7] The TAC alleges, at most, that the FDA signaled that "fixing *at least some* of [the product issues] would require a new 510(k)."  TAC ¶8.

4

*it*, and yet FDA *still* never required BD to cease marketing the product. So why would being told, in the course of ongoing dialogue with FDA, that FDA thought the Company "should" submit a 510(k) with respect to certain changes (including that very same LBA issue covered by Project Monterey)[8] suggest to BD personnel that BD would inevitably have to cease marketing Alaris? It wouldn't.[9] FDA requiring clearance of a comprehensive new 510(k) for all past and present changes, on the other hand, as happened and was immediately disclosed in February 2020, *does* require cessation of sales. It's as simple as that.

As a result, the Opposition attempts to shift the focus away from the 510(k) requirement to BD's alleged failure to disclose, in November 2019, that its pre-Class Period discussions with FDA "precipitated" the implementation of the temporary ship hold on Alaris pending certain fixes, *i.e.,* the Q1 Upgrades. *See, e.g.*, Opp. 23-24, 29, 41. This last-minute pivot does nothing to support a fraudulent misstatement or omission.

To begin with, the difference between a statement from FDA that it didn't "think [BD] should be shipping" Alaris, which is all that is alleged (*e.g.,* Opp. 11), versus one that BD *must cease doing so* (which is not), is self-evident. But the fact of the matter is that BD did, in fact, stop shipping Alaris following the alleged pre-Class Period discussions, as it disclosed on November 5, 2019. It makes no difference whether, or to what extent, FDA's expression of its views on the matter was an "impetus" for the Company's decision. Indeed, the Company disclosed

---

[8] The lone product defect that Plaintiff identifies as having allegedly been "at-issue in the Pre-Class Period FDA Meetings, the ship hold, and the 510(k) submission BD undertook in Q1 FY20" – the LBA defect (Opp. 33) – was among those that BD determined, in its discretion, could be resolved after the Q1 Upgrades had been implemented.

[9] Accordingly, *Government of Guam Retirement Fund v. Invacare Corp.*, No. 1:13CV1165, 2014 WL 4064256, at *5 (N.D. Ohio Aug. 18, 2014) (Opp. 26), is of no relevance here (plaintiff alleged "numerous, pervasive and repeated violations of FDA and FDCA regulations, of which Defendants were made aware; and which presented the near certainty that the FDA would take corrective action against the Company").

on November 5 that the decision was made in the context of ongoing discussions with FDA.[10] More importantly, the degree to which BD's decision to implement the ship hold was influenced by those discussions is irrelevant to the extent that, as BD told the market at the time, the Company believed the ship hold would be temporary and would be lifted upon completion of the Q1 Upgrades.

Indeed, the "prompt resumption of [Alaris] sales," far from "profoundly unlikely" (Opp. 28), *in fact occurred* – before December 25, 2019, according to Plaintiff (*id.* at 17) – exactly as expected. Given this, Plaintiff's theory makes no logical sense. Why would BD implement the ship hold *and then release it* if the Company knew that FDA had already effectively prohibited continued marketing of Alaris? Viewed from this perspective, the fact that BD released the ship hold – and announced to the world in mid-January 2020 that it had done so – is proof positive that *it had no idea* that FDA would later require a comprehensive 510(k) for BD to continue shipping the product.

The ship hold was, and was always intended to be, temporary. That is why BD told the market in November, at the very beginning of the Class Period, that sales would be pushed out of Q1 into the balance of the fiscal year. Moreover, if, as Plaintiff suggests, the FDA really thought, based on its pre-Class Period discussions with BD, that the ship hold was to remain in place

---

[10] Specifically, BD disclosed that it was "in discussions with the FDA about the timing of implementation of" the Q1 Upgrades, which had necessitated the ship hold. Moving Br. 9-10 (quotations omitted). Accordingly, Plaintiff's authority at Opp. 24-26 is inapposite. *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 217 F. Supp. 2d 529, 557 (D.N.J. 2002) ("Lucent did not attribute its revenue loss for the first fiscal quarter of 2000 to its true causes, namely, decreased product demand and an inability to produce the desired product."); *In re ATI Techs., Inc. Sec. Litig.*, 216 F. Supp. 2d 418, 436 (E.D. Pa. 2002) (falsely attributing company's financial success to a poorly performing product line).

indefinitely, or until FDA "approved or authorized" the resumption of sales (Opp. 36),[11] why didn't it immediately come back to Defendants on November 5 and tell them they'd got it all wrong?  Or, at the latest, on December 4, when Mr. Reidy publicly announced at the Evercore conference that the Company was projecting the "second quarter picking up *as the MMS software starts getting rolled out*"?[12]  Instead, what actually happened is that – even crediting the TAC's FE allegations – *a month and a half later*, FDA, as Plaintiff puts it, "rejected" BD's "unilateral action" to lift the ship hold and "BD … re-instate[d]" it.  Opp. 2.  That, in many ways, is exactly the point.[13]

> **2.    Because the Opposition's "FDA-Ordered-the-Ship-Hold" Argument is Inconsequential, So Are All of Its Other Falsity Arguments**

As this Court has already found, documents incorporated by reference in the TAC indicate that, until February 2020, Defendants did not believe they were required to file and clear a comprehensive 510(k) application in order for Alaris sales to continue.  *Becton I* at 35. Accordingly, the FDA's alleged pre-Class Period statements in no way undermine Defendants' reasonable basis for any of their public statements concerning the FY20 Guidance or Alaris sales (Opp. 27-28).[14]  With the Q1 Upgrades and the accompanying ship hold, BD did the very thing FDA is alleged to have said it "should" do.  It "endeavored to determine which of the Alaris issues

---

[11] Of course, FDA does not have to "approve or authorize" the resumption of sales where, as here, it never banned them in the first place.

