# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

### COUNSELLORS AT LAW

—————

CHARLES C. CARELLA
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

DONALD F. MICELI
CARL R. WOODWARD, III
MELISSA E. FLAX
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
LINDSEY H. TAYLOR
CAROLINE F. BARTLETT
ZACHARY S. BOWER+
DONALD A. ECKLUND
CHRISTOPHER H. WESTRICK*
STEPHEN R. DANEK
MICHAEL A. INNES
MEGAN A. NATALE

**5 BECKER FARM ROAD
ROSELAND, N.J.  07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com**

PETER G. STEWART
FRANCIS C. HAND
JAMES A. O'BRIEN, III
JOHN G. ESMERADO
STEVEN G. TYSON
MATTHEW J. CERES
MARC D. MORY
ZACHARY A. JACOBS***
JASON H. ALPERSTEIN+ +

OF COUNSEL

*CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY
**MEMBER NY BAR
***MEMBER IL BAR
+MEMBER FL BAR
+ + MEMBER NY & FL BAR

RAYMOND J. LILLIE
GREGORY G. MAROTTA
KEVIN G. COOPER
MARYSSA P. GEIST
JORDAN M. STEELE**
MICHAEL K. BELOSTOCK
BRIAN F. O'TOOLE**
SEAN M. KILEY
ROBERT J. VASQUEZ

April 21, 2023

**<u>VIA ECF</u>**
Hon. Cathy L. Waldor, U.S.M.J.
United States District Court
for the District of New Jersey
Martin Luther King Jr. Courthouse
50 Walnut Street
Newark, NJ 07101

> **Re:    *Industriens Pensionsforsikring A/S, et al. v. Becton Dickinson et al.*,
> <u>Case No. 2:20-cv-02155-SRC-CLW</u>**

Dear Judge Waldor:

We write regarding a discovery dispute that has arisen between Lead Plaintiff Industriens Pensionsforsikring A/S ("Plaintiff") and Defendant Becton Dickinson ("BD" or "Defendant").  In accordance with Your Honor's Civil Case Management Order, Plaintiff writes to respectfully request that the Court issue a protective order under Federal Rule of Civil Procedure ("Rule") 26(c) (i) directing BD to cease and desist from interfering with Plaintiff's subpoena duces tecum (the "Subpoena," attached hereto as Exhibit A) to non-party Crisis Prevention & Recovery, LLC d/b/a SoftwareCPR ("SoftwareCPR"); (ii) ordering the immediate production of all documents responsive to the Subpoena, subject to ¶ 18 of the Discovery Confidentiality Order (ECF No. 121); and (iii) any other relief that the Court believes is appropriate.

## 1.    Plaintiff's Position

### 1.    Relevant Background

This putative class action concerns the alleged misstatements and omissions made by BD and Defendant Polen about BD's medical device Alaris and BD's communications with the U.S. Food and Drug Administration about safety problems and defects in that device.

April 21, 2023
Page  2

In response to an interrogatory served on October 28, 2022, Defendants identified SoftwareCPR as one of three consultants that BD retained during the relevant time period in connection with Alaris-related matters alleged in the Complaint (ECF No. 91).  Based on Plaintiff's investigation to date, which neither BD nor SoftwareCPR disputes, during the Class Period, SoftwareCPR provided BD with technical consulting advice regarding the software deficiencies with Alaris—an issue at the core of Plaintiff's claims.  *See, e.g.*, ECF No. 91 at ¶¶ 4, 11, 18, 196-209.  On January 9, 2023, Plaintiff served SoftwareCPR with the Subpoena and provided Defendants notice of the same.  The Subpoena had a response date of January 23, 2023.

