James P. Smith III (admitted *pro hac vice*)
Matthew L. DiRisio (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
jpsmith@winston.com
mdirisio@winston.com

Matthew A. Sklar
Omar A. Bareentto
**MCCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 622-4444
msklar@mccarter.com
obareentto@mccarter.com

*Counsel for Defendants Becton, Dickinson and
Company and Thomas E. Polen*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>  v.<br><br>BECTON, DICKINSON AND COMPANY and THOMAS E. POLEN,<br><br>    Defendants. | Case No. 2:20-cv-02155-SRC-CLW<br><br>Hon. Stanley R. Chesler, District Court Judge<br><br>Hon. Cathy L. Waldor, Magistrate Judge<br><br>Motion Date: *See* ECF No. 140 |

**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

I.    No Class of Options Traders Can Be Certified ................................................. 3

    A.    All Options Trader Claims Are Time-Barred ......................................... 3

    B.    Plaintiff's Expert Has Failed to Prove That the Markets for BD  Call Options and Put Options Were Efficient ............................................................. 6

II.    PLAINTIFF CANNOT REPRESENT A CLASS OF OPTIONS TRADERS ................. 10

    A.    Plaintiff Has Conceded That It Lacks Standing to Assert Claims on Behalf of Options Traders .......................................................................... 10

    B.    Plaintiff's Lack of Standing and Conduct with Respect to Options Trader Claims Render It an Inadequate and Atypical Representative ........................... 12

III.    PLAINTIFF'S DEPOSITION TESTIMONY DEMONSTRATES THAT it IS SUBJECT TO UNIQUE DEFENSES AND THEREFORE AN ATYPICAL CLASS REPRESENTATIVE ............................................................................................. 15

IV.    Plaintiff Has Failed To ESTABLISH THAT DAMAGES ARE SUSCEPTIBLE TO CLASS-WIDE MEASUREMENT .............................................................. 17

CONCLUSION ................................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974)........................................................................................................4

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................................12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)........................................................................................................7

*Basic v. Levinson*,
   485 U.S. 224 (1988)........................................................................................................7

*Beck v. Maximus*,
   457 F.3d 291 (3d Cir. 2006).....................................................................................12, 15

*Berkery v. Verizon Commc'ns Inc.*,
   658 F. App'x 172 (3d Cir. 2016) ....................................................................................4

*In re BP p.l.c. Sec. Litig.*,
   No. 10-MD-2185, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013).............................17

*In re Celgene Corp. Sec. Litig.*,
   No. CV 18-4772, 2020 WL 8870665 (D.N.J. Nov. 29, 2020)..................................18

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)..........................................................................................12

*In re Cent. Eur. Distrib. Corp. Sec. Litig.*,
   No. CIV.A. 11-6247 JBS-KMW, 2012 WL 5465799 (D.N.J. Nov. 8, 2012) ........................11

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018).................................................................................................3, 4

*Cohen v. E.F. Hutton & Co.*,
   No. 87 C 5678, 1988 WL 89437 (N.D. Ill. Aug. 22, 1988)....................................16

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).................................................................................................17, 19

*In re Conduent Inc. Sec. Litig.*,
   No. CV198237SDWAME, 2022 WL 17406565 (D.N.J. Feb. 28, 2022) ................................18

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012)......................................................................................................14

*In re DVI, Inc. Sec. Litig.*,
    639 F.3d 623 (3d Cir. 2011)........................................................................................................7

*In re Enzymotec Ltd. Sec. Litig.*,
    No. CIV.A. 14-5556, 2015 WL 918535 (D.N.J. Mar. 3, 2015)...............................................15

*Feuerstack v. Weiner*,
    No. 2:12-CV-04253 SRC JAD, 2013 WL 3949234 (D.N.J. July 30, 2013) ............................5

*Goldman Sachs Grp., Inc v. Ark. Tchr. Ret. Sys.*,
    141 S. Ct. 1951 (2021)..........................................................................................................7, 15

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008), *as amended* (Jan. 16, 2009)........................................................7

*Kauffman v. Dreyfus Fund, Inc.*,
    434 F.2d 727 (3d Cir. 1970)......................................................................................................11

*In re Laidlaw Sec. Litig.*,
    No. 91-CV-1829, 1992 WL 68341 (E.D. Pa. Mar. 31, 1992)...................................................14

*Landry v. Price Waterhouse Chartered Accts.*,
    123 F.R.D. 474 (S.D.N.Y. 1989) ..............................................................................................15

*Lundy v. Adamar of N.J., Inc.*,
    34 F.3d 1173 (3d Cir. 1994)........................................................................................................6

*In re Merck & Co. Sec., Deriv., & ERISA Litig.*,
    No. 05-1151, 2013 WL 396117 (D.N.J. Jan. 30, 2013).............................................................14

*Nelson v. Cnty. of Allegheny*,
    60 F.3d 1010 (3d Cir. 1995).....................................................................................................5, 6

*In re Novo Nordisk Sec. Litig.*,
    No. 3:17-cv-00209, 2020 WL 502176 (D.N.J. Jan. 31, 2020)..................................................14

*Pope v. Navient Corp.*,
    No. CV 17-8373, 2021 WL 926611 (D.N.J. Mar. 11, 2021).....................................................14

