UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING, | . |
| | . |
| | . |
| Plaintiff, | . Case No. 20-cv-02155 |
| | . |
| vs. | . Newark, New Jersey |
| | . June  15, 2023 |
| BECTON, DICKINSON AND COMPANY, et al., | . |
| | . |
| | . |
| Defendants. | . |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE


APPEARANCES (the parties appeared via Zoom videoconference):

For the Plaintiff:     KEVIN G. COOPER, ESQ.
                       Carella Byrne Cecchi Olstein Brody &
                       Agnello
                       5 Becker Farm Road
                       Roseland, NJ 07068
                       (973) 994-1700
                       kcooper@carellabyrne.com

                       DONALD A. ECKLUND, ESQ.
                       Carella Byrne Cecchi Olstein Brody &
                       Agnello
                       5 Becker Farm Road
                       Roseland, NJ 07068
                       (973) 422-5579
                       decklund@carellabyrne.com


Audio Operator:

Transcription Service:    KING TRANSCRIPTION SERVICES
                          3 South Corporate Drive, Suite 203
                          Riverdale, NJ  07457
                          (973) 237-6080


Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(APPEARANCES continued)

For the Plaintiff:      JOSHUA EDWARD D'ANCONA, ESQ.
                        Kessler Topaz Meltzer & Check LLP
                        280 King of Prussia Road
                        Radnor, PA 19087
                        (610) 667-7706
                        jdancona@ktmc.com

                        MARGARET ELIN MAZZEO, ESQ.
                        Kessler Topaz Meltzer & Check LLP
                        280 King of Prussia Road
                        Radnor, PA 19087
                        (610) 667-7706
                        mmazzeo@ktmc.com

For the Defendants:     MATTHEW ADAM SKLAR, ESQ.
                        McCarter & English LLP
                        100 Mulberry Street
                        Four Gateway Center
                        Newark, NJ 07102
                        (973) 622-4444
                        msklar@mccarter.com

                        JAMES P. SMITH III, ESQ.
                        Winston & Strawn LLP
                        200 Park Avenue
                        New York, NY 10166-4193
                        (212) 294-4633

                        MATTHEW DIRISIO, ESQ.
                        Winston & Strawn LLP
                        200 Park Avenue
                        New York, NY 10166-4193
                        (212) 294-4686

                        THANIA CHARMANI, ESQ.
                        Winston & Strawn LLP
                        200 Park Avenue
                        New York, NY 10166-4193
                        (212) 294-4659

(Commencement of proceedings)

THE COURT:  Let's have appearances for plaintiff, please.

MR. COOPER:  Good afternoon, Your Honor.  This is Kevin Cooper from Carella Byrne.

Co-counsel from Kessler Topaz will introduce themselves.

MR. D'ANCONA:  Good afternoon, Your Honor.  Joshua D'Ancona for Kessler Topaz Meltzer & Check and the lead plaintiffs.

THE COURT:  Okay.

Defense?

MR. SKLAR:  Good afternoon, Your Honor.  This is Matthew Sklar with McCarter & English for the defendants.

I'm here with my co-counsel from Winston & Strawn, and I will defer to them for introductions.

MR. SMITH:  Good afternoon, Your Honor.  James Smith of Winston & Strawn for the defendants.

MR. DIRISIO:  Good afternoon, Your Honor.  Matthew DiRisio from Winston & Strawn also for the defendants.

THE COURT:  And who else is on?

MR. ECKLUND:  Good afternoon, Your Honor.  Don Ecklund, also from Carella Byrne, on behalf of plaintiffs.

THE COURT:  Oh.  Okay.  I missed you.  Sorry.

MR. ECKLUND:  My apologies, Your Honor.

THE COURT:  And who's Charmani?

MS. CHARMANI:  Good afternoon, Your Honor.  Thania Charmani on behalf of the defendants.

THE COURT:  Okay.  And Margaret Mazzeo?

MS. MAZZEO:  Good afternoon, Your Honor.  Margaret Mazzeo from Kessler Topaz on behalf of the lead plaintiff.

THE COURT:  Okay.

