**CARELLA BYRNE CECCHI
BRODY & AGNELLO, PC**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Sharan Nirmul
David A. Bocian
Joshua E. D'Ancona
Margaret E. Mazzeo
Vanessa M. Milan (admitted *pro hac vice*)
Nathaniel C. Simon (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Lead Plaintiff
Industriens Pensionsforsikring A/S
and Lead Counsel for the Putative
Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY and THOMAS E. POLEN,<br><br>Defendants. | Case No. 2:20-cv-02155-SRC-CLW<br><br>Hon. Stanley R. Chesler, District Court Judge<br><br>Hon. Cathy L. Waldor, Magistrate Judge<br><br>Motion Date: [TBD] |

## LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF
## ITS MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 3

    I.      Plaintiff Is an Adequate Class Representative ........................... 3

          A.     BD Options Traders Are Properly Included in the Class ................................................................................ 3

          B.     Plaintiff Has Demonstrated Its Adequacy ....................... 4

    II.     Plaintiff Satisfies the Typicality Requirement ........................... 6

          A.     Plaintiff's Reliance on Outside Investment Managers Does Not Raise a Unique Defense .................................. 6

          B.     Plaintiff's Post-Class Period Purchases Do Not Render It Atypical ........................................................................ 8

    III.    The Class Satisfies the Predominance Requirement .................. 9

    IV.    Damages Are Susceptible to Class-Wide Measurement .......... 14

CONCLUSION ......................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Auto Parts, Inc., Sec. Litig.*,
2020 WL 6544637 (D. Del. Nov. 6, 2020) ...........................................................7

*In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act
(ERISA) Litig.*,
2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) .......................................................5

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)...............................................................................9, 12, 14

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989).......................................................................10

*In re Cont'l Airlines, Inc.*,
279 F.3d 226 (3d Cir. 2002) ...............................................................................3

*Deutschman v. Beneficial Corp.*,
841 F.2d 502 (3d Cir. 1988) .............................................................................10

*E.E.O.C. v. Westinghouse Elec. Corp.*,
869 F.2d 696 (3d Cir. 1989) ...............................................................................4

*Energy Intel. Grp. Inc. v. PECO Energy Co.*,
2022 WL 329566 (E.D. Pa. Feb. 2, 2022) ..........................................................4

*In re Enron Corp. Sec. Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006)...............................................................10

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
343 F.Supp.3d 394 (S.D.N.Y. 2018) ..................................................................5

*Levy v. Gutierrez*,
448 F. Supp. 3d 46 (D.N.H. 2019)....................................................................14

*In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*,
2013 WL 396117 (D.N.J. Jan. 30, 2013).....................................................*passim*

*In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*,
2012 WL 4482041 (D.N.J. Sep. 25, 2012) ........................................................7

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015) .............................................................................15

*In re Novo Nordisk Sec. Litig.*,
2020 WL 502176 (D.N.J. Jan 31, 2020).............................................................14

*Pelletier v. Endo Int'l PLC*,
338 F.R.D. 446 (E.D. Pa. 2021)...........................................................................9

*In re PolyMedica Corp. Sec. Litig.*,
432 F.3d 1 (1st Cir. 2005)..................................................................................12

*In re Rent-Way Sec. Litig.*,
218 F.R.D. 101 (W.D. Pa. 2003) ..........................................................................9

*Ret. Sys. v. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) ..........................................................................8

*Roofer's Pension Fund v. Papa*,
333 F.R.D. 66 (D.N.J. 2019)......................................................................7, 8, 15

*Rougier v. Applied Optoelectronics, Inc.*,
2019 WL 6111303 (S.D. Tex. Nov. 13, 2019*)* ..................................................10

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315 (N.D. Ga. 2007)..............................................................10

*Strougo v. Barclays PLC*,
312 F.R.D. 307 (S.D.N.Y. 2016) ........................................................................13

*Univ. of Puerto Rico Ret. Sys. v. Lannett Co.*,
2023 WL 2985120 (3d Cir. Apr. 18, 2023) .......................................................14