[12] That the FDA allegedly "had not known of BD's resumption of Alaris sales" in December 2019 (Opp. 24), even if true, is of no moment.  BD was certainly not hiding it.  Customers receiving the product were aware from the time shipping resumed, and Mr. Polen publicly announced it at the January 14, 2020 JPMorgan Conference.

[13] Of course, the indefinite cessation of sales pending the submission and clearance of a comprehensive 510(k) was no mere resumption of a ship hold.

[14] None of Plaintiff's case law (Opp. 28) is to the contrary.  *See, e.g.*, *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 342 (E.D. Pa. 2014) (defendants disclosed that the FDA reacted to a proposal to resubmit a product analysis by noting that the product's efficacy would "ultimately be a review issue," failing to disclose the FDA's further assessment "that it would be unusual for such an approach to demonstrate adequate evidence of efficacy").

7

and anomalies 'needed a 510(k)' and which potentially did not" (TAC ¶180), and then MMS personnel "worked in November and December 2019" – *i.e.*, during the ship hold – "to resolve any anomalies in Alaris that it could" – *i.e.*, the Q1 Upgrades – "while leaving aside" items, "such as the LBA issue, that the FDA had identified and that required 510(k) clearance" (*id.*), but had not theretofore required a cessation of marketing (including for the two years following FDA's rejection of the Project Monterey 510(k)). "BD lifted the ship hold" once the Q1 Upgrades – which had necessitated the ship hold, but BD had determined did not require 510(k) clearance – were made. *Id.* ¶¶184-85. It is critical to appreciate that these are two different issues. As BD understood the state of play based on its discussions with FDA, Alaris shouldn't be shipping ***pending the implementation of the Q1 Upgrades***, which BD had concluded did not require 510(k) clearance. Any statements by FDA that a 510(k) should be filed were understood to relate to ***other changes***. BD disclosed this precise process at the start of the Class Period when it described its "phased approach to releasing Alaris software updates." Smith Decl. Ex. D at 5, 12.

The Opposition starts from the faulty premise that whether the TAC states a securities fraud claim is somehow determined by whether the FDA "precipitated" or was an "impetus" for the November 2019 ship hold, given that it had allegedly "expressly stated" that (a) it "thought" BD "should" not be shipping Alaris, and (b) BD "should" undertake a new 510(k) (which, again, are two different points). *See* Opp. 29-36. But, as discussed above, even assuming the truth of these assertions (*but see* Sect. A.3, *infra*, regarding the unreliability of the FE pleading in the TAC), they are entirely consistent with both (a) BD's choice to proceed with a phased approach that included implementing the Q1 Upgrades and subsequently resuming shipments, and (b) Defendants' public disclosures during the Class Period.

There was, at the time, simply no "more dire" truth to be disclosed.  *See* Opp. 30.  BD had, as Plaintiff notes, continually iterated and enhanced Alaris for years, with no indication that the FDA would require a comprehensive 510(k) for prior and planned modifications as a prerequisite to continued marketing of the product.  Moving Br. 12-13.  At most, a "speculative threat" is all that faced future Alaris sales until the FDA required the submission and clearance of a comprehensive 510(k), necessitating an indefinite cessation of sales (Opp. 31).  *See Becton I* at 22 ("Absent a demonstration that the FDA had in some manner or other ***made clear*** that it would ***require*** a new 510(k) application for Alaris products, ***and that BD would be required to stop marketing Alaris until that application was successfully resolved***, the mere possibility of administrative action is not enough to require disclosure.").[15]

Contrary to the suggestion in the Opposition (Opp. 30 n.21), what Defendants "believed" at the time of the November 2019 ship hold and thereafter is ***precisely relevant***, not only to scienter (*see infra*), but to the realities of the 510(k) regulatory regime, which, as the Dismissal Decision acknowledges, leaves it to the manufacturer to make the judgment call in the first instance whether

---

[15] Thus, as demonstrated in the Moving Brief, Plaintiff has failed to allege falsity with respect to the purported misstatements discussed at pages 29-31 thereof and, as this Court has held, Mr. Polen's January 14, 2020 statement that "circumstances played out as 'expected' is an opinion by which liability may not lie" (*Becton I* at 26 n.21), because the TAC fails to plead that Mr. Polen did not in fact believe it.  *See* Opp. 36.  Similarly, Plaintiff's case law regarding BD's risk factor disclosure (*id*. 29) is distinguishable insofar as the disclosed risks in those cases had in fact materialized at the time of the disclosures.  *See Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 251 (2d Cir. 2014) (statements about compliance measures misleading because company was already experiencing failures in the compliance measures); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 709-10 (3d Cir. 1996) (warning of future impact to loan losses where company knew current reserves were insufficient); *Odeh v. Immunomedics, Inc.*, No. 18-17645, 2020 WL 4381924, at *6 (D.N.J. July 31, 2020) (describing as "hypothetical" an FDA Form 483 that defendant had actually received); *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. 17-341, 2020 WL 1479128, at *18 (E.D. Pa. Mar. 25, 2020) (criticizing cautionary language not for its contingent nature, but for its objective inadequacy).

510(k) clearance is necessary to continue to market (*Becton I* at 5), with the attendant possibility for future disagreement on FDA's part, as happened here.[16]

Plaintiff tries to camouflage its flip-flopping theories by suggesting that (i) an FDA statement that it "didn't think" Alaris should ship until certain changes were made, on the one hand, and (ii) a statement that BD should submit a 510(k) for certain other changes (like those addressing the LBA issue), on the other hand, are one and the same. They are not. BD concluded, based in part on its pre-Class Period discussions with FDA, that it should not ship Alaris until the Q1 Upgrades were implemented. Assuming, as Plaintiff's FEs assert, that FDA *also* suggested that the Company should submit a 510(k) for *other* changes like those dealing with LBA (not a comprehensive one for all past and current changes), that is a different issue and required no disclosure. As this Court held in *Becton I*, the Company had literally *never* spoken publicly on the issue of whether or when a 510(k) submission for Alaris may or may not be necessary.[17] That BD "chose to speak on the issue" of the ship hold is neither here nor there. Plaintiff's hindsight argument that it was misleading not to specifically disclose the precise role that FDA's comments played in the Company's judgmental decision to implement the hold makes no sense here unless its real claim remains, as it has been from the start, that BD knew FDA would require a comprehensive 510(k) resulting in an indefinite suspension of sales.