On January 18, 2023, SoftwareCPR requested an extension to respond to the Subpoena, which Plaintiff agreed to accommodate.  Thereafter, on January 20, 2023, Defendants' counsel, speaking on behalf of SoftwareCPR, also requested an extension for SoftwareCPR's response to the Subpoena on the basis that SoftwareCPR had not yet retained counsel.  Plaintiff consented to the request.  On February 16, 2023, Defendants' counsel emailed Plaintiff introducing Reed Smith LLP ("Reed Smith") as counsel for SoftwareCPR.  Reed Smith requested a further extension to March 10, 2023 for SoftwareCPR's response to the Subpoena.  Plaintiff accommodated the request.

On March 10, 2023, Reed Smith emailed Plaintiff asserting that the "the documents sought by the subpoena are protected from disclosure by the attorney client privilege and work product doctrine, as our client was retained by counsel at Becton Dickinson during the relevant time period."  On March 10, 2023, Plaintiff requested a formal response to the Subpoena and asked that SoftwareCPR provide "any legal support you have for the proposition that all of SoftwareCPR's responsive documents are protected as privileged or work product," and "any other bases for your contention and position on producing documents."  On March 20, 2023, SoftwareCPR explained in the letter attached hereto as Exhibit B the basis for its position:

> [O]n November 1, 2019, Michelle Quinn, Esquire, who at the time was in-house counsel for Becton, Dickinson and Company LLC ("BD") and specifically Chief Regulatory Counsel for the company, retained SoftwareCPR to assist her and the BD Legal Team in providing legal advice to the company relating to the Alaris Infusion Pump System. As a result, all written and oral communications between SoftwareCPR and BD relating to that engagement, as well as any documents that may have been generated by SoftwareCPR as a result of the engagement, are privileged.

On March 28, 2023, Plaintiff met and conferred with SoftwareCPR to discuss its blanket assertion of BD's privilege over documents responsive to the Subpoena.  During the call, Reed Smith represented that SoftwareCPR possessed documents responsive to the Subpoena, and stated that nothing aside from the privilege objection stood in the way of SoftwareCPR producing such responsive documents to Plaintiff.  However, based on its communications with BD's counsel, SoftwareCPR stated that it would withhold all responsive documents based on BD's attorney client and/or work product privileges.  Plaintiff requested that SoftwareCPR produce an engagement letter and provide other facts to allow it to assess the privilege claim, but SoftwareCPR declined subject to seeking permission from BD.  Reed Smith further stated that SoftwareCPR would need

April 21, 2023
Page 3

to consult BD before it could agree to provide a privilege log.  Although not willing to presently disclose further information, Reed Smith indicated that it would entertain questions from Plaintiff regarding the engagement and the factual basis for the privilege.

The following day, Plaintiff sent SoftwareCPR ten questions concerning its engagement with BD and requested the production of the engagement letter.  Plaintiff also reasserted its position that, since BD had failed to move to quash or otherwise avail itself of the Rules to lodge its purported privilege claim and seek protection, SoftwareCPR should respond to the Subpoena without further delay by producing responsive documents.  One week later, on April 6, 2023, SoftwareCPR responded to Plaintiff's questions (attached hereto as Exhibit C), but did not provide the engagement letter or a privilege log.  SoftwareCPR explained that its four employees who worked on the engagement, none of whom were attorneys, solely reported to non-attorneys at BD. Exhibit C.  To date, SoftwareCPR continues to refuse to produce documents responsive to the Subpoena due to an undocumented and unspecified communication from BD regarding BD's purported privilege.

On April 11, 2023, Plaintiff sent a letter to BD requesting to meet and confer regarding BD's interference with the Subpoena and advising BD that it intended to raise the dispute with the Court (attached hereto as Exhibit D).  Over the next week, Plaintiff received no response.