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) ..................................................................................................17

*Reilly v. Gould, Inc.*,
    965 F. Supp. 588 (M.D. Pa. 1997) ............................................................................................13

*In re Safeguard Scis.*,
   216 F.R.D. 577 (E.D. Pa. 2003)..................................................................................16

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009)......................................................................................12

*Smith v. Dominion Bridge Corp.*,
   No. CIV. A. 96-7580, 1998 WL 98998 (E.D. Pa. Mar. 6, 1998)..............................14

*Smith v. Suprema Spec.*,
   206 F. Supp. 2d 627 (D.N.J. 2002) ...........................................................................12

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa 2009)..................................................................................11

*Williams v. Tech Mahindra (Am.), Inc.*,
   No. 3:20-CV-04684, 2021 WL 302929 (D.N.J. Jan. 29, 2021)...................................4

*Winer Fam. Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007).......................................................................................11

*WM High Yield Fund v. O'Hanlon*,
   No. CIV.A. 04-3423, 2013 WL 3230667 (E.D. Pa. June 27, 2013).........................19

**Statutes**

28 USC § 1658 (b)(1) ......................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 15............................................................................................................5

Fed. R. Civ. P. 23................................................................................................12, 15, 17

Defendants Becton, Dickinson and Company ("BD" or the "Company") and Thomas E. Polen (together, "Defendants") respectfully submit this memorandum of law in opposition to the motion of plaintiff Industriens Pensionsforsikring A/S ("Industriens" or "Plaintiff") for class certification (ECF No. 130).

## INTRODUCTION

This case was brought nearly three years ago. Despite three amended complaints—two of which have been filed since the prospect of adding options traders to the putative class was first raised with the Court during the lead plaintiff/counsel selection process two years ago (ECF Nos. 60-2, 91)—Plaintiff never sought to alter the class definition or take other steps to include options traders' claims:

> Plaintiff brings this action on its own behalf and … on behalf of a class consisting of all persons and entities who purchased the common stock of BD from November 5, 2019 through and including February 5, 2020, and were damaged thereby.[1]

*See* ECF No. 60-2, at ¶323; ECF No. 91, at ¶362 (same).

Only on the verge of moving for class certification did Plaintiff first urge the significant expansion of the purported class it presses on this motion, without offering any justification for its delay (then or now). On December 22, 2022, with class certification fast approaching, Plaintiff filed a motion seeking leave to amend the complaint a fourth time to expand the scope of the

---

[1] November 5, 2019-February 5, 2020, is referred to herein as the "Putative Class Period." Plaintiff alleges that BD's February 6, 2020 Q1 earnings announcement and conference call (a) disclosing that FDA "disagreed with [BD's] conclusion about the need for a new 510(k) clearance for [Alaris] software upgrades" and that "the FDA ha[d] requested that [BD] combine all Alaris software enhancements, recall remediation updates and changes made to the Alaris system over time into a single comprehensive 510(k) filing," and (b) reducing revenue and earnings guidance "specifically due to the Alaris situation," constituted the "corrective disclosure" in this case. *See* Third Amended Complaint ("TAC"), ECF No. 91, at ¶239; *see also* Ex. A to the accompanying declaration of James P. Smith III, dated May 3, 2023 ("Smith Decl."), at 5). BD's stock price declined approximately 12% that day.

purported class to include a whole new group of BD security holders. Defendants opposed on the grounds, *inter alia*, of futility. *See* ECF No. 127 (Defs.' Opp. to Pl.'s Mot. for Lv. to Amend). That motion has been fully briefed since January 24, 2023, and the Court has recently scheduled oral argument thereon. *See* ECF Nos. 123, 127, 132, 151. As shown below, however, regardless of whether leave is granted, no class that includes options traders can be certified here for a variety of reasons, including that all such claims are time-barred (as a direct result of Plaintiff's conduct) and that Plaintiff's economic expert has failed to prove that any BD options traded in efficient markets.

Moreover, Plaintiff's conduct, in first eschewing and then embracing options traders as part of the purported class, renders it singularly inadequate to serve as a representative of ***any*** class (let alone a class including options traders, of which it admittedly is not one). Additionally, apart from the issue of options, Plaintiff in its deposition raised serious questions about whether, in fact, its trades in BD common stock were executed in reliance on the market price of BD stock given that it relied entirely on the discretionary trading activities of its external investment manager. The focus of the case will thus shift to Defendants' ability to rebut the presumption of reliance as to Plaintiff and Plaintiff's concomitant vulnerability to this unique defense, threatening to hijack the case and rendering Plaintiff an inadequate and atypical class representative for this wholly independent reason. Finally, Plaintiff has not shown that common questions of proof will predominate over individualized issues because it cannot establish that damages are susceptible to class-wide measurement in a manner consistent with its theory of liability. Accordingly, Plaintiff's motion for class certification should be denied.