So we're only going to discuss or you're going to make a record for oral argument on the amend.  The other issues, we're going to have to deal with at another time because they're not fully formed, as far as I'm concerned.  I don't know anything about them.  So let's just do that.  We'll have oral argument.

And I said -- but let me start out by dropping a hint.  This is a Judge Chesler case.  And Judge Chesler did issue the decision in *In re* Merck, as we all know.

Having said that, defense, what's the issue, if you will -- wasn't this filed?  Why does there have to be a good cause analysis?  Wasn't this filed within the time permitted by the scheduling order for amendment?

MR. SMITH:  Your Honor, Jim Smith.

The motion was filed within the time for amendment, but it was filed outside the time for additional parties.  And here when the approach is to attempt to expand the

class -- as Your Honor pointed out obviously, the case is in front of Judge Chesler.  There was a fairly extensive record developed in front of Judge Chesler at the lead plaintiff stage in this case with numerous representations made to the judge about how these plaintiffs were going to conduct the case as it relates to options holders.  And there was recognition, I think on the part of the Court and the parties that, to the extent the case was going to be amended to include options holders, that would be adding a named plaintiff who actually had standing to assert those claims, i.e., somebody who traded in options.

And, accordingly, for this to have been a timely motion, the amendment should have been to add an options holder plaintiff before that date expired.  And that date expired on December 1st, 2022, without any attempt to amend the complaint.

So that's one of the many reasons that we think the motion is not timely, in addition to the fact that the complaint's been amended three times already, including after the options holder issue was teed up, including after the motion to -- the initial motion to dismiss was decided, which is when these plaintiffs told Judge Chesler back in the lead plaintiff stage, they would reassess, and they didn't add an options holder plaintiff.  They chose not to do that.

So that may be a more long-winded answer than

Your Honor was looking for, but that's our view as to why this is not a timely motion.

THE COURT:  Okay.

Aren't they just redefining the class, though?

MR. SMITH:  We are redefining the class, Your Honor.  I would say a couple of things there.

First off, I think the parties are in agreement, from my reading of the briefing here, that some of these issues, the Court has now seized on some of these issues, the ones that go to futility on the class certification motion itself, which is in mid-briefing, and an evidentiary record is being developed there.  The plaintiff's reply brief is still due.  But we've had expert reports.  We've had depositions.

And Your Honor mentioned Judge Chesler's decision in the Merck case.  The Merck case, as you know, was -- on class certification, and one of the things that the judge said there in dealing with the options holder claims is that the defendants in that case, in which I was not involved, had not developed an evidentiary record to show that including the options holders would be problematic.

We've done that in spades here on class cert, Your Honor.

So, you know, that's -- that's a set of issues that, in our view, ought to abide, you know, the full

development of the evidentiary on a class certification; in other words, if Your Honor was sufficiently persuaded by our arguments on futility at this stage to deny the lead motion, that would be fine.  But you certainly ought not to grant the leave motion, given the futility issues until the Court has had an opportunity to look at the more fully developed record on class certification.

THE COURT:  So in the event I were to permit the amendment, what would you need do with respect to the motion, the class cert motion or any other discovery?

Have you contemplated that?

MR. SMITH:  Well, I don't think we'd have to do much of anything on the class cert motion, Your Honor.  I think, at least from our perspective, I would need to see what the plaintiffs say in their reply brief.  But I think that, you know, it all depends on the basis on which Your Honor were to grant leave.  I think that, you know, the issues that we have raised from a futility standpoint, which is to say the expiration of the statute of limitations for all options holders -- by the way, that's not disputed.  So I think if Your Honor parses through the record here -- and this goes all the way back to the lead plaintiff, lead counsel stage, and Your Honor can look at Docket Number 92, which is the oral argument before Judge Chesler on that motion, but I think people recognize that when the first

consolidated complaint was filed here and omitted -- and actually omitted the options holders, then to the extent the statute of limitations for options holders had been stayed for a brief of time, it began to run again.  And that ran out in July of 2022.