*In re Vicuron Pharms., Inc. Sec. Litig.*,
233 F.R.D. 421 (E.D. Pa. 2006).........................................................................8

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ..................................................5, 13

iii

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa 2009)...............................................................................4

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................8

**Other Authorities**

Fed. R. Civ. P.15(c)..........................................................................................2, 4

Fed. R. Civ. P. 23(a).......................................................................................1, 6, 7

Fed. R. Civ. P. 23(b)(3)..................................................................................1, 9, 15

Fed. R. Civ. P. 30(b)(6)........................................................................................5

**INTRODUCTION**[1]

As set forth in Plaintiff's Motion, this case meets every requirement of Rule 23(a) and 23(b)(3). In their Opposition to Lead Plaintiff's Motion for Class Certification (ECF No. 152) ("Opposition" or "Opp."), Defendants claim otherwise, arguing that: (i) options investors cannot be included in the Class because the options claims asserted in the Fourth Amended Complaint (ECF No. 158) ("FAC") are time-barred; (ii) Plaintiff is inadequate because it has improperly asserted options claims for which it lacks standing; (iii) Plaintiff's use of external investment advisors and its post-Class Period BD stock trades render it atypical; (iv) Plaintiff's evidence is insufficient to demonstrate that the market for BD options was efficient during the Class Period; and (v) Plaintiff has not adequately shown that damages are susceptible to class-wide measurement. These arguments are meritless.

*First*, the Opposition's standing and limitations-based arguments were all but disposed of by Magistrate Judge Waldor's ruling granting Plaintiff's motion for leave to amend and file the FAC, in which Judge Waldor expressly considered and affirmed both Plaintiff's standing to represent options investors and the timeliness of the options claims in the FAC. *See* ECF No. 157 ("Motion to Amend Order"); Ex.

---

[1]    Unless otherwise stated, all: (i) capitalized terms shall have the meanings set forth in Lead Plaintiff's Memorandum of Law in Support of Motion for Class Certification (ECF No. 130-1) ("Motion" or "Mot."); (ii) internal citations and quotations are omitted; and (iii) emphasis is added.

1

1 ("Hearing Tr."). This ruling followed briefing and a hearing in which Defendants argued, as they do here, that Plaintiff lacked standing to represent BD options traders and that the options claims were time-barred (ECF No. 127 at 2-5), while Plaintiff argued that it had standing to bring the options claims (citing this Court's decision in *In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.,* 2013 WL 396117 (D.N.J. Jan. 30, 2013)), and that those claims related back to the earlier-filed complaint under Rule 15(c) (ECF No. 132 at 4-7). In affirming Plaintiff's standing to represent options traders, Judge Waldor found that the relevant facts in this case were "on all fours" with *Merck*. Hearing Tr. at 28:4-15. Further, after observing that "the options people rely on the same set of facts that we have for the existing Plaintiff" and finding no undue prejudice to Defendants, Judge Waldor held that the options claims related back and thus were not time-barred. *Id.* at 27:16-28:11. In light of these rulings, Defendants' arguments here that options traders cannot be included in the Class and that Plaintiff is inadequate for seeking to include time-barred options claims for which it lacks standing are severely undermined, if not rendered moot.

*Second*, the rest of Defendants' arguments against class certification are equally flawed. Plaintiff's use of an investment manager with discretion to invest within a mandate makes it like myriad other large investors, and does not dent its typicality. Plaintiff's trades in BD stock outside the Class Period are also immaterial to its typicality and ability to serve as Class Representative. Further, given

2

Defendants' concession that the market for BD stock was efficient during the Class Period, their argument that the market for BD options was *not* is inconsistent with *Merck*, and fails. Finally, Plaintiff's expert has sufficiently shown that a class-wide damages methodology based on common formulae and inputs can be applied here. Plaintiff's Motion should be granted in full.