There is an unbridged disconnect between FDA's alleged indication, before the November 2019 ship hold was implemented, that Alaris "should" not be shipped pending unspecified

---

[16] The question, in this context, is not whether FDA told BD that it should seek 510(k) clearance for certain Alaris modifications; it is whether BD was told that such clearance was necessary to resume sales once the Q1 Upgrades had been implemented. There are no particularized allegations that it was.

[17] "Defendants are not alleged to have made <u>any</u> statements regarding 510(k) approval for Alaris until the allegedly corrective disclosures." *Becton I* at 23-24.

10

modifications and Plaintiff's conclusion that this "considerably heightened the probability that the ship hold would not be resolved quickly" (*i.e.*, with the implementation of the Q1 Upgrades). Opp. 34.[18]   BD reasonably understood, based on its historical Alaris modifications under FDA's watchful eye and without 510(k) clearance, and the agency's alleged indication that only "some" of the product issues discussed before the Class Period would require 510(k) clearance, that it could implement the Q1 Upgrades and then resume Alaris sales while the other product issues were addressed.

### 3.   The Opposition Underscores the Unreliability of the TAC's New FE Allegations

As shown above, even if the "new" allegations in the TAC are credited in full, they still don't solve Plaintiff's falsity shortcomings.  But they shouldn't be.  As demonstrated in the Moving Brief, the TAC's FE allegations are fundamentally unreliable.[19]  Viewing the totality of the FE allegations, "courts should assess the 'details provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.'"  *Becton I* at 25 (quoting *Inst. Invs. Grp. v. Avaya, Inc.,* 564 F.3d 242, 261 (3d Cir. 2009)).[20]  The new FE allegations fail at every turn.

---

[18] Far from "substantially heighten[ing] the probability" of an indefinite ship hold (Opp. 32), the FDA's indication that it didn't "think [BD] should be shipping" Alaris without certain changes and "should" seek 510(k) clearance for others comported with BD's determination to cease shipping until the Q1 Upgrades were implemented.  Indeed, despite alleging that FDA was aware of various modifications made to Alaris over the years without 510(k) clearance (*see, e.g.*, TAC ¶¶98, 157-60), Plaintiff nowhere alleges that the agency previously ordered any cessation in shipping – which is consistent with FDA guidance that not every change to a device requires 510(k) clearance.

[19] We deal in this reply brief primarily with the newly added allegations from FEs 6-11.

[20] "Cobbling together a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b) or the PSLRA."  *Cal. Pub. Emps.' Ret. Sys. v. Chubb*

**Basis of Knowledge**:  As show in the Moving Brief, while FE 6 – the TAC's star witness – was purportedly involved in meetings with the FDA, he was three levels removed from the Individual Defendants and the best he can muster is that he believes information from those meetings was reported to "upper management layers"/"senior leaders" (*id.* ¶145).  Moving Br. 37-39.[21]  The only other FE alleged to have had "personal involvement" in any ostensibly relevant facts is FE 8, whose "involvement" consisted of observing "whiteboards" in his superior's office scrawled with information about Alaris and attending a meeting that, as shown in the Moving Brief, likely occurred *after* BD's February 3, 2020 meeting with the FDA.  TAC ¶¶167, 182.  Beyond that, Plaintiff concedes that the accounts of FEs 8-11 are based on what they were "told" or, more vaguely, information they received "consistent with their Alaris-related job responsibilities."  Opp. 37.  In other words, hearsay.

**Details Provided**:  While Plaintiff claims that the TAC provides "extensive detail" (Opp. 38),[22] the gaps in its FE allegations are glaring (*e.g.*, which Alaris "issues" concerned the FDA

---

*Corp.*, 394 F.3d 126, 148-156 (3d Cir. 2004) (FE allegations from three former vice presidents and seventeen former low-level employees were "unavailing").

[21] Contrary to Plaintiff's assertion (Opp. 38), Defendants do address the TAC's key FE 6 allegations in the falsity section of the Moving Brief (at 21-22).  Regardless, the unreliability of the FE allegations demonstrated in the scienter section of that brief also prevents them from adequately pleading falsity.

[22] Plaintiff's cases involve complaints citing documents (as opposed to hearsay conversations) to plead with particularity, whereas the TAC cites no documentation whatsoever bearing on any Individual Defendant's knowledge of false information. *See In re Dr. Reddy's Lab. Ltd. Sec. Litig.*, No. 3:17-cv-6436 (PGS) (DEA), 2019 WL 1299673, at *2-3 (D.N.J. Mar. 21. 2019) (plaintiff relied on an FDA warning letter, findings from multiple Form 483s and a single "well-placed confidential witness"); *In re Able Lab'ys Sec. Litig.*, No. 05-2681 (JAG), 2008 WL 1967509, at *2 (D.N.J. Mar. 24, 2008) (plaintiff relied on "findings from the FDA Form 483" as well as confidential witnesses).

prior to the November 2019 ship hold, the timing of key meetings, what information was purportedly reported up the chain to the Individual Defendants). *See* Moving Br. 42-48.[23]

**Reliability/Corroboration/Coherence/Plausibility**:  Plaintiff says that BD lifted the ship hold on or around December 25, 2019, and, following a meeting with the FDA that, according to FE 6, took place "approximately three weeks [there]after" – which would have been on or about January 14 – BD "immediately" resumed the ship hold.  Opp. 18.  But that timing simply doesn't add up.