On April 18, 2023, Plaintiff informed BD that it intended to file a joint letter pursuant to ¶ 7 of Your Honor's Civil Case Management Order, and requested BD's position by Thursday, April 20, 2023.  Defendant finally responded to Plaintiff on April 19, 2023 (attached hereto as Exhibit E) and for the first time asserted a privilege claim.  This was more than three months after Plaintiff sent notice of the Subpoena and over four months after Defendants identified SoftwareCPR as an entity likely to possess relevant documents.[1]  In its letter, BD acknowledged its involvement in SoftwareCPR's refusal to produce documents: "[T]he fact that SoftwareCPR's counsel has communicated with BD about a privilege *that is BD's to assert* is not only entirely proper, but SoftwareCPR and its counsel would have risked serious liability had they unilaterally jeopardized that privilege without first consulting the holder thereof."  Exhibit E (emphasis in original).

Plaintiff met and conferred with BD on Thursday, April 20, 2023.  During the meet and confer, BD confirmed that it communicated to SoftwareCPR its stance that all the documents responsive to the Subpoena are protected by privilege.  BD then made an eleventh-hour proposal to undertake a review of SoftwareCPR's documents for privilege and to produce a privilege log. BD claimed that it would be able to conduct such a review "in short order," but provided no further details about how such a review would progress or an expected timeline.  Indeed, BD confirmed it has taken no steps to support that assertion: BD does not have possession of SoftwareCPR's

---

[1] Defendants' letter to Plaintiff did not properly assert any privilege claims nor address the untimely nature of Defendants' response.  Instead, Defendants relied on authority relating to joint privilege protections, a privilege which neither SoftwareCPR nor BD has suggested applies here—nor could they.  *See Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 485–86 (D. Del. 2012), *aff'd sub nom. Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 2014 WL 545440 (D. Del. Feb. 7, 2014) (finding that communications between attorneys and co-clients was protected by joint privilege, an issue wholly inapplicable to the materials sought by the Subpoena).

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

April 21, 2023
Page  4

documents, has not conducted a review of any of SoftwareCPR's documents, and does not even have an estimate as to how many documents will need to be reviewed.  Plaintiff contended that Defendant's ambiguous proposal to conduct a review of SoftwareCPR's documents at some uncertain date would only cause undue delay.  Plaintiff also stated that Defendant's interference has already caused significant delay and unduly prejudiced Plaintiff's efforts to ensure the substantial completion of all document discovery and fully prepare for depositions that Plaintiff anticipates will begin in short order.

On April 20 Plaintiff re-affirmed orally and by email its intention to bring the present issue to the Court under the Court's Civil Case Management Order ¶ 7 and L. Civ. Rule 37.1 on this date, Friday, April 21.  Plaintiff requested that BD provide its position in writing in accordance with the Court's Civil Case Management Order ¶ 7(e) by April 21 at 12PM for inclusion in this letter and included in the email a draft of this letter.  BD sent an email on April 21 stating that it would not provide an insert to this letter, but intended to respond to Plaintiff's position with its own separate filing on April 24.

## 2.    Plaintiff's Argument

SoftwareCPR has indicated that, but for Defendant's interference, it would comply with the Subpoena and produce responsive documents.  BD's interference with the Subpoena is improper under Rule 45 and must cease.  A properly noticed and served subpoena to a non-party carries the binding authority of the issuing court.  *Alson v. West 88th Garace LLC*, 2012 WL 6629051, at *1 (S.D.N.Y. Oct. 9, 2012).  As such, it is the prerogative of the presiding court to "rule on the validity of subpoenas and to direct the recipients to comply or not comply."  *Price v. Trans Union*, L.L.C., 847 F. Supp. 2d 788 (E.D. Pa. 2012) (internal quotation omitted).