## ARGUMENT

### I.     NO CLASS OF OPTIONS TRADERS CAN BE CERTIFIED

#### A.     All Options Trader Claims Are Time-Barred

Any claims on behalf of BD options traders are time-barred.  During the lead plaintiff/lead counsel selection process in early 2020, Plaintiff opposed a motion by a different potential plaintiff and its counsel seeking to represent options traders in this action, asserting that Plaintiff could take steps to add options traders as named parties to the action to preserve such claims if it chose to do so.  *See* ECF No. 18, at 7 (representing that Plaintiff might rely on other named plaintiffs if "additional representation becomes necessary").  Neither Plaintiff's August 10, 2020 Consolidated Amended Complaint ("CAC") (ECF No. 31), nor the January 14, 2021 Second Amended Complaint (ECF No. 60-2) (which Defendants successfully moved to dismiss), nor the October 29, 2021 TAC (ECF No. 91) (which Defendants again moved to dismiss, succeeding in part) added an options trader plaintiff.

As the Court noted in denying a motion by the would-be options trader plaintiff to reconsider Plaintiff's appointment as lead plaintiff under the PSLRA, the statute of limitations for options trader claims (which had previously been tolled by the filing of the initial complaint) began to run again on August 10, 2020, when Plaintiff filed the CAC omitting options traders from the putative class.  *See* ECF No. 92, at 18:16-22; *see also China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018) (a pending putative class action does not toll the statute of limitations for future claims brought on behalf of a class relating to the same allegations).  That is so because, while the filing of a class action suit tolls applicable limitations periods for putative class members under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), such tolling does not extend to plaintiffs who were not part of, or "cease[d] to be part[,] of the class." *Williams v. Tech Mahindra (Am.), Inc.*, No. 3:20-CV-04684, 2021 WL 302929, at *5 (D.N.J. Jan. 29, 2021) (citing *Berkery v.*

*Verizon Commc'ns Inc.*, 658 F. App'x 172, 174-75 (3d Cir. 2016)).  Accordingly, any such claims expired (at the latest) on August 10, 2022—two years after the filing of the CAC.[2]  Thus, they cannot be included in the class.  This, moreover, was entirely Plaintiff's doing.

As noted above, Plaintiff was forewarned that the optionholders' claims were subject to a then-running two-year statute of limitations over three years ago, during the lead plaintiff appointment process in this very action.  On October 2, 2020, Michael Kim, a purported BD call optionholder, moved for reconsideration of the Court's order appointing Industriens as lead plaintiff and sought his own appointment as co-lead plaintiff—specifically to represent BD options traders.  *See* ECF No. 32.  Kim argued, among other things, that (1) the filing of a class action by a non-option trader lead plaintiff would not toll the statute of limitations for claims belonging to options traders, and (2) Industriens held no BD options itself (only stock), such that, as sole lead plaintiff, Industriens would "jeopardize[] the viability of valuable claims."  ECF No. 32, at 4 (citing *China Agritech*, 138 S. Ct. at 1804).  It has since done just that.

In denying Mr. Kim's motion, this Court recognized that any tolling of the limitation period for options traders' claims based on the filing of the initial complaint ended upon the filing of an amended complaint solely by and on behalf of common stockholders:

> the fact that the options traders were included in the initial complaint gives them the option of pursuing claims which might otherwise be barred because the statute of limitations indeed was tolled ***until at least that amended complaint was filed which excluded the options class***.

ECF No. 92, at 18: 17-22 (emphasis added).  But Plaintiff argued that "concern about the future expiration of the statute of limitations [was] unwarranted" because options traders "retain[ed] the

---

[2] The statute of limitations on any options trader claims is two years from discovery of the facts constituting the violation.  *See* 28 USC § 1658 (b)(1).

ability to [assert their rights] through individual action." ECF No. 38, at 10 & n.4. (As it turned out, none chose to do so.) More importantly, Plaintiff assured this Court that, to the extent additional representation for options traders became necessary, Plaintiff could add additional named plaintiffs who had purchased options. *See* ECF No. 18, at 7. With that assurance, the Court appointed Industriens lead counsel. Plaintiff, for its part, let both the deadline to add new plaintiffs[3] and the statute of limitations on options trader claims come and go and took no action.

Nor would any amendment to add an option trader plaintiff, even had one been made before the Court-ordered December 2022 deadline, have "related back" to the filing of the original complaint for purposes of calculating the relevant limitations period. In the Third Circuit, an amendment adding a plaintiff does not relate back to the original complaint unless, among other things, "the claim or defense asserted in the amended pleading … arise[s] out of the … transaction … set forth or attempted to be set forth in the original pleading" and the new party "knew or should have known that [it would have been named in] the action … but for a mistake concerning the proper party's identity." *See Feuerstack v. Weiner*, No. 2:12-CV-04253 SRC JAD, 2013 WL 3949234, at *2, 4 (D.N.J. July 30, 2013); Fed. R. Civ. P. 15(c)(1)(B); Fed. R. Civ. P. 15(c)(1)(C)(ii); *see also Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1015 (3d Cir. 1995).

Neither is the case here. As to the former, as demonstrated below and in the accompanying report of Defendants' economic expert, Stewart Mayhew, Ph.D. ("Mayhew Report"),[4] an options trade is a materially ***different transaction*** from the purchase or sale of common stock. With respect to the latter, where, as here, the party seeking to add a new party knew of the latter's existence at the time of filing the complaint but declined to add them as a matter of strategy, there

---

[3] Pursuant to the Pretrial Scheduling Order entered on October 4, 2022 (ECF No. 118 ¶ 2), the deadline to add parties to this action was December 1, 2022.