The only thing plaintiffs are arguing here is that not that the statute of limitations didn't run but that their -- amendment should relate back.  And I can get into the issues as to why that doesn't work.

THE COURT:  In the Merck case, isn't it clear -- and I understand that that was a class cert rather than a 12(b) analysis, but the logic that I recall Judge Chesler had his -- in terms of relation back, if it's the same essential acts or set of facts, then that qualifies as being purposely related back.

MR. SMITH:  Yeah, and I think the point there, Your Honor, again, I think, you know, different procedural stage in Merck, but from a relations back standpoint, yes, it's got to be -- you know, the new claim has to arise out of the same transactions.

And, here, it doesn't.

Remember, Your Honor, the way this started was a different plaintiff filed the complaint that included the options holder.  Okay?  The current plaintiffs came in, and when they were appointed lead, they filed a complaint that

intentionally omitted the options holders. Okay? So that's a very different set of facts.

And for it to relate back -- this is why I say we get a little ahead of ourselves, given the class cert briefing and trying to compare apples and oranges with Merck, because what our expert has said on class cert is that options transactions are very, very different for very salient reasons, reasons from transactions in common stock on the New York stock exchange. And we had extensive testimony on that point, which I think will distinguish it from Judge Chesler's decision in Merck and also directly to whether it relates back -- because it doesn't. Those -- the transactions that are raised by options holder claims were intentionally omitted by these plaintiffs on multiple occasions when they amended their complaint.

THE COURT: All right. Let me hear from plaintiffs.

MR. D'ANCONA: Thank you very much, Your Honor.

So a few different points that we just heard about. I think, perhaps, taking them in order, there was no recognition or finding or holding by Judge Chesler or anything of the like at the lead plaintiff stage that there would need to be a named plaintiff who traded in options for an options claim to be pleaded back in here.

I was the one who argued for lead plaintiff before

Judge Chesler.  I'm very familiar with what occurred there. And the actual back-and-forth there was, it may be that upon analysis of the ultimate ruling in this case on a motion to dismiss that we determine that it is necessary to try to plead in a named plaintiff.  But in the very next sentence, we said to Judge Chesler, that, of course, courts recognize that a plaintiff with stock trades has standing to bring claims and to represent a class of options traders as well. And as Your Honor rightly pointed out at the beginning, that is what happened in the Merck case.  The lead plaintiff there did not trade in options.  Nevertheless the complaint included options, and nevertheless, that lead plaintiff was certified to represent a class that included options traders.

So there's no impediment -- there's no need for a new named plaintiff here.  And the passage of the deadline to add new parties has no bearing on what should happen here.

So I think that's just beside the point.

As for the merits of the amendment and whether a ruling here would affect class certification, you know, it's -- I guess I'll take the other side.

Mr. Smith just said they're happy for you to deny the motion to amend, but if you're going to grant it, you should wait.

Your Honor, we think if you're inclined to grant the motion to amend, it is entirely called for here.  And, in

fact, it would really clean up -- or at least address and probably moot many of the arguments in the class certification opposition that defendants have raised here -- because effectively they're saying a class certification that the lead plaintiff is inadequate because of problems with the way that the options claims were attempted to be folded into the class definition, you know, that renders the lead plaintiff inadequate.

If Your Honor were to find that the amendment should be granted, that would, of course, I think, do away with many of those arguments.  Those arguments would fall away in many respects.  And that would -- that would clean up the issues that Judge Chesler would have to rule upon at class certification.  Judge Chesler still would hear the arguments about market efficiency in the options market, which defendants did raise and which their expert did propound and develop.  And those would still be live.  There would be still be arguments.

But it would clean up some of the other arguments that that the attempt to amend itself somehow renders the lead plaintiff an improper class representative.

So that's one way that this intersects with the class certification arguments, Your Honor.