## ARGUMENT

### I.    PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE

#### A.    BD Options Traders Are Properly Included in the Class

As discussed above, the Motion to Amend Order dispenses with many of Defendants' arguments against class certification, including their arguments that Plaintiff is inadequate because the BD options claims are time-barred and Plaintiff lacks standing to represent options holders. Indeed, Judge Waldor found that the options claims were timely asserted and Plaintiff has standing to bring them. Judge Waldor's findings are now the law of the case and Defendants should be precluded from attempting to re-litigate these issues. *See In re Cont'l Airlines, Inc.*, 279 F.3d 226, 233 (3d Cir. 2002) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").

In any event, Defendants' adequacy arguments on these grounds are unavailing. As this Court held in *Merck*, a plaintiff who purchased stock has standing to bring options-based claims because all of the claims "whether based on common stock purchases or options trading, arise out of the same conduct—transactions in

3

Merck securities that were based on an allegedly artificially inflated stock price as a result of Defendants' misrepresentations and omissions." 2013 WL 396117, at *6.[2] This holding is directly applicable here (as Judge Waldor recognized), and confirms Plaintiff's standing to represent a class that includes the options investors.

Further, Plaintiff filed its motion to amend in advance of the court-ordered deadline and the options-based claims are not time-barred because they relate back to the earlier-filed complaint under Rule 15(c), as Judge Waldor specifically held. Hearing Tr. at 28:7-15; *see also Energy Intel. Grp. Inc. v. PECO Energy Co.*, 2022 WL 329566, at *3 (E.D. Pa. Feb. 2, 2022) (motion to amend brought "before the deadline . . . is presumptively timely"); *E.E.O.C. v. Westinghouse Elec. Corp.*, 869 F.2d 696, 704 (3d Cir. 1989), *vacated on other grounds*, 493 U.S. 801 (1989) (amendment that "expanded the action to include" additional class members related back because amended "complaint raised no additional substantive claims" and "[t]he factual basis for the amended claims was identical"). Accordingly, Defendants' threshold challenges to the inclusion of BD options claims and related adequacy arguments are unfounded.

### B.    Plaintiff Has Demonstrated Its Adequacy

Plaintiff's decision to amend the complaint and add the options claims has not

---

[2]    *Wellbutrin* was not a securities case and the class representative tried to allege state law claims in states in which no class representative resided. *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 151-52 (E.D. Pa 2009) (cited at Opp. at 11).

only been validated by Judge Waldor, but also has no bearing on Plaintiff's adequacy.[3] Plaintiff's adequacy is evident from its active participation in the litigation and the alignment of its interests with those of other Class members. *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2016 WL 4138613, at *10 (E.D. Pa. Aug. 4, 2016). As Lead Plaintiff, Industriens has, among other things: (i) reviewed all Court orders and draft filings (e.g., the Third Amended Complaint and FAC, briefing on Defendants' motions to dismiss, the Motion to Amend, and Plaintiff's Motion for Class Certification); (ii) searched for and produced documents in response to Defendants' requests for production; (iii) responded to Defendants' interrogatories; (iv) prepared for and testified at a Rule 30(b)(6) deposition; and (v) actively overseen Lead Counsel. *See* ECF No. 130-4.

Moreover, in seeking to add the options claims, Plaintiff was exercising its authority as the court-appointed lead plaintiff under the PSLRA to control the litigation and decide which claims to assert and when. *See In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) ("it is within lead plaintiff's authority to decide what claims to assert on behalf of the class"); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F.Supp.3d 394, 410 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F.

---

[3]    KTMC and Carella Byrne are experienced and highly qualified (*see* Mot. at 16) and Defendants do not challenge their appointment.

App'x 40 (2d Cir. 2020) ("It is axiomatic . . . that a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class."). The Motion to Amend Order confirms the propriety of Plaintiff's decision to add options-based claims and undermines Defendants' related adequacy challenges.[4]

## II.    PLAINTIFF SATISFIES THE TYPICALITY REQUIREMENT

Defendants' typicality challenges are equally flawed. The Rule 23(a) typicality requirement is "easily met" where, as here, a plaintiff's claims arise "from the very same alleged Exchange Act violations as those that give rise to the claims of the absent class members, including those who transacted in options contracts." *Merck*, 2013 WL 396117, at *4-5. Because Plaintiff alleges the same claims based on the same misrepresentations and asserts the same legal theory as all other Class members, Defendants' typicality challenges should be rejected, notwithstanding Plaintiff's use of external managers and the timing of its BD stock trades.