Rather, as the TAC alleges, on that very same day – January 14 – Polen confirmed to the world that BD ***had "fully resumed shipping [Alaris] in the first quarter."***  Accordingly, if the FDA meeting to which FE 6 refers actually occurred on January 14, then the assertion that the ship hold was "reimposed immediately" is demonstrably wrong, rendering FE 6's allegations unreliable and incredible.  This is consistent with (and consistent with the lack of specificity in) FE 8's statement about a meeting that took place in "January ***or February***" which, as shown in the Moving Brief, most plausibly occurred ***after*** the early February meeting with FDA at which it informed BD of its determination that a comprehensive 510(k) was required.  It is another fundamental inconsistency underscoring the unreliability of the new FEs.

---

[23] Rather than "a degree of pre-discovery precision that … could never be satisfied" (Opp. 39), Plaintiff should at least be held to the level of specificity required by its own authority.  *See In re Toronto-Dominion Bank Sec. Litig.*, No. 17-cv-1665 (NLH/JS), 2018 WL 6381882, at *5 (D.N.J. Dec. 6, 2018) ("These CW statements provide where the misconduct occurred – to a specific branch location or department, the time period when it occurred, how and why it occurred, and what products may have been involved.").

Such inconsistencies "call into question the reliability of Plaintiff's witnesses." *Becton I* at 35 n.32. Indeed, none of the FE accounts are "consistent" as to any allegations that would render Defendants' Class Period statements misleading. Moving Br. 39-49.[24]

### 4.    The Opposition's Remaining Arguments Fail

As to the Opposition's remaining arguments regarding falsity/materiality, we respectfully refer the Court to the Moving Brief with respect to forward-looking statements protected by the PSLRA's safe harbor. Moving Br. 24-29 (**Stmts. 1-4, 6, 8, 17, 18, 21 & 22** (FY20 Guidance or statements reaffirming it); **Stmts. 1, 3-10, 12, 15, 16, 21 & 23** (statements of future plans and expectations); *see Becton I* at 29-32 (**Stmts. 1-10, 12, 18, 21** and **22** protected by safe harbor). Plaintiff does not contest that the safe harbor applies to **Stmts. 1** and **12**. *See* Opp. 39-42.

The Opposition's argument that the safe harbor does not apply to the FY20 Guidance or BD's statements regarding revenues and Alaris sales by virtue of the "undisclosed fact[]" that the FDA "precipitated" the November 2019 ship hold, ostensibly rendering "resumed, sustained Alaris sales after Q1 FY20 … highly improbable (or worse)" (Opp. 40-41), fails for the reasons set forth in the preceding sections. As this Court held in the Dismissal Decision, "the FDA's history of inaction in the face of purported compliance violations by the Alaris suite of products" demonstrates a reasonable basis for BD's projections. *Becton I* at 31-32. As Plaintiff's authority acknowledges (Opp. 28, 41), for projections to be actionable, their preparers must be alleged, unlike here, to have had reason to know the projections were false when made.[25]

---

[24] "Nevertheless, even if the heightened pleading standards have been met with respect to these sources, Plaintiffs' claims fail under Rule 12(b)(6) because the information these sources purportedly possess is not inconsistent with Chubb's allegedly false and misleading statements." *Chubb*, 394 F.3d at 150.

[25] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1430 (3rd Cir. 1977); *see also Frater*, 996 F. Supp. 2d at 348, 350; *In re Advance Auto Parts, Inc. Sec. Litig.*, No. 18-212-RGA, 2020 WL 599543, at *3 (D. Del. Feb. 7, 2020); *Curran v. Freshpet, Inc.*, No. 16-2263, 2018 WL 394878,

Plaintiff's arguments against BD's adequate cautionary language (Opp. 41) likewise fail, as Plaintiff's own case law demonstrates. *See Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) (cautionary language meaningful despite plaintiff "identify[ing] a handful of incidents" that allegedly contradicted the defendant's "[c]autionary words"). Similarly, Plaintiff's own authority acknowledges the need to plead Defendants' actual knowledge of facts rendering their forward-looking statements false or misleading at the time they were made (Opp. 42).[26] And, as this Court has recognized, the Opposition's argument that the safe harbor does not apply to omissions (Opp. 42) is "weak" and generally unestablished in this Circuit. *See Tanaskovic v. Realogy Holdings Corp.*, Civil Action No. 19-15053 (SRC), 2021 WL 211049, at \*17 (D.N.J. Jan. 21, 2021).

Finally, as to statements of present fact, we respectfully refer to the Court to the Moving Brief at 29-32. *See also Becton I* at 24-26, 32-33. Beyond that, the Opposition admits that certain of the alleged misstatements were "literally true" (Opp. 30-31). Elsewhere, it attempts to suggest that statements of present fact were misleading by claiming, in purely conclusory terms, that Alaris sales had somehow ***already*** "hit a wall" before the alleged corrective disclosures (*id.* at 40), which is demonstrably untrue based on the Company's reported results, which are nowhere alleged to be inaccurate.

---

at \*4-5 (D.N.J. Jan. 12, 2018); *City of Hialeah Emps.' Ret. Sys. & Laborers Pension Tr. Funds for N. Cal. v. Toll Bros., Inc.*, No. 07-1513, 2008 WL 4058690, at \*2 (E.D. Pa. Aug. 28, 2008); *In re AT&T Corp. Sec. Litig.*, No. Civ. 00-CV-5364 (GEB), 2002 WL 31190863, at \*14 (D.N.J. Jan. 30, 2002); *In re Cephalon Sec. Litig.*, No. 96-CV-0633, 1997 WL 570918, at \*1 (E.D. Pa. Aug. 29, 1997).

[26] *See SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 902 (E.D. Pa. 2018); *In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 471 (E.D. Pa. 2014); *Curran*, 2018 WL 394878, at \*4-5; *AT&T Corp.*, 2002 WL 31190863, at \*14; *Roofer's Pension Fund v. Papa*, No. 16-2805, 2018 WL 3601229, at \*15 & n.9 (D.N.J. July 27, 2018).