Rule 45 does not contemplate nor allow an adversarial party to advise a non-party as to how and whether to respond to a subpoena's command, "no matter the reasons."  *Price*, 847 F. Supp. 2d at 795 (sanctioning party for advising non-parties not to respond to subpoenas where party claimed he was seeking to "protect the privacy interests of the subject of a subpoena").  Rather, a party's interference in a non-party's response to a subpoena constitutes "usurp[ation of] the authority of the court."  *Fox Indus., Inc. v. Gurovich*, 2006 WL 2882580, at *8 (E.D.N.Y. Oct. 6, 2006).  By acting behind the scenes to indicate its privilege claim to SoftwareCPR in connection with the Subpoena, BD "took it upon [itself]" to limit or attempt to 'quash' the [S]ubpoena[]" and by "doing so[] arrogated to [itself] a power assigned to the Court under [Rule 45]."  *Price*, 847 F. Supp. 2d at 794.  Courts have found that such interference with non-party subpoenas can justify sanctions.  *See, e.g.*, *Fox Indus., Inc.*, 2006 WL 2882580 at *8 (finding letters to non-parties advising them not to comply with subpoena "constituted an abuse of process" justifying sanctions against interfering party); *Moses v. Am. Apparel Retail, Inc.*, 2015 WL 4665968, at *6  (W.D. Tenn. Aug. 6, 2015) (finding adversarial party's "interfere[nce] with [the issuing party's] lawful subpoenas by emailing [non-party respondents] . . . warning [them] not the respond to the subpoenas" weighed in favor of sanctions under Rule 37).

If BD believed it held legitimate privilege claims related to the material sought by the Subpoena under Rule 45, its "proper course should have been a motion to quash the subpoena."

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

April 21, 2023
Page  5

*Teri v. Oxford Mgmt. Servs., Inc.*, 2008 WL 11435689, at \*7 (E.D.N.Y. Sept. 30, 2008); *Price*, 847 F. Supp. 2d at 795-96 (party must move to quash to "limit a subpoena's scope and to protect the privacy interests of the subject of a subpoena" under Rule 45).  BD has never moved to quash the Subpoena or properly asserted its own privilege and cannot belatedly do so now.

Despite having notice of the Subpoena since January 9, 2023, BD never availed itself of its right to move to quash.  The period to file a "timely motion" has long elapsed.  Fed. R. Civ. P. 45(c)(3)(A).  Courts have held that a motion to quash must be filed before the compliance date of the subpoena, and is untimely when filed even just days after that date.  *See, e.g.*, *Dexter v. Cosan Chem. Corp.*, 2000 U.S. Dist. LEXIS 22134, at \*7–8 (D.N.J. Oct 24, 2000) (denying motion filed two days after compliance date).  Parties seeking to quash a non-party subpoena or limit it through a protective order are bound by the timeliness requirement.  *See, e.g.*, *Toole v. Cordovani*, 2014 WL 132002, at \*2 (D.N.J. Jan. 10, 2014) (denying as untimely party's motion to quash a subpoena served upon a non-party where the motion was filed three days after compliance date); *City of St. Petersburg v. Total Containment, Inc.*, 2008 WL 1995298, at \*2 (E.D. Pa. May 5, 2008) (denying motion filed one day after compliance date and collecting cases).  Here, BD has waived its right to move to quash based on privilege claims as more than 3.5 months have passed since it was put on notice of the Subpoena, more than 2 months have passed since the Subpoena's compliance date, and SoftwareCPR served its formal objection over a month ago (after several extensions).  If every document in SoftwareCPR's possession was truly privileged, BD should have been aware of its potential privilege claim as soon as the Subpoena was noticed.  Instead, it inexplicably delayed. That BD was willing to delay asserting its purported privilege for months severely undercuts whether the material warrants such protection.