[4] Smith Decl. Ex. B.

is no mistake (and no relation back).  *See Nelson*, 60 F.3d at 1015 ("Although the relation-back rule ameliorates the effect of statutes of limitations … it does not save the claims of complainants who have sat on their rights."); *see also Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1183 (3d Cir. 1994) (finding no mistake because there was "no reason for another party to believe that the plaintiff did anything other than make a deliberative choice...").

Here, as described above, Plaintiff has known of the existence of options trader claims since the beginning of the case and intentionally chose to exclude them on the ground that doing so was in "the best interest of the class."  *See* ECF No. 38, at 5 (Plaintiff representing that it would "continue to evaluate claims and pursue options claims *if* doing so is in the whole class's best interest") (emphasis in original).  Nor did any other options traders (*e.g.*, Mr. Kim) either file their own actions or seek to intervene before the limitations period—which they were on notice was running—expired.  The claims are time-barred and cannot be part of any class.[5]

**B.    Plaintiff's Expert Has Failed to Prove That the Markets for BD Call Options and Put Options Were Efficient**

Even if all options trader claims were not already time-barred, Plaintiff's economic expert has failed to carry Plaintiff's burden to prove the efficiency of the markets for BD call options and put options,[6] precluding certification of any such claims.

Federal Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions in order for a class to be certified.  Reliance, which is generally a highly individualized inquiry, is an element of a federal securities fraud claim.  Securities fraud class

---

[5] If a class of options traders was ever actually certified in this case (and, as demonstrated herein, it should not be), Defendants would immediately make, and this Court would need to decide, a motion to dismiss those claims on timeliness grounds on a class-wide basis (staying discovery in the case in the meantime).

[6] *See* Expert Report of Joseph R. Mason, Ph.D. ("Mason Report"), ECF No. 130-3; Smith Decl. Ex. C (Transcript Excerpts of Dr. Mason's April 4, 2023 Deposition).

actions are thus able to satisfy Rule 23(b)'s predominance requirement only by virtue of the so-called *Basic* presumption of reliance. *See Basic v. Levinson*, 485 U.S. 224 (1988). The "fundamental premise" of this theory is "that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction." *Goldman Sachs Grp., Inc v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1958 (2021) (internal quotations omitted).

Conversely, if the *Basic* presumption is unavailable and the element of reliance must be individually proven, "a proposed class cannot meet the Rule 23(b) predominance requirement." *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 631 (3d Cir. 2011), *abrogated on other grounds by Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).

The test for applying the *Basic* presumption is readily (though not always) met when a company's common stock trades on a major exchange like the NYSE or NASDAQ. But, as the Third Circuit has held, while "the Supreme Court has observed that 'predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws…,'" "it does not follow that a court should relax its certification analysis, or presume a requirement for certification is met, merely because a plaintiff's claims fall within one of those substantive categories." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321-22 (3d Cir. 2008), *as amended* (Jan. 16, 2009).

Among other things, a plaintiff attempting to invoke the *Basic* presumption must prove that the security at issue traded in an efficient market. *Ark. Tchr. Ret. Sys.*, 141 S. Ct. at 1958. Here, Plaintiff has failed to carry its burden to prove "market efficiency" with respect to options trades (which took place in a range of securities with various features on an unknown number of options exchanges) and thus cannot avail itself of the *Basic* presumption—or, concomitantly, establish

7

predominance—with respect to that segment of the proposed class.

As shown in the Mayhew Report, despite Dr. Mason's assertion to the contrary, as an economic matter, efficiency in the markets for Relevant BD Options[7] does not follow automatically from efficiency in the market for BD stock. At the class certification stage, the relevant question is whether the traded prices of Relevant BD Options fully reflected all publicly available information during the Putative Class Period.

As the Mayhew Report explains, the traded prices of call and put options are impacted by the arrival of new information in a more complex way than stock prices. Specifically, option prices are affected by certain types of new information that do not affect stock prices, including, in particular, the market's expectations of the future volatility of the stock price. Such information is not absorbed into option prices through changes in stock price because it is not subsumed by the stock price in the first place. It is instead unique to the option markets, whose participants trade on their views of future volatility *in those markets*. It is therefore entirely possible for the market for a given company's stock to be efficient while the option markets are inefficient. *See* Mayhew Report at ¶17.

Importantly, alleged misrepresentations can distort market participants' views of future volatility and artificially inflate (or deflate) option prices in ways wholly unrelated to the inflation (or deflation) in the stock price. Thus, the extent to which investors can rely on the integrity of the market price in option markets to make investment decisions depends on whether the traded prices of options fully and accurately reflect new information about *future volatility*, not just information about the underlying stock price. *Id.* ¶18. Dr. Mason addresses none of this.

---

[7] "Relevant BD Options" are the options series that would otherwise potentially be eligible to be part of the putative class in this matter, *i.e.*, those that expired on or after the corrective disclosure date (February 6, 2020) and had trading volume greater than zero during the Putative Class Period.

Nor does Dr. Mason provide any support (*e.g.*, peer-reviewed academic articles, textbooks or industry practitioner articles) for his claim that if the market for a given stock is efficient, then so are the markets for related call and put options.  And there is none.  Indeed, whether an option market is efficient is an empirical question and different options with different strike prices and maturities are likely to have very different economic characteristics, such that indicia of market efficiency may vary considerably even across series of options of the same issuer.  Thus, efficiency of option markets should be established empirically for each of the options at issue.  *Id.* ¶20.

The concept of market efficiency is based on the notion that security prices react quickly to new, value-relevant information because sophisticated investors trade based on their assessment of how that information affects the value of the security.  Information is then "impounded" into security prices through these trades.  However, when trading costs are high (as reflected in high bid-ask spreads or the lack of trading in the security), there are limited (if any) profits to be made and sophisticated investors are not incentivized to trade.  When that happens in option markets, information derived from the trades themselves about stock price and other factors such as future volatility may not be incorporated.

As Dr. Mayhew explains in his report, Dr. Mason fails to consider any of these factors for any of the Relevant BD Option series.  *Id.* ¶22.  Had he done so, he would have found that the individual BD option series exhibited extremely low trading volume and high bid-ask spreads during the Putative Class Period.[8]  Given the low trading volume and high bid-ask spreads, there simply can be no presumption that all publicly available information was quickly and fully incorporated into the price of the Relevant BD Options during the Putative Class Period.

---

[8] The analysis Dr. Mason did undertake was also substantively flawed.  Among other things, Dr. Mason repeatedly testified, incorrectly, that the concept of a "bid-ask" spread is not associated with option trading.  Smith Decl. Ex. C at 57:20-59:3.

Dr. Mason's claim that "[o]ptions demonstrating qualities of put-call parity are thought to trade in an efficient market" is incorrect. *Id.* ¶26. Put-call parity is an economic relationship that is expected to hold in the absence of arbitrage (*i.e.*, opportunities to make economic profits without taking on any risk). *See id.* But, while the absence of arbitrage opportunities in a market is a ***necessary*** condition for market efficiency, it does not suffice to ***establish*** efficiency. In other words, finding that put-call parity is rarely violated merely rules out one egregious type of inefficiency; it in no way implies that the market is efficient. *Id.* ¶27. Indeed, there can be extreme inefficiencies in the market even if put-call parity is always satisfied. Thus, as an economic matter, demonstrating the lack of put-call parity deviations for Relevant BD Options does not demonstrate that the markets for Relevant BD Options are efficient. *Id.*[9]

Accordingly, because Plaintiff has failed to prove market efficiency for the Relevant BD Options, it cannot avail itself of the *Basic* presumption, and thus cannot satisfy the predominance requirement with respect to those claims, foreclosing certification.

## II.    PLAINTIFF CANNOT REPRESENT A CLASS OF OPTIONS TRADERS

### A.    Plaintiff Has Conceded That It Lacks Standing to Assert Claims on Behalf of Options Traders

In addition to the above broadly applicable reasons why a class of options traders cannot be certified in this case, Plaintiff has already admitted that it lacks standing to represent such a class because it did not trade in and does not hold Relevant BD Options. *See* ECF No. 38, at 5-9 (explaining Plaintiff's rationale for not asserting option trader claims, citing precedent demonstrating its lack of standing); ECF No. 10-2, Sched. A (Plaintiff holds no options). It goes

---

[9] There are additional methodological reasons, set forth in detail in the Mayhew Report, why Dr. Mason's analysis of put-call parity deviations fails to support a finding of efficiency in each of the markets for Relevant BD Options, including his decision to omit from his analysis options that violate the lower arbitrage bound. *See* Mayhew Report at ¶¶31-34.

without saying that a plaintiff must have traded in the security as to which it seeks to assert a federal securities claim. *See Winer Fam. Tr. v. Queen*, 503 F.3d 319, 325-26 (3d Cir. 2007). By extension, a plaintiff may only represent a class whose claims are based on trades in that security. *See Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970) ("a predicate to [a plaintiff's] right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class"). Those who suffered a similar, but different, purported injury may not be included. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 151-52 (E.D. Pa 2009).

Here, Industriens has acknowledged that the "options class claims [are] perhaps in a bit of contrast" to those of common stockholders. ECF No. 92, at 9:15-19 (Nov. 4, 2020, hearing on Kim Motion for Reconsideration of Lead Plaintiff). (Dr. Mayhew's report, as discussed above, demonstrates that that was an understatement.) Indeed, nearly two years ago, during the lead plaintiff/lead counsel appointment process, Plaintiff acknowledged that the fact that it was not an options trader was a deficiency that would potentially have to be "remedied" by adding additional named plaintiffs who *had* purchased options if options traders were to be included in any class. ECF No. 18, at 7; *see In re Cent. Eur. Distrib. Corp. Sec. Litig.*, No. CIV.A. 11-6247 JBS-KMW, 2012 WL 5465799, at *10 (D.N.J. Nov. 8, 2012) ("[T]here must be a named plaintiff or another class representative to represent the claims on which the lead plaintiff lacks standing … the court must ensure that all claims receive sufficient attention from representatives with interest in prosecuting them"). Plaintiff never did so and does not seek to do so now.[10] Thus, there is no

---

[10] Nor could it. As noted above, the Court-ordered deadline to do so came and went on December 1, 2022 (ECF No. 118, at ¶ 2). The proposed amendment that is the subject of Plaintiff's pending motion for leave, moreover, merely seeks to revise the putative class definition to encompass options traders. But such an amendment, even if allowed, would not confer on Plaintiff standing

proposed class representative with standing to represent options traders, who must be excluded from any class for this additional reason.

### B. Plaintiff's Lack of Standing and Conduct with Respect to Options Trader Claims Render It an Inadequate and Atypical Representative

A lead plaintiff's ability to protect the interests of the class is a "prerequisite" to class certification. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 601-02 (3d Cir. 2009). As such, certification is only appropriate where the named plaintiff is "adequate" to represent the class and has claims that are "typical" of all class members. Fed. R. Civ. P. 23(a)(3) and (4). The adequacy and typicality inquiries "tend to merge" and "because of the similarity of these two inquiries, certain questions [] are relevant under both." *Beck v. Maximus*, 457 F.3d 291, 296 (3d Cir. 2006) (quoting in part *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997)). In evaluating adequacy under Rule 23(a)(4), courts in the Third Circuit "consider whether the proposed lead plaintiff 'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [lead plaintiff's] claims and those asserted on behalf of the class.'" *Smith v. Suprema Spec.*, 206 F. Supp. 2d 627, 633 (D.N.J. 2002) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001)).

Here, Plaintiff's inability to represent, and conscious failure to timely add, options traders render it inadequate to represent any class under these standards. As demonstrated above, Plaintiff has *no* ability to represent options traders because of its lack of standing. And its (and its counsel's) failure to timely add an options trader plaintiff is the opposite of vigorous representation. Plaintiff was put on notice by the Court in the early stages of the case that options

---

to assert claims on behalf of options traders or the ability to represent them under Fed. R. Civ. P. 23.

traders' claims could be subject to statute of limitations defenses if not timely included.  While giving lip-service to its ability to "remedy such issues" by adding options trader named plaintiffs (ECF No. 18, at 7), Plaintiff, out of the other side of its mouth, "explicitly argued in its lead plaintiff briefing that *option traders are not entitled to be included in the ultimate class* and could properly be excluded." *See* ECF No. 38, at 12 (emphasis added).

It then proceeded to put its money where (that latter side of) its mouth was, consciously "jeopardize[ing] the viability of [these] valuable claims" (ECF No. 32, at 4) at multiple breakpoints when it could have timely added an options-trader plaintiff.  Indeed, Plaintiff only changed its tune on the eve of class certification, when it undoubtedly awakened (too late) to the fact that its prior conduct in this regard had rendered it wholly inadequate to represent any class.  Courts in the Third Circuit do not hesitate to deny certification of named plaintiffs as class representatives "where the named plaintiffs have different claims and/or circumstances than other [class] members, thereby creating the possibility of a less than vigorous advancement of the case for *all* plaintiffs involved." *Reilly v. Gould, Inc.*, 965 F. Supp. 588, 600 (M.D. Pa. 1997) (emphasis added).

That is precisely the case here.  Even now, after seeking to add options traders to the putative class, Plaintiff has shown little interest in vigorously representing their interests.  For instance, its class certification submission barely mentions the purported efficiency of the markets for BD options.  *See* ECF No. 130-1, at 28-29 (*cf id.* at 17-26).  Indeed, while Plaintiff's expert, Dr. Mason, dedicates over fifteen pages of his report to market efficiency for BD common stock, just four pages attempt to address the efficiency of the markets for BD options (an inherently complex analysis) and, as demonstrated in the Mayhew Report, fail utterly to do so.  *See* Mason Report, at ¶¶7-29, *cf. id.* at ¶¶25-28.  The unique nature of options, coupled with the unknown

13

number of exchanges on which Relevant BD Options traded,[11] warrant a far more rigorous analysis, but were clearly given short shrift.

None of the cases Plaintiff cites to support its purported adequacy involved circumstances even vaguely like those at issue here, where a named plaintiff has knowingly and consciously abandoned the claims of a whole segment of putative class members it seeks to represent.[12]  In fact, *Novo Nordisk* highlighted the fact that lead plaintiff had purchased the same securities as class members, such that their interests were aligned.[13]  That is a far cry from Industriens, whose conduct before and since its appointment as lead counsel (notwithstanding this Court's admonitions) renders it wholly inadequate to represent any class under Fed. R. Civ. P. 23(a)(3).[14]

---

[11] Where securities are traded on multiple exchanges, but the lead plaintiff only traded on one, courts consistently omit stockholders who traded on the other exchanges from the class.  *See, e.g.*, *Smith v. Dominion Bridge Corp.*, No. CIV. A. 96-7580, 1998 WL 98998 at *4-5 (E.D. Pa. Mar. 6, 1998) ("I find that [Lead Plaintiff] is not an adequate class representative for purchasers of stock on the Vancouver Stock Exchange … he does not have an interest in establishing whether the misrepresentation affected prices on the Vancouver Stock Exchange, in establishing [its efficiency], in establishing [reliance on the alleged misrepresentations], or in defending against any individual defenses"); *accord In re Laidlaw Sec. Litig.*, No. 91-CV-1829, 1992 WL 68341 at *6 (E.D. Pa. Mar. 31, 1992) ("[lead plaintiff] has no interest in demonstrating how the alleged fraud may have affected prices on the Montreal or Toronto exchanges.  As an American investor, [lead plaintiff] would naturally focus on the price changes on the [NYSE]; price fluctuations on the Toronto and Montreal exchanges would be of little to no importance to him").  Here, of course, Industriens didn't trade on ***any*** options exchange—because it never traded in BD options at all.

[12] *See, e.g.*, *Pope v. Navient Corp.*, No. CV 17-8373 (RBK/AMD), 2021 WL 926611 (D.N.J. Mar. 11, 2021) (named plaintiff selected counsel who overcame a motion to dismiss) (Pl.'s Mem. at 16); *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209 (BRM/LHG), 2020 WL 502176 (D.N.J. Jan. 31, 2020) (named plaintiff actively participated in the case to date) (Pl.'s Mem. 15).

[13] The *Merck* case cited by Plaintiff is similarly inapposite.  The Court there emphasized that "alignment of interests and incentives between the class representative and the absent class members is the 'linchpin' of the adequacy requirement."  *In re Merck & Co. Sec., Deriv., & ERISA Litig.*, No. 05-1151, 2013 WL 396117 at *9 (D.N.J. Jan. 30, 2013) (citing *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d at 170, 183 (3d Cir. 2012)).  There is no alignment of interests between Plaintiff and absentee options traders whose claims have been sacrificed.

[14] Plaintiff has also fails to establish its adequacy and typicality for the additional reasons set forth in Sect. III, *infra*.

### III.    PLAINTIFF'S DEPOSITION TESTIMONY DEMONSTRATES THAT IT IS SUBJECT TO UNIQUE DEFENSES AND THEREFORE AN ATYPICAL CLASS REPRESENTATIVE

Plaintiff is also not suitable to lead the class because it is subject to unique defenses that threaten to become a focus of the litigation.  The presence of defenses unique or peculiar to the lead plaintiff bears on the adequacy (and typicality) of a class representative.  *See, e.g.*, *Beck*, 457 F.3d at 296-97; *In re Enzymotec Ltd. Sec. Litig.*, No. CIV.A. 14-5556, 2015 WL 918535 at *2 (D.N.J. Mar. 3, 2015).  The question at the class certification stage is whether the class representative would be required to devote considerable time to rebutting the unique defenses, to the potential prejudice of absent class members.  *See Landry v. Price Waterhouse Chartered Accts.*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989).

Here, even if the class were limited to common stockholders, such that market efficiency could be established and the *Basic* presumption of reliance was otherwise available, Plaintiff's own deposition testimony reveals that Defendants may be able to rebut the presumption ***as to Industriens*** (and will spend considerable time attempting to do so), meaning that Plaintiff is subject to just such a unique defense.

A defendant can rebut the *Basic* presumption through "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Ark. Tchr. Ret. Sys.*, 141 S. Ct. at 1958.  Here, Plaintiff, through its corporate representative, Jan Ostergaard, testified unequivocally that Industriens did not directly trade in BD securities; rather, its investments were made through external investment managers who had full "discretion" to invest on its behalf.  Smith Dec. Ex. D (Transcript of Industriens' 30(b)(6) Deposition), at 42:22-43:11; 77:9-11; 97:17-21; 103:18-104:4.  These external investment managers operated independently and were only monitored by Plaintiff through monthly and quarterly reports.  *Id.* at 91:8-23, 94:4-7.  Plaintiff further testified that,

15

despite its belief that the alleged corrective disclosure of February 6, 2020, revealed that Defendants had committed securities fraud, it did not communicate this view to its investment managers or express any concerns to them about continuing to purchase BD securities, let alone instruct them to stop. Indeed, Industriens saw no reason to do so. *Id*. at 104:11-105:10.

Nor is there any indication anywhere in the trading documents produced by Plaintiff that its investment managers (a) shared Industriens' view that the February 6 disclosure revealed any fraud, (b) communicated any concerns about continuing to purchase BD securities to Plaintiff following that disclosure, or (c) stopped acquiring BD securities for Industriens' account thereafter. That's because, in fact, Industriens ***continued to purchase BD securities*** through its externally managed sub-funds even ***after*** the alleged corrective disclosure. *See* Smith Decl. Ex. D at 103:12-104:4. *See In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) ("Defendants have shown that Lead Plaintiff [ ] increased his holdings in Safeguard stock even after public disclosure of the alleged fraud. Lead Plaintiff [ ] would have made—and in fact did—purchase stock regardless of the fraudulent omission," demonstrating lack of reliance).[15]

Under these circumstances, Defendants will, of course, be noticing the depositions of each of Industriens' external investment managers in order to establish that their idiosyncratic trading strategies "severed the link" between the alleged misrepresentations and the price at which Plaintiff's class period purchases of BD stock were executed, and this unique defense will become a focal point of the litigation. As such, Industriens cannot satisfy Rule 23's typicality (or adequacy) requirements. *See Cohen v. E.F. Hutton & Co.*, No. 87 C 5678, 1988 WL 89437, at *2 (N.D. Ill.

---

[15] The external managers of Plaintiff's sub-funds actually had entirely different views with respect to the target price of BD common stock during and after the Putative Class Period and Ostergaard testified that he did not know whether or not these external managers in fact relied on the alleged misstatements in this case in making their investment decision in BD stock. *See* Smith Decl. Ex. D at 105:11-24.

Aug. 22, 1988) (holding plaintiff to be atypical where he had relied on an investment manager to purchase stock and was subject to a unique reliance defense).

## IV.    PLAINTIFF HAS FAILED TO ESTABLISH THAT DAMAGES ARE SUSCEPTIBLE TO CLASS-WIDE MEASUREMENT

Finally, in order to satisfy the predominance requirement, Plaintiff must also proffer a viable class-wide damages methodology.  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013).  Here, Plaintiff fails "to meet [its] burden of showing that damages can be measured on a class-wide basis consistent with [its] theories of liability."  *In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013) (denying class certification).  The Supreme Court has held that, to proceed as a class under Rule 23(b)(3), the plaintiff must "establish that damages are susceptible of measurement across the entire class"; otherwise, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."  *Comcast*, 569 U.S. at 34-35.  After *Comcast*, "Rule 23 not only authorizes a hard look at the soundness of statistical models that purport to show predominance—the rule commands it." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 255 (D.C. Cir. 2013).  Plaintiff fails to show that its damages methodology permits measurement on a class-wide basis because, among other deficiencies, it cannot be applied to option traders.

As an initial matter, Plaintiff provides no support for its assertion that Dr. Mason's damages methodology—which Plaintiff describes as using an event study measure "out-of-pocket" damages (Pl.'s Mem. at 30-32)—is the appropriate means of calculating damage to option traders. The two cases Plaintiff cites approve this methodology only with respect to damages to stockholders, not options traders.  *See In re Celgene Corp. Sec. Litig.*, No. CV 18-4772, 2020 WL 8870665, at *8 (D.N.J. Nov. 29, 2020); *In re Conduent Inc. Sec. Litig.*, No. CV198237SDWAME, 2022 WL 17406565, at *1 (D.N.J. Feb. 28, 2022).  And unlike common stock, options contracts

17

are by nature bespoke, with different strike prices, maturities and other economic features.  Dr. Mason purports to account for these differences by applying different "inflation ribbons" for each options contract, each with varying characteristics.[16]

Moreover, even if such an approach could work in theory, it fails in practice here because Dr. Mason's methodology fails to consider, let alone account for, the prices that BD option traders *actually paid or received* for their options.  For example, while Dr. Mason acknowledges that inflation is "the difference between the actual security prices and the security prices that should have prevailed but-for the alleged fraud" (Mason Report, ¶104), his purported methodology is entirely untethered from actual security prices—which Dr. Mason admitted during his deposition. *See* Smith Decl. Ex. C at 138:12-19 (admitting that he did not utilize any of the observed option prices on any given day during the period analyzed).

In other words, Plaintiff's damages methodology is completely divorced from the prices at which BD option traders actually traded.  It is simply not possible to calculate damages incurred by securityholders without knowing what they paid (or received) for the securities.  *See WM High Yield Fund v. O'Hanlon*, No. CIV.A. 04-3423, 2013 WL 3230667, at *17 (E.D. Pa. June 27, 2013) (explaining that to properly "perform [the out-of-pocket] calculation of damages, 'that portion of the price decline or price difference which is unrelated to the alleged wrong' *must be identified* and removed from the price at which the stock sold") (internal citation omitted) (emphasis added).[17]  Since Dr. Mason's proposed methodology cannot extend to option traders, Plaintiff fails

---

[16] Dr. Mason concedes that, while "share price inflation … is identical for all shares of BDX Stock," there would be "different inflation ribbons *for each BDX Options contract*," each with varying characteristics.  Mason Report, at ¶104 (emphasis added).

[17] It is thus not surprising that Dr. Mason conceded in his deposition that he had not evaluated damages at this juncture and could not identify what discovery would allow him to do so. *See* Smith Decl. Ex. C at 97:14-25; 99:10-21.  As applied to option trader damages, the answer to the latter would be "none."

to establish that proof of damages is susceptible to common class-wide measurement. *See Comcast*, 569 U.S. at 34-35.

## CONCLUSION

For all of the foregoing reasons, class certification should be denied, or, at a minimum, any class should exclude BD options traders.

Dated: May 3, 2023

Respectfully submitted,

**MCCARTER & ENGLISH, LLP**

 /s/ *Matthew A. Sklar*
Matthew A. Sklar
Omar A. Bareentto
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
msklar@mccarter.com
obareentto@mccarter.com

**WINSTON & STRAWN LLP**
James P. Smith III (admitted *pro hac vice*)
Matthew L. DiRisio (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jpsmith@winston.com
mdirisio@winston.com

*Counsel for Defendants Becton, Dickinson and Company and Thomas E. Polen*

19

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew Sklar, hereby certify that on May 3, 2023, I caused a true and correct copy of the foregoing Opposition to lead Plaintiff's Motion For Class Certification, along with the accompanying declaration of James P. Smith III, dated May 3, 2023, to be filed electronically with the Clerk of the Court using the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 3, 2023

**MCCARTER & ENGLISH, LLP**

/s/ Matthew A. Sklar
Matthew A. Sklar
Omar A. Bareentto
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
msklar@mccarter.com
obareentto@mccarter.com