But we believe that Your Honor is precisely on point with one of the questions that you asked a few minutes

ago, which is, look, isn't this amendment effectively governed by Rule 15 (1) (C) [sic] because the underlying facts and the underlying conduct that's at issue, it's the same.  It's the same core of facts here.  It's the same conduct by the defendant that allegedly gives rise to liability to both the stock traders and the options traders in the exact same way.  They're alleged to have harmed all of those investors, to have affected <u>Merck</u> -- I'm sorry -- it's not <u>Merck</u> -- it's the <u>Merck</u> case we're talking about, but Becton Dickinson stock price in the exact same way, directly injuring all of those investors in the same exact way, albeit that they invested in different instruments.

That is precisely the question that confronted Judge Chesler in the <u>Merck</u> opinion.  And Judge Chesler found that options traders and stock traders in a similar circumstance, were highly similarly situated such that there was no issue with standing.  Defendants attacked it directly at class certification.  But there was no issue with standing of a stock traded to represent a class of all of the above traders.

And that's what we've got here.  So, you know, under the Rule 15 (1)  (C) analysis, which regards relation back, where there is that common core of operative facts.  That really drives whether relation back is appropriate.  And there are many cases in this circuit where courts have found

in precisely analogous situation, even where a class size or the membership in the class would be affected somewhat by the amendment, that amendment was appropriate.  And, you know, I can give you a couple of case cites, if I might, here.

One of them is the Royal Mile [phonetic] case, which is cited in our reply.  That's just one.  But these all really follow the Westinghouse decision of the Third Circuit.  And the cite for that is 869 F.2d 696.  We thought this might be developed by defendants in this argument, and so we -- this is a case cite.  This is not in our reply brief.  But, again, Westinghouse, 869 F.2d 696.

Another more recent from 2021 is Doe v. Bloomberg, which is a District of New Jersey case.  That's 2021 WL 1578358.

This case is just like those where a common core of the facts supports relation back, even when there is some effect on class membership.  And the relation back analysis should go the same way here.

And we really think that that hits both of defendant 's points on futility, Your Honor.  One was standing, which we believe is squarely addressed by Judge Chesler did in Merck.  And the other is the timeliness or whether these claims are somehow time-barred.  We think relation back is clearly appropriate here.

And, finally, Your Honor, if you -- if Your Honor

were to agree on these futility points that defendants have raised here, we think a trailing point but an important one that defendants put I believe in a footnote in their brief is this might cause some delay in the case because they would need to file a motion to dismiss once the amended complaint were allowed to pass through on points that they've raised in their futility argument.

And we believe that the case law in this circuit is clear that you don't get that second bite at the apple, because futility under Rule 15 and motion to dismiss under Rule 12(b)(6) are decided on the exact same standard. And so courts don't allow claimants -- or parties, rather, to oppose the motion to amend on futility grounds and then to raise the same grounds on a motion to dismiss under Rule 12(b)(6), and so we think that that -- that that proposition should be rejected, that that's a possibility here as far as a procedural matter, should the amendment be allowed to proceed and Your Honor pass on the futility arguments.

I hope that I hit all the points there, Your Honor. If there were others that I should hit, please let me know.

THE COURT: No.

Mr. Smith, did you want to add anything or anybody else on your team?

MR. SMITH: Yeah, I would, Your Honor, with Your Honor's indulgence on a couple of points.

First, the motion has to be judged before we even get to relation back. And, by the way, Merck was not a relation back case -- I'll come back to that in a minute -- because plaintiffs are very fond of Merck now. At the lead plaintiff, lead counsel stage, they were very fond of the Bank of America set of cases in the Southern District in front of Judge Chin and Judge Castel. Pointed to them several times.

And, by the way, I wasn't at -- I didn't argue in front of Judge Chesler at the lead plaintiff, lead counsel stage, since that was jockeying among plaintiffs' lawyers.

But the transcript at Docket Number 92, Your Honor, speaks very clearly to what was and wasn't represented to Judge Chesler at the time. And Mr. D'Ancona suggested to Judge Chesler that this case was essentially on all fours with the Bank of America case.

In the Bank of America case, the court determined that the way to remedy the absence of an options holder plaintiff was to add an options holder plaintiff. And the court subsequently, on a motion to dismiss on standing grounds, threw out purported claims on behalf of several series of options holders who were not represented. The plaintiffs added -- unlike these plaintiffs, the plaintiffs in that case actually added an options holder plaintiff to shore up standing, and the court determined that that only

applied to options holders who held the same series of options, and it dismissed on standing grounds the claims of -- purported claims on behalf of the rest of the class.

This is an important distinction because at this stage of the case, as distinct from class certification, the plaintiff needs to have standing to assert the claims. And this plaintiff doesn't have standing to assert options holders claims because they didn't trade in options.

That case -- the motion has to be determined under 15(a)(2), Your Honor, which before we even get to futility, as Your Honor knows, talks about undue delay, prejudice, failure to cure defects at multiple prior opportunities to amend.

And, Your Honor, we would suggest -- I could walk you through the entire procedural history of this options holder issue. And the plaintiffs have had multiple opportunities to cure this defect and chose strategically not to do so. Again, they told Judge Chesler at the lead plaintiff, lead counsel stage, that when the motion to dismiss was decided, the universe would be clarified and they would know whether they were going to try to assert options holders claims or not.

And Mr. D'Ancona told you there wasn't any recognition of discussion about the fact that the way to do that is to find a plaintiff who was, in fact, an options

trader.  If Your Honor reads that transcript, that is not the case.  The entire discussion was the way to fix this is to -- in fact, I can read to Your Honor, before they even got to the motion for reconsideration by the options holder plaintiff, when Judge Chesler decided the initial motion for lead plaintiff -- and this is Docket Number 24, among the things he said was to the extent that the claims -- this is a quote now; it's on page 6 of his opinion -- quote, [As read] To the extent that the claims of class members that have purchased Becton Dickinson options differ from the claims of Industriens, that consideration can be addressed by adding named plaintiffs on which the lead plaintiff can rely for aid in representing the class.

And when you fast-forward to the argument on the motion for reconsideration, there's a lot of discussion around that being the way to fix it.

And what Mr. D'Ancona told Judge Chesler is once this pending motion to dismiss is decided -- and that was against the original consolidated complaint -- then we'll know whether we're going to do this or not.

Now, in between the judge deciding that motion -- or that motion be briefed and the judge deciding it, the plaintiffs actually amended their complaint again, and we consented to it.  But they didn't amend it to add options holders.  They amended to add claims based on new

confidential witnesses, later-developed facts.

So we said fine. And they had leave to do it. They didn't add any options holders. We had to rebrief our initial motion to dismiss because they had done that amendment.

And then what happened? The judge actually decided the motion to dismiss and dismissed the entire case with leave to replead.

So according to the representations that Mr. D'Ancona made to Judge Chesler at the lead plaintiff reconsideration hearing, that's when he was going to now know -- and I am not sure what it is that was mysterious that was somehow going to be clarified by the motion to dismiss about whether options holders should be in or out of the case. But that was the break point at which he was supposed to have suddenly understood the lay of the land.

And what happened 45 days later when the plaintiffs filed yet another amended complaint? And, by the way, it wasn't just some modest amendments. There was enough additional pleading in that complaint that it ultimately, in part, withstood yet another motion to dismiss. But guess what wasn't in there? An options holder plaintiff or any attempt to expand the class to include options holder plaintiffs.

Your Honor, under the basic, you know, does justice

require another amendment here?  Absolutely not.

THE COURT:  Well, what's the prejudice?

MR. SMITH:  Pardon, Your Honor?

THE COURT:  Prejudice.

MR. SMITH:  Well, leaving aside the fact that we've now briefed three motions to dismiss against three different complaints that didn't include the options holder plaintiffs, one of which survived the motion to dismiss, the prejudice is that we're now faced with an expanded class where we should have had notice long ago.  And this goes now -- I'll pivot, Your Honor, if I may, to the substantive futility arguments, including the relations back argument.

Relations back, Mr. D'Ancona referred, I think, inadvertently to -- I think that what he meant to refer to is 15(c)(1)(C).  I think he referred to 15(c)(1)(B).  And that's the one we were discussing early where it doesn't arise out of the same transaction or occurrence.  I've suggested to Your Honor why we don't think that's the case.

But under the Feuerstack case, which we've cited in our brief, this case should actually be governed by 15(c)(1)(C), which says not only does the new claim have to relate back to transactions that were in the original complaint to put someone on fair notice that it's coming, but in the context of a new plaintiff in a class action under (C), there are several additional requirements -- it's got to

be on the same transaction or occurrence --

THE COURT:  -- differently --

MR. SMITH:  Sorry, Your Honor?

THE COURT:  What would you have done differently?

MR. SMITH:  What would I have done differently if you were the plaintiffs?

THE COURT:  No.  What would have done differently --

MR. SMITH:  Oh, you're asking how would we have litigated the case differently, had we known?

THE COURT:  Yeah.

MR. SMITH:  Well, we may well have addressed their lack of standing -- sorry, Your Honor.  I didn't mean to talk over you.

THE COURT:  The defendant did have notice because they were in originally.  Weren't the options people in originally?

MR. SMITH:  Yes, Your Honor.  But I don't think that's the right time to look at notice because they were in originally, and these plaintiffs made a considered intentional decision on multiple occasions to exclude them.

THE COURT:  Okay.  So what --

(Simultaneous conversation)

MR. SMITH:  -- what they said, Your Honor -- sorry.  I mean to talk over Your Honor.

|Hearing
|20-cv-02155, June 15, 2023

THE COURT:  What would you have done differently?  How would you have litigated different if they were --

MR. SMITH:  We long ago would have briefed their standing to assert these claims.  And they would have been dismissed.

THE COURT:  Okay.

MR. SMITH:  And we wouldn't have been doing this, and we wouldn't -- and everything we're doing on class certification, because they would have been knocked out of the box.

THE COURT:  Okay.

MR. SMITH:  If I may just quickly --

(Simultaneous conversation)

MR. SMITH:  -- the thought I was on, Your Honor and then --

THE COURT:  Yeah.  I'm sorry.  Go ahead.

MR. SMITH:  Yes.  No -- what I want to say was under the relation back, under 15(c)(1)(C), there's an additional element that needs to be established, which was the reason that these claims were asserted earlier was a mistake and that we were somehow on notice that the reasons they weren't asserted earlier was because there was mistake made about the right parties to include.

And, again, this record is overwhelming that this was not a mistake but a considered tactical and strategic

decision on these plaintiffs' part.

THE COURT:  I am not sure what difference that makes.  But -- okay.

MR. SMITH:  Only because it's in the rule as a required element to the claim to the relate back.  And if it doesn't, they're out of the box on statute of limitations.

THE COURT:  Okay.

Mr. D'Ancona, did you want to ask?

MR. D'ANCONA:  Thank you, Your Honor, if I may.

First of all, on the delay point, I believe a lot of what Mr. Smith represented about the arguments that lead plaintiff and so forth are beside the point, what we told Judge Chesler -- I have the transcript right here.  I'm sure everyone has access to it; Mr. Smith has referenced it numerous times -- is that the consideration that we were going to do was to review the motion to dismiss opinion if and when the case passed through the motion to dismiss in order to analyze the scope of the case:  what statements were in, what was the length of time that the class period consisted of.

And the reason for that, as we told the Court and as we told Mr. Smith, who -- neither of whom registered any objection or concern with this approach at the time, the reason for that was to undertake the necessary economic analysis involved in analyzing options claims.  It's not a

slam-dunk.  It's not evident that options claims always make sense from an economic perspective.  And what dictates whether they make sense in a case like is this what is the scope of the case?  How long is it?  And concomitantly what options were trading at that time in the various markets.  There is a fair amount of economic analysis, which I won't bore you with, because it's tedious now, to analyze what options were being traded at what times, whether they would be affected by certain activities or not, depending on the scope of the case.

We told the Court that that was the precise type of economic analysis that we would do if and when a case was sustained; in other words, if and when a case passed through the motion to dismiss.

So the idea that we were going to add in the options claims before the case passed through the motion to dismiss is a bit of red herring.  The fact that we amended before receiving a motion to dismiss opinion and that we amended again after the case was fully dismissed never brought us to that point where there was the economic analysis that was ready to be done.  We didn't have the information that we needed to do that economic analysis until we had the motion to dismiss opinion that ultimately sustained the case.  It was not until August 10th of 2022.

At that point, the two-year statute of limitations

had run.  At that point, the two-year statute of limitations was over.  And at that point, to add any options claims, we nevertheless undertook the economic analysis we said we would do and within a couple of months informed the defendants that we intended to do what we had told them and Judge Chesler what we would do, which is plead them in if we thought that it was warranted.

We thought that it was warranted, and that's what we put before Your Honor today.

That's what happened.  There's no undue delay there.  All we did was exactly what we told the Court and defendants we would do within a matter of a couple of months, two, three months after receiving the motion to dismiss opinion that sustained the case.

As for prejudice, which I think Your Honor rightly zeroed in on, the Feuerstack case that defendants cited to, the prejudice in that case was manifest.  The defendant in that case went from facing a case with a single-state class action to an amendment that tried to turn the case into a 50-state class action.  The ramifications for what the defendant would be required to do in a 50-state versus a single-state class action are obvious:  The implications for the discovery that they would need to undertake and the multiplication of the scale of the litigation is obvious.

So that's the Feuerstack case where the prejudice

|Hearing
|20-cv-02155, June 15, 2023

was quite clear.

And the appropriate cases that should govern what happened in this motion to amend decision are the cases that I noted which do not go to 15(c)(1)(C); they go to 15(c)(1)(B) because the factual basis for the claims and the claims themselves are essentially identical.  And that's the Westinghouse case and the others that I noted.  And that's the part of the rule that this case should be decided under.

THE COURT:  Okay.

So --

MR. SMITH:  Your Honor, may I just make two additional quick points.

THE COURT:  Absolutely, Mr. Smith.  Go ahead.

MR. SMITH:  I appreciate your indulgence, Your Honor.

On the issue of prejudice and the materiality of this amendment, I think it's telling that, as Your Honor knows, the entirety of our class certification opposition in this case is directed at options holder claims.  Okay?  If this had been raised early on when it should have been raised, the claim would be out, and that would not have occurred.  All of the briefing that's going on right now and that Judge Chesler is going to have to decide on class certification is a result of the timing of this, which never should have been done this way.

And on this notion that the plaintiffs had to wait until a second motion to dismiss was decided to figure out whether to assert options holder claims because of the sophisticated economic analysis that needs to be done, two things:  This is Mr. D'Ancona's complaint.  He wrote it in the first place.  He didn't need any additional information to figure out what he wanted to be in the case.  And in addition to that, where is the economic analysis, the sophisticated economic analysis, that they supposedly did after the decision on the third amended complaint came down that led them suddenly to include that options holders were appropriately included, sophisticated economic analysis based on length of class period et cetera, et cetera.

Take a look at their expert report on class certification.  It's not in there.  There's no economic analysis.  I mean, there's four pages of it in the entirety of the class certification submission on their part.  And it is decidedly not the sophisticated analysis that's been alluded to.

The last point, Your Honor, because we've been back and forth with the lawyers characterizing the transcript in front of Judge Chesler -- and obviously everyone can read, and I'll save everybody a dramatic reading of it right now, but I would really ask Your Honor to please, in deciding this motion, take a look back at what our pages -- 8 through 11 of

that transcript -- and I think Your Honor will see exactly what I've been talking about on this -- in this discussion.

THE COURT:  Okay.  I've read the transcript and -- in preparation for this discussion.

This is a bit of an easier decision for me, number one, because the trial judge is Judge Chesler and, number two, because Judge Chesler wrote the opinion in the Merck case that we keep referring to.

So in terms of a Rule 16 analysis, I don't think it's necessary, the add and amend date -- this was filed within the add and amend date in Court's scheduling order. So I am not going to deal with that.

I think the issue here, as we've discussed, is relation back and standing.  And I rely completely on Judge Chesler's opinion in Merck, albeit that was a class cert analysis rather than a 12(b)(6) challenge.  But it's pretty clear to Judge Chesler in that case and to me that insofar as a 15 analysis, there's a common core of facts here.  And the options people rely on the same set of facts that we have for the existing plaintiffs.

The other thing that is interesting to me and sort of as a sideline is that defense has asserted no prejudice. I asked.  I asked what you would have done differently.  It wasn't argued in your brief.  I haven't heard anything about prejudice.

I also specifically asked defense what would change in the class cert briefing, and you said nothing.

So I find there's no prejudice whatsoever.

In terms of standing, I think I, again, rely on Judge Chesler's decision in Merck and say that -- or find that the facts, as I said, are certainly similar, on all fours, as Chesler said in Merck.  I think that it's easy and easier in the interests of judicial economy to deal with this now and have Judge Chesler deal with it -- and the amendment, as I have stated, relates back to the pleading and the facts in the pleading.  I don't see any reason not to permit the amendment.

So I will grant the motion to amend.  And I find that there is a relation back and that there is standing to do so on behalf of the plaintiff.

Anything else we need to discuss with respect to scheduling?

MR. SMITH:  Your Honor, I would just raise the issue of the still-pending motion for class certification on which the plaintiffs have an evidentiary burden and the defendants, obviously, have a right to a hearing.

And I presume that Your Honor's ruling on the motion for leave is without prejudice to our continuing to advance in front of Judge Chesler the arguments that we've made on class cert -- all of the arguments that we've made on

class certification.

THE COURT:  You can certainly make those arguments.

I did not address futility either, which would be the subject of a motion before Judge Chesler.  And I -- futility to Judge Chesler.

MR. SMITH:  Thank Your Honor for that clarification.

THE COURT:  All right.

MR. ECKLUND:  Your Honor, Don Ecklund from Carella Byrne.

I just wanted to raise one item that you noted at the beginning of today's conference, that we would not be discussing additional issues today.  In light of that, would it make sense while everyone's on the line with Your Honor to set a date for another conference to address those issues that have been raised either in letters or otherwise so that we can get decisions on those issues?  I think it would be beneficial to try to get something on the calendar as certifications are rapidly approaching, and I realize everyone's schedule also continue to become more complicated as we approach August.

So, perhaps, there's a date in this month and the second half of June or July that would work well for everyone.

But, respectfully, I think the need for a

conference with Your Honor's not a close question for those reasons.

THE COURT:  Yeah, I need to see some letters, though.  I need some information.

MR. SMITH:  Yeah, Your Honor.  This is Mr. Smith again.

I was going to suggest the same thing.  Some of the issues that were on plaintiffs' proposed agenda are ones where we've just as recently as yesterday received, you know, a substantive position from the plaintiffs.  So I do think that there's -- we should build in -- I don't disagree that another status conference is appropriate.  But we should build in enough time for the parties to have some additional discussion, and if there has to be letters, there have to be letters, they potentially could be avoided.

THE COURT:  Yeah, I --

MR. ECKLUND:  That makes perfect sense as well to me, Your Honor.  I think Mr. Smith is correct:  We should briefly submit papers to Your Honor in short order, short letters setting forth what we need, the discovery issues that have been raised in either bullet form or otherwise so that Your Honor can decide these issues.  I don't think they need to be complicated or lengthy letters, but the need for a conference and the need for those letters, I think we can get all of that done in short order.

THE COURT:  So once you're lettered up, so to speak, I can put a conference on.  You know, I don't want to press you on time.  Again, people are starting to take vacations.  I'm around all summer.  So that's not an issue.

So once you get that lettered up, we'll have another Zoom discussion if you can't iron out any of those issues.

MR. ECKLUND:  Thank Your Honor.  I appreciate your consideration of the request.

THE COURT:  Thank you all for your time.

(Conclusion of proceedings)

|Hearing
|20-cv-02155, June 15, 2023
|Certification

Certification

I, SARA L. KERN, Transcriptionist, do hereby certify that the 32 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

s/ *Sara L. Kern*                              23rd of June, 2023
_____   _____
Signature of Approved Transcriber              Date


Sara L. Kern, CET**D-338
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ  07457
(973) 237-6080