### A.    Plaintiff's Reliance on Outside Investment Managers Does Not Raise a Unique Defense

Defendants assert an entirely speculative argument untethered to evidence that Plaintiff's use of outside investment managers somehow renders it atypical. Opp. at

---

[4]    Defendants' suggestion that Plaintiff has "less than vigorous[ly]" represented the interests of the BD options traders (Opp. at 12-13) is eviscerated by the Motion to Amend Order and has no merit. Plaintiff acted timely and consistent with its prior representations to the Court in seeking to add the options claims. *See* ECF No. 92.

15-17.[5] The lack of substance in this argument is shown by Defendants' concession that they have neglected to take any discovery from Industriens' investment managers (Opp. at 16) and Defendants' failure to cite any evidence contradicting Industriens' deposition testimony that the investment strategies employed by these external managers factored in stock prices.[6]

Effectively, Defendants contend that the mere fact that an institutional investor uses an external investment manager makes it atypical under Rule 23(a). That argument has been broadly rejected. *See, e.g.*, *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 6544637, at *5 (D. Del. Nov. 6, 2020) (plaintiff's "use of an investment advisor, even one that has complete discretion, does not automatically render it atypical"); *Merck*, 2012 WL 4482041, at *6-7 (rejecting typicality challenge based on plaintiff's use of external investment managers and related assertion that manager's testimony was "at odds with" contention made by class); *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 179 (S.D.N.Y. 2012)

---

[5]    As another court in this District made clear, a "[d]efendant bears the burden to show some degree of likelihood a unique defense will play a significant role at trial" and [s]peculative defenses will not suffice." *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 75 (D.N.J. 2019).

[6]    *See, e.g.*, Ex. 2 at 82:19-83:9 (investment manager employed "fundamental research process" based in part on stock price), 90:22-91:4 (investment guidelines for external manager would "mirror in some way" the S&P 500); *see also In re Merck & Co., Inc. Vytorin/Zetia  Sec. Litig.*, 2012 WL 4482041, at *6 (D.N.J. Sep. 25, 2012) ("[T]he law fully supports the notion that index purchases . . . are in fact a perfect example of reliance on the market.").

7

(typicality and adequacy not defeated when institutional investors give managers discretionary authority to make investment decisions). Indeed, courts have recognized that the PSLRA aims to increase the likelihood that large institutional investors like Industriens serve as class representatives and that "such investors are likely to use advisors;" accordingly, this commonplace arrangement "does not disqualify an investor from representing a class of defrauded investors or from relying on the presumption of reliance." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003); *see also In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 427 (E.D. Pa. 2006) (it is "contrary to the intentions of Congress embodied in the PSLRA" to find that reliance on external advisors for investment decisions precluded institutional investors from overseeing securities class actions).[7]

### B.     Plaintiff's Post-Class Period Purchases Do Not Render It Atypical

Plaintiff's purchases of BD stock after the February 6, 2020 corrective disclosure also do not subject it to unique reliance defenses or bear upon its typicality. Indeed, post-disclosure purchases do not "negate or even undermine . . . Plaintiff's allegations that it[] . . . relied on the relevant misrepresentations when [it] made stock-purchasing decisions during the Class

---

[7]     *Cohen v. E.F. Hutton & Co.* is a pre-PSLRA case which involved a proposed class representative who primarily invested for tax benefits, relied on an external investment advisor for their analysis of the *tax* implications of the investment, and relied on specific representations made by a broker of the defendant company. 1988 WL 89437, at *2 (N.D. Ill. Aug. 22, 1988) (cited at Opp. 16-17).

Period." *Roofer's*, 333 F.R.D. at 77; *see also In re Rent-Way Sec. Litig*., 218 F.R.D. 101, 114 (W.D. Pa. 2003) (post-class period purchases "irrelevant" to typicality inquiry). Moreover, purchasing shares following a price drop is "a common investment strategy, not an atypical one." *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 476 (E.D. Pa. 2021).

## III.    THE CLASS SATISFIES THE PREDOMINANCE REQUIREMENT

Plaintiff has established, and Defendants do not contest, that the Rule 23(b)(3) predominance prerequisite is satisfied with respect to BD stock purchasers. Nor do Defendants challenge Plaintiff's showing that the market for BD stock was efficient, such that Plaintiff and other Class members who purchased BD stock during the Class Period are entitled to the presumption of reliance set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Instead, Defendants assert that Plaintiff has not established predominance *only* for Class members who transacted in BD options. As discussed below, their arguments do not undermine Plaintiff's showing that BD options, like BD stock, traded in an efficient market.

*First*, Dr. Mason opined that the efficiency of the BD options market was supported by the undisputed efficiency of the market for BD stock. Mason Report ¶ 91. Arguing to the contrary (Opp. at 8), Defendants ignore the weight of authority in this Circuit, including a decision from this Court, which concludes that if the market for a stock is efficient, so too is the market for the related options.

9

*Deutschman v. Beneficial Corp.*, 841 F.2d 502, 504 (3d Cir. 1988) ("The market price for options is directly responsive . . . to changes in the market price of the underlying stock, and to information affecting that price."); *Merck*, 2013 WL 396117, at *12 ("trading of Merck stock on the efficient NYSE suffices to establish that the options also traded on an efficient market"); *see also* Mot. at 27-28.[8] Defendants offer no reason for the Court to diverge from this precedent.[9]

Defendants also fault Dr. Mason for purportedly failing to cite any "peer-reviewed academic articles, textbooks or industry practitioner articles" to support "his claim that if the market for a given stock is efficient then so are the markets for the related call and put options," and assert, "there is none." Opp. at 9. Defendants are wrong, and Dr. Mason identifies multiple such academic and industry sources in his reply report. *See* Ex. 3 ("Mason Reply") ¶¶ 21-25.

*Second*, in contrast to Dr. Mason's affirmative opinion, Defendants have not

---

[8]    Other circuits agree. *See, e.g.*, *Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *14 (S.D. Tex. Nov. 13, 2019*)* ("finding of market efficiency for common stock applies to options because the price for the option is derivative of the price of the stock"); *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1329 (N.D. Ga. 2007) ("put options seller, upon proof of market efficiency in the underlying stock, is generally entitled to a rebuttable presumption of reliance"); *In re Enron Corp. Sec. Litig.*, 529 F. Supp. 2d 644, 754 (S.D. Tex. 2006) (same).

[9]    The efficiency of the market for BD options is further supported by the fact that the options traded on the CBOE during the Class Period. *See* Mason Report ¶ 93; *Cammer v. Bloom*, 711 F. Supp. 1264, 1292 (D.N.J. 1989) ("at a minimum, there should be a presumption . . . that certain markets are developed and efficient for virtually all the securities traded there [including] . . . the [CBOE]").

proffered any evidence or expert opinions suggesting that the market for BD options was not efficient. *See generally* Opp. at 6-10; *see also* Ex. 4 ("Mayhew Tr.") at 19:9-18 (testifying that he is "not offering affirmative opinions" on whether BD options traded efficiently). Rather, Defendants argue that "Plaintiff has failed to carry its burden to prove 'market efficiency' with respect to options trades." Opp. at 7. Defendants' support, however, amounts to mere criticisms raised by their expert, Stewart Mayhew, Ph.D., regarding Dr. Mason's approach and methodology. *See* Opp. at 8-9; ECF No. 152-3 ("Mayhew Rpt."). But Dr. Mayhew's criticisms are premised on unproven hypotheticals and methodologically unsound, ignore authoritative sources, and contradict his own works. *See* Mason Reply ¶¶ 4-8.

Relying on Dr. Mayhew, Defendants assert as their primary argument that "[i]t is [] entirely possible for the market for a given company's stock to be efficient while the options markets are inefficient." Opp. at 8. Specifically, Defendants and Dr. Mayhew contend that the extent to which investors can rely on the integrity of the market price in options markets depends on "whether the traded prices of options fully and accurately reflect new information about future volatility, not just information about the underlying stock price" and that Dr. Mason has failed to address this. Opp. at 8; Mayhew Rpt. ¶¶ 16, 18 (emphasis omitted).

As Dr. Mason explains, however, this argument relates to *fundamental* efficiency, not informational efficiency, which is the relevant form of market

11

efficiency for the *Basic* presumption. Mason Reply ¶¶ 7, 17.[10] Moreover, Dr. Mayhew's contention is not only conjectural—premised on hypothetical scenarios—but also conclusory, positing that it is *possible* that BD options could *theoretically* be affected by another type of information, i.e., expected volatility. *See* Mason Reply ¶ 19. Dr. Mayhew provides no empirical analysis showing that his hypothetical scenarios were borne out with respect to BD options during the Class Period. *Id.* ¶ 20. Even taken at face value, Dr. Mayhew merely asserts that BD options may react to new, value-relevant information in a different manner than BD stock, which says nothing about the efficiency of the options market.[11]

Defendants also claim "the individual BD options series exhibited extremely low trading volume and high bid-ask spreads" during the Class Period and therefore, "there simply can be no presumption that all publicly available information was quickly and fully incorporated" into the BD options prices. Opp. at 9. But during his deposition, Dr. Mayhew disavowed any defined thresholds for "low" volume and "high" bid-ask spreads, and conceded that trading volume alone is not "indicative

---

[10]   *See also In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 19 (1st Cir. 2005) (rejecting definition of market efficiency "known as 'fundamental value efficiency,' which requires that a market respond to information not only quickly but accurately," for purposes of establishing fraud-on-the-market presumption).

[11]   Because Defendants do not challenge the efficiency of the BD stock market and Dr. Mayhew admitted at his deposition that the price of BD stock impacts the price of BD options, Defendants have conceded that the price of BD options reflects publicly available information. Mason Reply ¶ 16 & n.31.

12

one way or the other" with respect to efficiency, such that Defendants' criticism is unsupported. Mason Reply ¶¶ 35, 42-43, 50. In addition, as explained in the Mason Reply, Dr. Mayhew's methodologies in examining trading volume and bid-ask spreads for the BD options are flawed, further undermining Defendants' arguments. *See id.* ¶¶ 45-48, 51-52.[12]

Finally, Defendants assert that Dr. Mason's evidence of a "lack of put-call parity deviations" for BD options does not show that the options market was efficient but cite no law in support of this claim. *See* Opp. at 10. To the contrary, courts and academics alike have long recognized that the absence of put-call parity deviations evidences market efficiency. *See* Mason Reply ¶¶ 54-58 (citing academic works); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 317 (S.D.N.Y. 2016) ("A put-call parity relationship between the share price and the prices of the put and call options . . . indicates that the market for the stock and the options . . . are efficient.").

In sum, Defendants and Dr. Mayhew have provided no evidence that the market for BD options was inefficient during the Class Period, while Dr. Mason has put forth ample evidence supporting a finding of efficiency that should be accepted. *See W. Palm Beach*, 2016 WL 4138613, at *13 (favoring expert opinion that "has data underlying his conclusions" over opinion that "just has noise"). Plaintiff has

---

[12]   Among other things, Dr. Mayhew's trading volume analysis is directly contrary to the approach he has applied in his academic work. Mason Reply ¶ 46.

adequately shown that BD options traded in an efficient market and therefore, the entire Class is entitled to invoke the *Basic* presumption.

## IV.    DAMAGES ARE SUSCEPTIBLE TO CLASS-WIDE MEASUREMENT

The out-of-pocket methodology is the "traditional measure of damages in a 10b-5 action," *Univ. of Puerto Rico Ret. Sys. v. Lannett Co.*, 2023 WL 2985120, at *4 (3d Cir. Apr. 18, 2023) (collecting cases), and courts have accepted it as applied to options claims. *See, e.g.*, *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 66 (D.N.H. 2019) (predominance satisfied based on out-of-pocket damages model for options).[13] Defendants' suggestion that an out-of-pocket methodology is inappropriate for calculating options holders' damages is misplaced.[14]

Defendants' claim that Dr. Mason's damages methodology improperly fails to account for the prices options traders actually paid or received is similarly unfounded. As an initial matter, the law in this Circuit is clear that at class certification, "[p]laintiffs are not required to produce a detailed damages model," *In*

---

[13]    Dr. Mason's "out-of-pocket damages methodology for options is consistent with the out-of-pocket damages methodology for stocks." Mason Reply ¶ 76. Defendants do not challenge Dr. Mason's damages methodology for BD stock, conceding that this methodology is appropriate for measuring class-wide damages.

[14]    Dr. Mayhew offered no opinion on damages. Mayhew Tr. at 11:15-12:1 (measurement of damages was "outside of the scope of my assignment," and "I am not offering an opinion on that topic"); 90:14-91:4 ("[D]amages estimation generally was not part of my assignment in this case."). Nonetheless, Dr. Mayhew admitted that a pricing model like Dr. Mason's could be appropriate to measure class-wide damages. *Id*. at 90:14-91:13.

*re Novo Nordisk Sec. Litig.*, 2020 WL 502176, at *3 (D.N.J. Jan 31, 2020), or make "precise damage calculations." *Roofer's*, 333 F.R.D. 66 at 87-88. The Third Circuit has also observed that "it is a misreading of [*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)] to interpret it as preclud[ing] certification under Rule 23(b)(3) in any case where the class members damages are not susceptible to a formula for classwide measurement.'" *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 375 (3d Cir. 2015) (alterations in original).

In any event, as Dr. Mason explains, his "damages methodology *directly* measures the impact of the alleged wrongdoing and *excludes* any portion of the price decline or price difference that is unrelated to this alleged wrongdoing." Mason Reply ¶ 76.[15] Because Dr. Mason's "damages methodology and inflation calculation for BDX Options . . . can be implemented for any BDX Option series taking into account the individual characteristics of each options series," it can be applied on a class-wide basis and satisfies the predominance requirement. *Id.*

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiff's Motion, all Rule 23 prerequisites are satisfied and the Class should be certified.

---

[15]    *WM High Yield Fund v. O'Hanlon* was a summary judgment opinion in a case that did not involve options where the relevant price decline could not be calculated due to an inability to prove loss causation. 2013 WL 3230667, at *17 (E.D. Pa. June 27, 2013) (cited at Opp. at 19).

15

Dated: June 30, 2023

Respectfully submitted,

*s/ James E. Cecchi*

| | |
|---|---|
| **CARELLA BYRNE CECCHI BRODY & AGNELLO, PC** | Sharan Nirmul |
| James E. Cecchi | David A. Bocian |
| Donald A. Ecklund | Joshua E. D'Ancona |
| 5 Becker Farm Road | Margaret E. Mazzeo |
| Roseland, NJ 07068-1739 | Vanessa M. Milan (admitted *pro hac vice*) |
| Telephone: (973) 994-1700 | Nathaniel C. Simon (admitted *pro hac vice*) |
| Facsimile: (973) 994-1744 | |
| jcecchi@carellabyrne.com | **KESSLER TOPAZ MELTZER & CHECK, LLP** |
| decklund@carellabyrne.com | 280 King of Prussia Road |
| | Radnor, PA 19087 |
| *Liaison Counsel for the Putative Class* | Telephone: (610) 667-7706 |
| | Facsimile: (610) 667-7056 |
| | snirmul@ktmc.com |
| | dbocian@ktmc.com |
| | jdancona@ktmc.com |
| | mmazzeo@ktmc.com |
| | vmilan@ktmc.com |
| | nsimon@ktmc.com |
| | *Counsel for Lead Plaintiff Industriens Pensionsforsikring A/S and Lead Counsel for the Putative Class* |

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing to be electronically filed with the CM/ECF system. Those attorneys registered with the Electronic Filing System will receive notice of this filing by ECF and email. I further certify that a courtesy copy of this filing will be served upon the Court.

Dated: June 30, 2023

*s/ James E. Cecchi*
James E. Cecchi

**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**