**B.     THE TAC FAILS TO PLEAD SCIENTER**

As shown in the Moving Brief (Sect. II.B.), the TAC's scienter allegations lack particularized facts "'giving rise to a strong inference'" that each Defendant omitted information or made the challenged statements recklessly or with an intent "'to deceive, manipulate, or defraud'" investors. *See Avaya*, 564 F.3d at 252-53.

As discussed at length above, the Opposition argues, incongruously, that scienter can be inferred because Defendants had "actual knowledge [that FDA was] the impetus for the ship hold and the FDA's call that BD submit a 510(k)" and these "facts … were omitted from the company's public pronouncements." Opp. 43. Even if that were the standard (it is not), neither the scattered, often conflicting assertions of FEs 6-11, nor inferential allegations predicated on the Individual Defendants' executive positions and the importance of Alaris to BD, nor Plaintiff's "motive" allegations based on stock trades that were small in relative terms, are sufficient to establish a strong inference of scienter.

**1.     The Relevant Issue is Defendants' Intent to Deceive**

Unable to point to any facts giving rise to an inference Defendants intended to deceive investors, Plaintiff wrongly claims that the Third Circuit "rejected this standard in *Semerenko v. Cendant Corp.*, 223 F.3d 165, 176 (3d Cir. 2000)." Opp. 46 n. 31. But *Cendant* actually expressly declined to address scienter. *Id*. at 187-88. Instead, it deals with the entirely distinct "in connection with" requirement of the federal securities laws, holding that a target company's stockholders may sue a potential acquiror for materially false or misleading public statements outside its tender offer solicitation materials. *Id*. at 176, 187-88. That holding is irrelevant here.

Nor can Plaintiff satisfy the scienter requirement merely by "'alleg[ing] that defendants had knowledge of facts or access to information that contradicts their statements.'" Opp. 43 (quoting *In re Cambrex Corp. Sec. Litig.*, No. 03-CV-4896 (WJM), 2005 WL 2840336, at *11

16

(D.N.J. Oct. 27, 2005).  First of all, it hasn't done so (*see* Sect. A, *supra*).  But in any event, the cases endorsing this "knowledge is enough" standard involve circumstances where defendants' affirmative statements were not merely arguably misleading but "outright false"[27] or inaccurate.[28] Here, Plaintiff alleges no statement "contradicted" by the purportedly "known" facts.[29]  Indeed, the Opposition speaks almost exclusively in terms of omissions, not misrepresentations.  *See, e.g.*, Opp. 43 ("facts … omitted from the company's public pronouncements"), 46 ("Defendants failed to reveal" that FDA was the "precipitating cause" of the ship hold).  And, as discussed *supra* at Sects. A.1-2, BD had no duty to disclose any of this.

In any event, as explained in the Moving Brief and below, the TAC's allegations – whether viewed individually or collectively – fail to plead any particularized facts creating a strong inference that the Individual Defendants either intended to deceive investors **or** knew (or "recklessly disregarded") that any statements they made were false or misleading at the time they made them.

### 2.    The FE Allegations Do Not Support a Strong Inference of Scienter

This Court has already rejected the bulk of Plaintiff's scienter allegations – including statements attributed to the first five FEs – on the basis that they fail to allege that any Individual

---

[27] *See, e.g., Frater*, 996 F. Supp. 2d at 349-50 (statement that the "FDA withdrew its request for an additional study" prior to resubmission of a rejected NDA was "outright false").

[28] *See Cambrex*, 2005 WL 2840336, at *11-12 (defendants' financial statements and forecasts contained known accounting errors and failed to account for loss of company's largest contract).

[29] Even if, as Plaintiff suggests, the FDA was an "impetus" for the ship hold, Plaintiff identifies no statement made by an Individual Defendant that would be "contradicted" as a result.  While the Opposition implies that the Individual Defendants' November 5 statements about the ship hold were misleading because the ship hold "was not part of a 'process' or 'strategy' of continued product enhancements," but "a direct and immediate reaction to the FDA" (Opp. 49), it offers no explanation for why (nor does the TAC allege that) those categories are mutually exclusive.

Defendant was aware, before February 3, 2020, that the FDA would require comprehensive 510(k) clearance for continued marketing of Alaris. *See* Moving Br. 39-48; *see also Becton I* at 35.

The Opposition thus relies primarily on new allegations attributed to FEs 6 through 11 regarding a series of "meetings and communications" in late 2019 and early 2020 between FDA and BD representatives (none of whom was an Individual Defendant), including (a) a meeting in "September or October 2019" during which FDA supposedly indicated that it did not "***think*** [BD] ***should*** be shipping" Alaris with certain outstanding product issues and that BD "***should*** do a 510(k)" (TAC ¶¶132, 135), and (b) subsequent meetings (at unspecified times) during which FDA allegedly responded favorably upon learning that BD had imposed the ship hold (*id.* ¶178) and unfavorably upon learning that it had resumed shipping after completing the Q1 Upgrades (*id.* ¶190). *See* Opp. 43.

As a threshold matter, even accepting the FE allegations at face value, they do nothing to support Plaintiff's original theory of fraud – *i.e.*, that Defendants knew, prior to February 3, 2020, that the FDA would require BD to submit a comprehensive 510(k) application covering all prior Alaris modifications in order to continue shipping the product.[30]  At most, they suggest that certain FDA representatives believed that certain unspecified Alaris product issues should be corrected before continued shipment – which occurred – and that certain other unspecified modifications should be cleared through the 510(k) process.  For that reason alone, the FE allegations cannot establish scienter. *See Becton I* at 21 ("Accepting these allegations as true, they are still insufficient

---

[30] This case bears no resemblance to those Plaintiff cites in which defendants' public statements directly conflicted with prior FDA guidance.  For example, in *Frater*, 996 F. Supp. 2d at 349, defendants stated that "FDA withdrew its request for an additional study" when in fact FDA had not done so. *See also In re Viropharma*, 21 F. Supp. 3d at 473; *In re PTC Therapeutics, Inc. Sec. Litig.*, No. 16-1124 (KM) (MAH), 2017 WL 3705801, at *16-17 (D.N.J. Aug. 28, 2017); *Endo Int'l*, 351 F. Supp. 3d at 886-87.

to establish that the Individual Defendants believed that a 510(k) application would be necessary.").[31]

Moreover, the FE allegations cannot be taken at face value.  Only one FE even purports to have had any direct contact with, or worked in a direct reporting line to, any of the Individual Defendants, "weigh[ing] on the plausibility of allegations sourced to [them]."  Moving Br. 37 (quoting *Becton I* at 25 n.19); *see City of Pontiac Gen. Empls' Ret. Sys. v. Stryker Corp.,* 865 F. Supp. 2d 811, 824-25 (W.D. Mich. 2012).  And the allegations attributed to the lone exception, FE 8, relate to a meeting at which he and Mr. Polen were present sometime "'***in*** January or ***February of 2020***'" (TAC ¶167), most likely ***after*** the critical February 3 meeting with the FDA.  This near-total absence of first-hand knowledge severely undermines the FEs' reliability.  Moving Br. 37-38; *see also Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 540 (D.N.J. 2010) (rejecting confidential witness allegations not based on "first-hand" knowledge, even where "witnesses worked with high-level executives and participated in company-wide meetings" that included individual defendants).[32]

Passing that, none of the FE statements alleges with sufficient particularity that any of the Individual Defendants were involved in or aware of the 2019-20 FDA meetings.  Only FE 6 even mentions the Individual Defendants, saying in conclusory fashion that colleagues two or three

---

[31] Nor, in any event, is there any reliable FE allegation that FDA specifically "called for," let alone mandated, the November ship hold, or that BD did not choose to and, in fact, implement it. Indeed, the only FE alleged to have attended any of these meetings with FDA (FE 6) reported only that FDA opined that "[w]e don't ***think*** you ***should*** be shipping this product with these [unspecified] issues."  TAC ¶135.

[32] Rather than support the FEs' reliability, Plaintiff's authority underscores the importance of first-hand knowledge.  *See, e.g.*, *Avaya*, 564 F.3d at 266; *Carmignac Gestion, S.A. v. Perrigo Co. PLC*, No. 17-10467, 2019 WL 3451523, at *14 (D.N.J. July 31, 2019) (FEs had firsthand knowledge of key issues and had conversations with supervisory-level employees about them); *Roofer's Pension Fund*, 2018 WL 3601229, at *23 (FEs' "positions afforded them firsthand knowledge of the underlying facts" (quotations omitted)).

levels removed ultimately informed Messrs. Forlenza and Polen of the ship hold (without explaining the basis for his knowledge). The Opposition's assertion that "the TAC contains specific allegations that the Defendants were personally informed about the content of the meetings with the FDA" (Opp. 44) is belied by the examples immediately following it – *i.e.*, the information was "roundly known" and "reported up" to unnamed "management"; FE 6 "participated in upward reporting"; "upper management" and "corporate leaders" were informed. Under *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245 (3d Cir. 2013), which the Opposition ignores, such vague and conclusory statements do not plead scienter in this Circuit. *See id.* (no scienter where FEs failed to specify, *e.g.,* interactions with defendants).[33]

Plaintiff effectively concedes this point, retreating to allegations that the Individual Defendants "must have known" of every meeting and discussion with FDA personnel. Opp. 45 ("It is simply not a plausible inference that executive management remained unaware …."). But such "must have known" allegations are wholly insufficient. Moving Br. 34-35; *see Chan v. New Oriental Educ. & Tech. Grp. Inc.*, No. 16-9279 (KSH) (CLW), 2019 WL 2865452, at *11 (D.N.J. July 3, 2019) (rejecting FE allegations that it was "quite impossible" that "management did not know").

As for the substance of the new FE allegations, even if credited, Plaintiff seems to recognize that, as a matter of basic logic, only a statement by FDA *after* the ship hold was implemented and *before* Alaris resumed shipping could even arguably suggest any sort of scienter. Yet the alleged December discussion in which FDA sought to confirm that Alaris was on ship hold certainly doesn't accomplish that. BD announced, as Plaintiff alleges, that Alaris sales were

---

[33] Plaintiff's reliance on *In re Dr. Reddy's*, 2019 WL 1299673 (Opp. 38), is misplaced. The scienter allegations in that case, unlike here, were "not solely or substantially dependent on [FE] statements." *Id.* at *17.

temporarily on hold pending the Q1 Upgrades at the very beginning of the Class Period, Alaris remained on ship hold at the time of that alleged December FDA inquiry, BD accurately confirmed as much, and the Company later announced publicly that the ship hold had been lifted, "exactly as expected."

Finally, this Court has already flatly rejected the argument that Mr. Polen's alleged inquiry into the failure of the Project Monterey 510(k) "circumstantially reinforced" his knowledge of the 2019 FDA meetings (Opp. 45), much less any knowledge that the FDA would require a comprehensive 510(k) to continue shipping Alaris.[34]  As the Court held in the Dismissal Decision, the exact opposite is true.  *See Becton I* at 34-35.  And as Plaintiff itself notes, "Project Monterey *never resulted in a cessation of Alaris sales*."  Opp. 45.  Exactly.

### 3. Plaintiff's Conclusory Allegations Regarding Access to Information, Public Statements and Core Operations Fail to Plead Scienter

As shown in the Moving Brief, Plaintiff's additional inferential scienter arguments – predicated on the Individual Defendants' access to information and executive positions and Alaris's alleged importance to BD – are equally baseless.  Moving Br. 49-51.

Plaintiff asserts that the Individual Defendants' "access to information through BD's regulatory compliance framework" corroborate scienter.  Opp. 45.  Not so.  Neither the TAC nor the Opposition identifies a single specific report that (1) the Individual Defendants actually reviewed, and (2) was at odds with any of their Alaris-related statements.  *See Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).  For similar reasons, Plaintiff's suggestion that scienter may be inferred because Defendants allegedly "failed to check information they had a duty to monitor" under the Consent Decree also fails.  *See Liu v. Intercept Pharms., Inc.*, No. 17-cv-7371 (LAK),

---

[34] Notably, Mr. Polen was not the CEO at the time of Project Monterey.

2020 WL 1489831, *18 (S.D.N.Y. Mar. 26, 2020) (allegations "that defendants, collectively, had a general responsibility to monitor the data … do not satisfy the PSLRA[]").[35]

Plaintiff's argument that scienter can be inferred by the Individual Defendants' "detailed" public statements about Alaris, the ship hold and the FDA (Opp. 47) simply repackages its deficient allegations that scienter can be imputed by virtue of executive positions – allegations this this Court already rejected. *Becton I* at 36. The fact that Messrs. Polen and Reidy discussed Alaris modifications, delayed sales and FDA correspondence on an earnings call and answered analysts questions (Opp. 47) does not salvage the allegation. Since virtually every CEO and CFO talks to analysts quarterly, inferring scienter on this basis would be tantamount to endowing all senior executives with encyclopedic knowledge merely by virtue of their positions. That is not the law. *See Fain v. USA Techs., Inc.*, 707 F. App'x 91, 96 (3d Cir. 2017) ("That Defendants were in top positions … is not enough."); *Becton I* at 36. Absent allegations that Defendants knew that the FDA would require a comprehensive 510(k), their executive positions do not support scienter. *Rahman*, 736 F.3d at 247.[36]

Finally, Plaintiff's "core operations" argument – that Alaris's prominence within BD supports an inference of scienter – is equally conclusory (Opp. 49-50) and finds no support in the

---

[35] As an afterthought, Plaintiff adds that the fact that "BD is presently the subject of an SEC investigation further supports the scienter inference." Opp. 48. But Plaintiff's own authority declines to "factor [an] SEC investigation into the scienter analysis." *De Vito v. Liquid Holdings Grp., Inc.*, Civ. No. 15-6968 (KM) (JBC), 2018 WL 6891832, at *36 (D.N.J. Dec. 31, 2018).

[36] By contrast, Plaintiff's authority inferring knowledge (Opp. 48) involved far more extensive allegations of actual knowledge and direct involvement. *See, e.g.*, *In re PTC Therapeutics*, 2017 WL 3705801, at *16-17 (defendants alleged to have known "that [a clinical trial] had failed on its own terms, and that the FDA would not accept a post hoc statistical analysis as a substitute …"); *In re Genta, Inc. Sec. Litig.*, No. Civ.A. 04-2123(JAG), 2005 WL 2416970, at *7 (D.N.J. Sept. 30, 2005) ("Plaintiffs here do not argue that Warrell must have known only because he was President and CEO, but rather, that Warrell must have known about the clinical trials because … he was 'personally involved in the design' of the trials ….").

TAC[37] or Plaintiff's authority.[38]  As Plaintiff acknowledges, "core operation" allegations support scienter only "'when taken together with additional allegations connecting the executives' positions to their knowledge.'"  Opp. 49-50 (quoting *In re Urb. Outfitters, Inc., Sec. Litig.*, 103 F. Supp. 3d 635, 653-54 (E.D. Pa. 2015)); *see also Becton I* at 37; *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 511-12 (E.D. Pa. 2018) (even assuming "FDA approval for ARYMO was one of Egalet's core operations[,] … knowledge of ARYMO's prospects for FDA approval in general is different from **knowledge that ARMYO definitely would or would not receive approval for specific claims**").

> **4.      Plaintiff's Motive Allegations Do Not Support a Strong Inference of Scienter**

Finally, the Opposition rehashes the argument, rejected in the Dismissal Decision, that the Individual Defendants' stock sales evidence a motive to commit fraud.  Opp. 51-53; *Becton I* at 37-40.  But it has only gotten weaker.

---

[37] *See* TAC ¶101 (after the acquisition of CareFusion, BD "hailed Alaris **and Pyxis** as 'Key Brands' that would now make up BD's 'Key Platforms'").

[38] The cases cited in the Opposition involved products alleged to be far more impactful.  The TAC alleges that after the acquisition of CareFusion, BD "hailed Alaris **and Pyxis** as '**Key Brands**' that would now make up BD's '**Key Platforms**.'"  TAC ¶101.  This stands in sharp contrast to the products at issue in Plaintiff's authority.  *See e.g., In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) ("U.S. soup sales are indisputably the bread and butter of Campbell's business …."); *Hall v. Johnson & Johnson*, C.A. No. 18-1833 (FLW), 2019 WL 7207491, at *21 (D.N.J. Dec. 27, 2019) (Talc Product characterized as "an institution," "flagship product" and "sacred cow"); *In re Allergan Generic Drug Pricing Sec. Litig.*, No. 16-9449 (KSH) (CLW), 2019 WL 3562134, at *12 (D.N.J. Aug. 6, 2019) ("generic drug sales … account[ed] for 32% of 2014's total revenues and jumping to 42% in 2015"); *In re Dr. Reddy's*, 2019 WL 1299673, at *16 ("sales comprised nearly half of Dr. Reddy's revenue"); *In re Enzymotec Sec. Litig.*, No. 14-5556 (JLL) (MAH), 2015 WL 8784065, at *18 n.17 (D.N.J. Dec. 15, 2015) (business segment "made up 96% of Company's revenues"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2015 WL 3755218, at *16 (E.D. Pa. June 16, 2015) (pay day loans constituted majority of revenues).

*First*, the timing of the sales contradicts a motive to defraud.[39]  As noted above, under Plaintiff's current theory of the case, the Individual Defendants knew or should have known, based on the Company's pre-Class Period discussions with FDA, that as soon as FDA learned that BD had released the ship hold, it would "drop the hammer" and require indefinite cessation of Alaris sales.  But, as the TAC alleges, Mr. Polen announced to the world on January 14, 2020 – just over halfway into the Class Period – that Alaris shipments had fully resumed.  At that point, according to Plaintiff, the jig should have been up.  Why, then, did Mr. Forlenza wait to execute fully *$25 million* of his allegedly "suspicious" stock sales until *after* that announcement?  *See* TAC ¶273.  Again, the inferences Plaintiff invites the Court to draw are the opposite of cogent and compelling; they are inconsistent and incoherent.

*Second*, contrary to Plaintiff's opposition arguments (Opp. 52-53), the relative size of Messrs. Forlenza's and Polen's sales (14% and 18% of their respective holdings) undermines any inference of fraudulent intent irrespective of the "substantial" dollar value of the transactions.  *See Becton I* at 39.  None of Plaintiff's inapposite authority suggests otherwise.  *See In re Suprema Spec., Inc. Sec. Litig.*, 438 F.3d 256, 277 (3d Cir. 2006) (sale of over 30% of total holdings); *Urb. Outfitters*, 103 F. Supp. 3d at 654-55 (sale of 99% of holdings); *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85-86 (2d Cir. 1999) (sale was "much larger" than 11% of total stock).[40]

---

[39] *See id.* at 39-40.  The Court has already held that Mr. Forlenza's retirement "vitiates the implication that the[] trades were made with suspicious timing" (*id.* at 40), and twelve months of trading activity in the context of an eight-year tenure as BD's CEO is insufficient to draw any inference of scienter.  *Id.* at 40 n.36

[40] In the *In re Toronto-Dominion Bank* case (Opp. 52), the Court noted that "[i]f Defendants wished to challenge Plaintiffs' scienter argument, they could have provided this Court with percentages of holdings which each Individual Defendant sold off during the class period.  They do not.  Thus, this Court lacks the information to determine whether this would support or detract from the inference of scienter here."  2018 WL 6381882, at *16.  Here, the Court has those percentages.

24

*Finally*, as discussed above, the TAC lacks particularized allegations that any Defendant possessed material non-public information contrary to their Class-Period statements – "[t]he critical inquiry in determining whether insider trades can impact on scienter." *Becton I* at 38.[41]

---

[41] We respectfully refer the Court to the Moving Brief for a complete response to the Opposition's arguments with respect to Plaintiff's Section 20(a) claim (Moving Br. 54; Opp. 55) and Section 20A claim (Moving Br. 51-54; Opp. 55). Moreover, the only thing to add on loss causation (Moving Br. 53-54) is that Plaintiff's attempt to distinguish *Marsden v. Select Med. Corp.*, No. Civil Action No. 04-4020, 2007 WL 1725204 (E.D. Pa. June 12, 2007) (Opp. 54 n.38), fails because, as discussed *supra* Sect. A.2, even crediting the unreliable FE allegations, Plaintiff has not pled that it was "FDA's explicit position that Alaris should not be shipped and should obtain a new 510(k)." Rather, its allegations show that after years of ongoing dialogue between BD and the FDA, during which the FDA was fully aware of the changes BD had been making to Alaris over time, the FDA – for the first time – made the "explicit" and unforeseen determination that Alaris needed comprehensive 510(k) clearance in February 2020. Thus, as in *Marsden*, the TAC "contains not a single allegation that the 'relevant truth'" was revealed to the market. 2007 WL 1725204, at *2. Plaintiff's cases merely underscore the TAC's deficiencies on this point. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005) (loss must be caused by the truth being disclosed); *In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.*, MDL No. 1658 (SRC), 2011 WL 3444199, at *30 (D.N.J. Aug. 8, 2011) ("series of corrective disclosures, each of which allegedly made a partial revelation of the fraud"); *McCabe v. Ernst & Young LLP*, 494 F.3d 418, 429 (3d Cir. 2007) (affirming grant of summary judgment because plaintiff failed to show the misrepresentations and omissions "were a substantial factor in causing the … economic loss ….").

25

**CONCLUSION**

For the foregoing reasons, and those set forth in the Dismissal Decision and the Moving Brief, the TAC should be dismissed in its entirety with prejudice.[42]

Dated:  March 4, 2022                               Respectfully submitted,

                                                    **MCCARTER & ENGLISH, LLP**

                                                     /s/  *Matthew A. Sklar*
                                                    Matthew A. Sklar
                                                    Omar A. Bareentto
                                                    Four Gateway Center
                                                    100 Mulberry St.
                                                    Newark, NJ 07102
                                                    Telephone: (973) 622-4444
                                                    Facsimile: (973) 624-7070
                                                    msklar@mccarter.com
                                                    obareentto@mccarter.com

                                                    **WINSTON & STRAWN LLP**
                                                    James P. Smith III (admitted *pro hac vice*)
                                                    Matthew L. DiRisio (admitted *pro hac vice*)
                                                    200 Park Avenue
                                                    New York, New York 10166
                                                    Telephone: (212) 294-6700
                                                    Facsimile: (212) 294-4700
                                                    jpsmith@winston.com
                                                    mdirisio@winston.com

                                                    *Counsel for Defendants Becton, Dickinson and*
                                                    *Company, Vincent A. Forlenza, Thomas E. Polen*
                                                    *and Christopher R. Reidy*

---

[42] *See Chubb*, 394 F.3d at 163-66 (affirming denial of leave to amend a second amended complaint where the prior dismissal opinion provided a "detailed roadmap for curing the deficiencies in [plaintiffs'] claims," but plaintiffs "failed to cure those deficiencies"); *Realogy Holdings*, 2021 WL 211049, at *21 ("[B]ecause there is no indication that Plaintiff could allege facts curing the deficiencies in the Amended Complaint, leave to further amend will not be granted.").