Further, BD cannot satisfy its substantive burdens.  In order to support its privilege claims, BD bore the burden of establishing that otherwise discoverable documents are protected by privilege.  Fed. R. Civ. P. 26(b)(5); *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455 (D.N.J. Dec. 5, 2016), *on reconsideration in part,* 2017 WL 11633446 (D.N.J. Jan. 5, 2017) ("The burden of establishing that a document is privileged is on the party asserting the privilege."); *In re B & C Seafood LLC*, 431 F. Supp. 3d 533, 538 (D.N.J. 2019) ("The party asserting the [work product] doctrine bears the burden of proving that a document is protected.").  BD has not even tried to do so, instead improperly relying on SoftwareCPR to broadly assert BD's privileges with little to no factual support to substantiate the claims.  Further, SoftwareCPR's blanket assertion of BD's privilege over all responsive documents is procedurally improper as claims of attorney client privilege must be asserted on a "document by document basis."  *In re Hum. Tissue Prod. Liab. Litig.*, 255 F.R.D. 151, 163 (D.N.J. 2008), *judgment aff'd*, 2009 WL 1097671 (D.N.J. Apr. 23, 2009) (quoting *United Sates v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990)).  "Blanket or conclusory assertions of privilege" do not suffice.  *Donovan Realty, LLC v. Campers Inn Holding Corp.*, 2022 WL 4586132, at \*4 (E.D. Pa. Sept. 29, 2022); *Riddell*, 2016 WL 7108455, at \*6.

In addition, a party seeking to invoke attorney client privilege for communications involving a non-attorney "must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice." *Fed. Trade Comm'n v. Abbvie Inc.*, 2016 WL 4478803, at \*7 (E.D. Pa. Aug. 25, 2016); *Beachfront N. Condo. Ass'n, Inc. v. Lexington Ins. Co.,* 2015 WL 4663429, at \*1 (D.N.J. Aug. 5, 2015) (same).  Courts have recognized that "communications between a client and an expert consultant for business purposes, as opposed to

April 21, 2023
Page 6

legal purposes, are not protected," including where the expert consultant is retained to help a company "achieve regulatory compliance." *In re Grand Jury Matter*, 147 F.R.D. 82, 85 (E.D. Pa. 1992). *See also Merck Eprova AG v. Gnosis S.P.A.,* 2010 WL 3835149, at *2 (S.D.N.Y. Sept. 24, 2010) (finding no privilege applied where third party consultants were "providing expert information that would be conveyed by [defendants' regulatory counsel] to the FDA"); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2009 WL 4641707, at *3 (E.D. Pa. Dec. 7, 2009) ("[D]ocuments prepared by a corporation as part of efforts to ensure compliance with federal regulatory agencies . . . not because of possible litigation, are not protected by work-product doctrine."). Based on SoftwareCPR's disclosures to Plaintiff, it is apparent that BD retained it as an expert consultant to provide technical information relating to BD's regulatory compliance concerning Alaris software—an expressly business purpose. SoftwareCPR has confirmed that it exclusively interacted with non-attorneys, "Bhupesh Mahendru (Sr. Dir. QRA Management), Keith McLain (VP of Quality for Medication Management Solutions), Sameer Pathak (Sr. Manager, Software Engineering), Madonna Omens (Quality Engineer), and Vince Crisologo [Software Development Team Lead], and Seema Garg." *See* Exhibit C.

In sum, BD has improperly blocked the production of relevant documents in the possession of a non-party by instructing SoftwareCPR, implicitly or explicitly, not to comply with the Subpoena, has failed to timely assert any privilege claims via a motion to quash or a protective order, and failed to even attempt to establish the existence of a valid privilege. Accordingly, it has waived any such claim. BD's behavior demonstrates a "pattern of delay and obfuscation" at odds with efficient dispensation of both the Court's and the Parties' resources. Teri, 2008 WL 11435689 at *7. See also Price, 847 F. Supp. 2d at 795 (finding that the "harm caused by failure to obey Rule 45" by a party interfering with a non-party's response to a subpoena was "not limited to the harm inflicted upon a non-party, or even an adversary," but also the court due to the "additional action" required to see through the enforcement of the subpoena). As such, Plaintiff respectfully requests that the Court issue a protective order directing BD to cease and desist its improper interference with the Subpoena and order the immediate production of all documents responsive to the Subpoena, subject to ¶ 18 of the Discovery Confidentiality Order (ECF No. 121).

Respectfully submitted,

CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.

*s/ James E. Cecchi*
James E. Cecchi

cc:    All Counsel of Record (via ECF)

Attachments

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION