**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:20-cv-02155-SRC-CLW |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| BECTON, DICKINSON AND COMPANY and THOMAS E. POLEN, | |
| Defendants. | |

**CHESLER**, District Judge

This matter comes before the Court on the motion for class certification brought by Plaintiff Industriens Pensionsforsikring A/S ("IPA"). Defendants Becton, Dickinson and Company and Thomas E. Polen (collectively, "BD") oppose the motion. For the reasons that follow, the motion will be granted.

Plaintiff brings this putative class action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), on behalf of all persons or entities who purchased or otherwise acquired the common stock of BD, or BD call options, or sold BD put options, between November 5, 2019, and February 5, 2020, inclusive (the "Class Period"). The Fourth Amended Class Action Complaint asserts three causes of action: 1) a claim for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* (the "Exchange Act") against Defendants; 2) a control person claim pursuant to Section 20(a) of the

1

Exchange Act against Defendant Polen; and 3) an insider trading claim pursuant to Sections 10(b) and 20A of the Exchange Act against Defendant Polen.

On January 17, 2023, Plaintiff filed the instant motion for class certification, pursuant to Federal Rule of Civil Procedure 23.  Plaintiff moves for an order: 1) certifying a class of all persons and entities who, from November 5, 2019 to February 5, 2020, inclusive, purchased or otherwise acquired BD common stock or call options, or sold BD put options, and were damaged thereby (the "Class"); 2) appointing IPA as class representative; and 3) appointing Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as class counsel and Carella Byrne Cecchi Brody Agnello, P.C. ("Carella Byrne") as liaison counsel for the Class.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Wal-Mart Stores v. Dukes, 564 U.S. 338, 348 (2011).  To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3). See Fed. R. Civ. P. 23(a)-(b). To satisfy Rule 23(a),

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

Fed. R. Civ. P. 23(a).

The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence.  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305 (3d Cir. 2008), as amended (Jan. 16, 2009). The Third Circuit has emphasized that "[a]ctual, not presumed[,] conformance with Rule 23 requirements is essential." Id. at 326.  To determine

whether there is actual conformance with Rule 23, a district court must conduct a "rigorous analysis" of the evidence and arguments put forth.

> Plaintiff offers the following summary of its case for class certification:
>
> Plaintiff and members of the Class were all injured by Defendants' conduct in the same manner. During the Class Period, Defendants misrepresented and concealed material adverse information concerning issues related to BD's Alaris infusion pump system ("Alaris") and the United States Food and Drug Administration's ("FDA") ongoing scrutiny of the device that precipitated a hold on Alaris shipments. When investors finally learned the truth about Alaris's significant issues, the Company's share price fell by $33.74, or nearly 12 percent, causing losses to all Class members. A trial of Plaintiff's claims will focus on falsity, materiality, scienter, and loss causation, and the evidence regarding these elements will be common to all Class members.

(Pl.'s Br. at 2.)

BD does not contest certification for the class of stock purchasers; all its arguments on this motion challenge the inclusion of option traders in the putative class. The Third Amended Complaint did not assert any claims on behalf of option traders. On December 17, 2022, Plaintiff moved for leave to amend the complaint in order to add option traders to the putative class. The motion for leave to amend had not yet been decided when Plaintiff filed the opening brief in support of the instant motion, nor when BD filed its brief in opposition. On June 15, 2023, Magistrate Judge Waldor granted the motion for leave to amend, and the Fourth Amended Class Action Complaint was then filed. Plaintiff filed its class certification reply brief after this decision on the motion for leave to amend had been issued.

Because the motion for leave to amend had not been decided at the time BD filed its brief in opposition to the motion for class certification, the brief raised two arguments that duplicated arguments in its opposition to the motion for leave to amend, and which ended up being litigated and decided by the Magistrate Judge: 1) all option trader claims are time-barred; and 2) Plaintiff lacks standing to represent option traders. Both of these issues were briefed, heard by Magistrate

3

Judge Waldor, and decided in Plaintiff's favor on June 15, 2023. Defendants neither moved for reconsideration of the decision nor appealed it, and it is now the law of the case and will not be relitigated.

## I.     The requirements of Rule 23(a)

Defendants raise no objections about whether the proposed class meets the Rule 23(a)(1, 2) numerosity or commonality requirements. The Court concludes that the proposed class meets those prerequisites.

Defendants contend that Plaintiff lacks adequacy and typicality as a representative of option traders. In part, Defendants tie this to their argument that Plaintiff lacks standing to represent option traders, which has already been decided and rejected. Defendants also contend that Plaintiff's delay in adding option traders to the case renders it inadequate and atypical. Defendants argue that Plaintiff's delay in bringing the option traders into the case shows that it lacks "the ability and incentive to represent the claims of the class vigorously." In re Cendant Corp. Litig., 264 F.3d 201, 265 (3d Cir. 2001).

While the Court agrees that Plaintiff's meandering path over the course of this case, first excluding the option traders from the class and now seeking to bring them back years later, is notable, even unusual, the Court does not agree that this history shows that Plaintiff lacks the ability or incentive to represent the claims of option traders vigorously, now that it has resolved to do so. Defendants' point raises no issues about the typicality of claims (which arise from the same events and same legal theory), conflicts of interest, or alignment of interests; Defendants point to nothing which suggests that the interests of option traders will not "be fairly and adequately protected" by Plaintiff. Amchem Prods. v. Windsor, 521 U.S. 591, 626 n.20 (1997).

4

Defendants also challenge the adequacy and typicality of Plaintiff as class representative on the ground that it is subject to unique defenses: "Plaintiff is also not suitable to lead the class because it is subject to unique defenses that threaten to become a focus of the litigation." (Def.'s Opp. Br. at 15.) Defendants contend that the fact that Plaintiff used independent investment managers, who operated with full discretion, leaves Plaintiff subject to the unique defense of lack of reliance. Defendants rely on this essential principle from Basic:

> Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance.

Basic Inc. v. Levinson, 485 U.S. 224, 248 (1988). Defendants evidently believe that the use of an independent investment manager acts to sever the link between alleged misrepresentation and price paid by Plaintiff, but does not persuade that there is any basis for this inference. As Plaintiff points out in reply, this is pure speculation about the future. Defendants' argument is at best a vow that they will try to discover something to support this objection down the road. At this point, Defendants have not made any showing that Plaintiff's use of an independent investment manager leaves it vulnerable to a unique defensive challenge to the link between alleged misrepresentation and price paid. As Plaintiff notes, this argument has been rejected repeatedly by courts. As observed by one court, institutional investors "are likely to use advisors," which "does not disqualify an investor from representing a class of defrauded investors or from relying on the presumption of reliance that is ordinarily available." In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267, 282 (S.D.N.Y. 2003). As another court observed:

> A class representative's use of an investment advisor, even one that has complete discretion, does not automatically render it atypical. Indeed, courts have recognized that large institutional investors are likely to rely on investment advisors, and yet both Congress and the courts have recognized that these sorts of investors are generally preferred as class representatives in securities litigation.

5

In re Advance Auto Parts, Inc., Sec. Litig., 2020 WL 6544637, at *5 (D. Del. Nov. 6, 2020) (citations omitted).

The Court finds that the proposed class meets the adequacy and typicality requirements of Rule 23(a).

## II.     The requirements of Rule 23(b)(3)

Plaintiff contends that the requirements of Rule 23(b)(3) are satisfied:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

These are commonly referred to as the predominance and superiority requirements.

"Predominance is a test readily met in certain cases alleging consumer or securities fraud. . ." Amchem Prods. v. Windsor, 521 U.S. 591, 625 (1997). "Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 810 (2011). Pursuant to Basic, Plaintiff "invoke[s] a rebuttable presumption of reliance based on what is known as the 'fraud-on-the-market' theory." Id. at 811. The Supreme Court has held:

> Based on this theory, a plaintiff must make the following showings to demonstrate that the presumption of reliance applies in a given case: (1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed.

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 268 (2014).

Defendants contend that Plaintiff has failed to make a sufficient showing for the third element. While there is no dispute between the parties that BD stock traded in an efficient market, Defendants argue that Plaintiff has not shown that BD options traded in an efficient

market.  As to BD common stock, Plaintiff offers the expert report of Dr. Mason and his analysis of the Cammer factors and other indicators of market efficiency.  As to BD options, Plaintiff offers Dr. Mason's opinion on market efficiency, and also cites this Court's decision on class certification in In re Merck & Co., Inc. Sec., Derivative & ERISA Litig., 2013 WL 396117, at *12 (D.N.J. Jan. 30, 2013).  In Merck, this Court held that "the trading of Merck stock on the efficient NYSE suffices to establish that the options also traded on an efficient market."  Id.  The Merck Court relied on the Third Circuit's analysis of this issue in Deutschman v. Beneficial Corp., 841 F.2d 502, 504 (3d Cir. 1988).  In short, in Deutschman, the Third Circuit stated:

> The market price for options is directly responsive, therefore, to changes in the market price of the underlying stock, and to information affecting that price.
>
> Because the market value of an option contract is responsive to changes in the market price of the underlying stock, holders of option contracts are susceptible to two separate types of deceptive practices: insider trading and affirmative misrepresentation.

Id.[1]  This Court in Merck concluded that, given Deutschman, and the fact that Merck stock traded on the efficient NYSE, "it is logical and appropriate to apply the same presumption of reliance to class members who exercised options that were derivatives of that stock and whose value depended on the value of the Merck stock."  Merck, 2013 WL 396117 at *12.  This Court held that the entire proposed class of Merck plaintiffs – both stock and options purchasers – were entitled to the presumption of reliance.  Id.

---

[1] While Deutschman is precedential, the Third Circuit was not asked to rule on the general question of whether a showing that the market for a common stock is an efficient market provides sufficient basis for a determination of efficiency in the associated options market.  At issue in Deutschman was the question of whether an options purchaser had standing to sue under the Securities Exchange Act.  The Third Circuit's reasoning about the options market is persuasive, but not controlling authority on the issue presently before this Court.

In opposition, BD ignores Plaintiff's arguments about the case law and argues that "Plaintiff's economic expert has failed to prove that any BD options traded in efficient markets." (Def.'s Opp. Br. at 2.) BD offers the report of its expert, Dr. Mayhew, in support of the following propositions: 1) efficiency of a market for options does not follow automatically from a finding of efficiency of a market for the underlying stock, and Dr. Mason provides no support showing such a link; 2) Dr. Mason fails to address the role of information about future volatility in options price dynamics; 3) efficiency of an options market must be empirically established individually for every option at issue; and 4) Dr. Mason's analyses of the options markets are flawed. Therefore, BD contends, as to options, IPA cannot rely on the Basic presumption of reliance.

In reply, IPA contends that BD has not undermined its showing that the market for BD options is efficient. IPA points out correctly that BD failed to address Merck and Deutschman, and observes that Dr. Mayhew does not contend that options markets (generally or specifically) are inefficient. IPA also raises challenges to a few of Dr. Mayhew's points, supported by a rebuttal report from its expert. IPA argues that it has offered sufficient evidence of options market efficiency to invoke the Basic presumption of reliance.

Plaintiff contends that the factors that demonstrate the efficiency of the market for BDX[2] stock also demonstrate the efficiency of the market for BD options. In support, Plaintiff cites the opinion of Dr. Mason, who stated that "the factors that support the efficiency of BDX stock also support the efficiency of BDX options." (Mason Report at ¶ 91.) Plaintiff contends that many courts have relied on reasoning similar to Dr. Mason's on this point. Specifically, Plaintiff cites three district court cases. As already discussed, the first is Merck, in which this Court, relying on

---

[2] "BDX" is the symbol for BD common stock on the NYSE.

Deutschman, held: "the trading of Merck stock on the efficient NYSE suffices to establish that the options also traded on an efficient market." Merck, 2013 WL 396117, at *12. The second is Marcus v. J.C. Penney Co., Inc., 2016 WL 8604331, at *9 (E.D. Tex. Aug. 29, 2016), report and recommendation adopted, 2017 WL 907996, at *3 (E.D. Tex. Mar. 8, 2017) ("An expert's application of the Cammer factors to common stock may be sufficient to trigger the presumption of reliance for § 10(b) claims based on options.") The third is McIntire v. China MediaExpress Holdings, Inc., 38 F. Supp. 3d 415, 434 (S.D.N.Y. 2014) ("The Court has found that the market for CCME stock was efficient and is not persuaded that there are any special circumstances that would preclude applying the fraud-on-the-market presumption to options traders.") See also In re Enron Corp. Sec., 529 F. Supp. 2d 644, 754 (S.D. Tex. 2006) ("The Court finds that Dr. Nye's evidence applying the Cammer/Unger/Bell factors to the stock, is sufficient to trigger the fraud-on-the-market presumption for Plaintiffs' § 10(b) claims based on the options"); In re Priceline.com Inc. Sec. Litig., 236 F.R.D. 89, 99 (D. Conn. 2006) ("Option traders and other traders of securities aside from the shares of stock themselves may use the fraud-on-the-market presumption of reliance absent special circumstances compelling a different result.")

Defendants' opposition brief does not address any of the three cases cited by Plaintiff, nor the proposition that a determination that the market for a common stock is efficient suffices to demonstrate that the market for an option on that stock is efficient. Nor does Defendants' brief cite any cases that state the contrary. The Court construes Defendants' silence on these points as concessions that the cases correctly reflect the law and that Plaintiff is correct that a determination that the market for a common stock is efficient is sufficient evidence to demonstrate that the market for an option on that stock is efficient. Dr. Mason presented an analysis of the Cammer factors and concluded that: 1) the market for BDX stock is efficient; and

9

2) the Cammer factors also support the inference that the market for BD options is efficient. In addition, Dr. Mason presented the results of two analyses of put-call parity which, he contended, further support the inference that the market for BD options is efficient.

Defendants' brief offers substantial opposition to only the put-call parity analyses. Defendants' brief points to Dr. Mayhew's critique that Dr. Mason's put-call parity analysis does not prove that the options market is efficient, as well as Dr. Mayhew's opinion that one cannot automatically conclude that the BD options market is efficient just because the market for BDX common stock is efficient. Even if, for the sake of discussion, this Court accepts Defendants' objections as valid, it does not impact the outcome of the market efficiency analysis. Plaintiff and Dr. Mason offer the put-call parity analyses as additional evidence that the market for BD options is efficient. Even if, *arguendo*, Dr. Mayhew's challenge to them is accepted, Plaintiff still has the opinion of Dr. Mason that the application of the Cammer factors to the market for BDX stock also supports the inference that the market for BD options is efficient.

Defendants also offer Dr. Mayhew's opinion that efficiency in an options market does not "follow automatically" from efficiency in the market for the underlying stock. (Def.'s Opp. Br. at 8.) This misses the mark because Dr. Mason did not assert that there was anything automatic about it; he opined that his application of the Cammer factors to the stock also supported an inference of efficiency in the options market.[3] Defendants did not challenge this opinion, nor address the cases in which courts reached the analogous conclusion.

---

[3] There is a difference between the statement that the inference of options market efficiency flows automatically from a determination of efficiency in the market for a particular common stock – which Dr. Mason did not make –, and the statement Dr. Mason made, that his analyses of the Cammer factors in this case supported inferences about the efficiency of both the market for BD common stock and the market for BD options on that stock. Defendant assumes that the two statements are the same.

Defendants' other challenges also miss the mark. As for Defendants' contention that efficiency of the market must be empirically established individually for every option at issue, Dr. Mayhew expressed that opinion without explanation or support. (Mayhew Report at ¶ 20.) The Court has no basis to credit this opinion, which is unpersuasive and detached from the legal framework that the Supreme Court has established. In Basic, the Supreme Court held:

> [N]early every court that has considered the proposition has concluded that where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed.

Basic Inc. v. Levinson, 485 U.S. 224, 247 (1988). Dr. Mayhew's call for separate assessments of efficiency for each particular option series is quite difficult to square with the phrase, "an impersonal, well-developed market for securities." The use of the word "market" here appears to be collective, not individual; in the instant case, the market is the Chicago Board Options Exchange. Basic requires a showing about the efficiency of the market, not of each of the 295 options series potentially at issue in this case (according to Dr. Mayhew's count.) (Mayhew Report at ¶ 8.)

Lastly, as to Defendants' objection that Dr. Mason did not consider the role of expectations of future volatility of stock price in option pricing, this appears to veer into left field: in order to invoke the rebuttable presumption of reliance, Plaintiff does not need to prove that "the traded prices of options fully and accurately reflect new information about *future volatility*." (Def.'s Opp. Br. at 8.) This argument appears remote from the task at hand, which is proving the efficiency of the options market by a preponderance of the evidence.

The Court concludes that Plaintiff has proven the efficiency of the options market by a preponderance of the evidence; there is no contrary evidence in the record. Even if Defendants' critiques of Dr. Mason's put-call parity analyses are accepted, Plaintiff's evidence that the

11

application of the Cammer factors to the market for BD common stock supports a finding of efficiency in the BD options market is unrebutted. Defendants have offered no evidence that the market for the BD options at issue is inefficient. Plaintiff has cited a number of cases in which Courts adopted this reasoning – most notably the Third Circuit in Deutschman –, and Defendants have failed to challenge Plaintiff's understanding of these cases or to present *any* cases to the contrary. It is particularly striking that Defendants offered silence on the subject rather than a contrary case.

This Court finds that Plaintiff has properly invoked the Basic presumption of reliance, and Defendants have failed to rebut the presumption of reliance.

The parties also present a dispute about whether Rule 23(b)(3) requires that a plaintiff establish "that damages are capable of measurement on a classwide basis." Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013). Plaintiff's opening brief cites the Third Circuit's decision in Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 374 (3d Cir. 2015), which states:

> Volvo relies on *Comcast* for the proposition that Plaintiffs must show that "'damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" Volvo Br. 44 (quoting *Comcast*, 133 S. Ct. at 1433). In so doing, Volvo selectively quotes from *Comcast* as though the Court were creating a broad-based rule applicable to Rule 23(b)(3). Yet the Supreme Court specifically noted that it was not breaking any new ground by stating at the beginning of its opinion: "This case thus turns on the straightforward application of class-certification principles." *Comcast*, 133 S. Ct. at 1433. A close reading of the text above makes it clear that the predominance analysis was specific to the antitrust claim at issue. That is eminently sensible. Every question of class certification will depend on the nature of the claims and evidence presented by the plaintiffs.

The Third Circuit has thus clearly held that the statement in Comcast about measuring damages across the entire class did *not* establish "a broad-based rule applicable to Rule 23(b)(3)." Id. Instead, the Third Circuit explained, the statement in Comcast was specific to the particular claim at issue. Id.

12

Nevertheless, Defendants' brief in opposition ignores Plaintiff's argument about the Third Circuit's reading of Comcast and proceeds to quote Comcast in exactly the same way that Volvo did in Neale, which the Third Circuit rejected. Defendants have offered no justification for ignoring the Neale decision; they have cited no authority which overrules Neale in this Circuit. See also In re Modafinil Antitrust Litig., 837 F.3d 238, 260 (3d Cir. 2016) (restating the holding of Neale.) The Court concludes that, pursuant to Neale, Comcast did not establish a broad requirement that damages are capable of measurement on a class-wide basis for class certification under Rule 23(b)(3). Rule 23(b)(3) requires that Plaintiff show that "the questions of law or fact common to class members predominate over any questions affecting only individual members."

Plaintiff contends that a common methodology may be used to measure damages across the proposed class. Plaintiff offers Dr. Mason's proposal for assessment of out-of-pocket loss damages, which is applicable to both stock and option traders. (Mason Report at ¶¶ 103-130.) In opposition, Defendants, ignoring Neale, contend that Plaintiff has failed to establish that damages are susceptible to class-wide measurement. Defendants assert that Plaintiff provides no support for its contention that the damages methodology offered by Dr. Mason is an appropriate means of calculating damage to option traders. Defendants further argue that it is impossible to apply the proposed methodology to option traders.

It is actually Defendants here that offer no support for their position, which is unexplained attorney argument. Defendants' expert did not address the topic of damages. Defendants offer only the attorney argument that Dr. Mason's damages methodology does not make any use of the price of the options purchased or sold, so it must therefore be inapplicable to options. Defendants' brief does not connect this argument to what Dr. Mason actually wrote in

13

the subsection of his report entitled "Calculating Option Price Inflation for BDX Options During the Class Period." (Mason Rpt. at 32.) Given that this subsection is manifestly about calculating price inflation for BD options, Defendants have failed to persuade the Court that the methodology has no connection to the price of options.

In reply, and in further support of the applicability of Dr. Mason's out-of-pocket loss damages measurement methodology to the entire proposed class, Plaintiff cites the Third Circuit's statement that "the out-of-pocket loss damages theory is the traditional measure of damages in a 10b-5 action." Univ. of Puerto Rico Ret. Sys. v. Lannett Co., 2023 WL 2985120, at *4 (3d Cir. Apr. 18, 2023). In support for this assertion, the Puerto Rico decision cites the Third Circuit's precedential decision in Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 297 (3d Cir. 1991), which states:

> While the caselaw involving securities fraud indicates that damages may be measured in several ways, i.e., through theories of "out-of-pocket" losses, "benefit of the bargain" and recission, in both section 10b–5 and common law fraud actions a plaintiff's damages are most commonly calculated as the difference between the price paid for a security and the security's "true value". "The proper measure of damages to reflect the loss proximately caused by the defendants' deceit is the out-of-pocket rule. That rule is the traditional measure of damages in a Rule 10b–5 action...."

Defendants do not dispute Plaintiff's contention that Dr. Mason has proposed a method to calculate out-of-pocket loss. Defendants have offered nothing substantial to challenge Plaintiff's contention that Dr. Mason has proposed a damages methodology that makes use of the traditional measure of damages in a Rule 10-b action. Although Neale established that Comcast and Rule 23(b)(3) do not require a showing that damages can be measured on a class-wide basis consistent with Plaintiff's theories of liability, this Court concludes that Plaintiff has shown that questions of individual damage calculations do not overwhelm common questions of the class.

14

In conclusion, Plaintiff has demonstrated that common issues predominate over all other issues of law and fact in this case, as required by Rule 23(b)(3). The proposed class meets the requirements for certification pursuant to Rule 23(a) and Rule 23(b)(3). None of Defendants' objections to class certification has succeeded. The motion for class certification will be granted.

The Court finds that the proposed Class satisfies the requirements of Rules 23(a) and (b)(3), in that: (a) the members of the Class are so numerous that joinder of all members thereof is impracticable; (b) there are questions of law or fact common to the Class; (c) the claims of the Class Representative are typical of the claims of the other members of the Class; (d) the Class Representative will fairly and adequately represent the interests of the Class; (e) the questions of law or fact common to the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

For these reasons,

**IT IS** on this 3rd day of August, 2023

**ORDERED** that Plaintiff's motion for class certification (Docket Entry No. 130) is **GRANTED**; and it is further

**ORDERED** that, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the action is certified to proceed as a class action, on behalf of the following class:

> All persons and entities who, from November 5, 2019 to February 5, 2020, inclusive (the "Class Period"), purchased or otherwise acquired Becton, Dickinson and Company ("BD") common stock or call options, or sold BD put options, and were damaged thereby (the "Class"). Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of BD or any of BD's subsidiaries or affiliates, members of BD's Board of Directors, and members of the immediate families of each of the foregoing (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing individuals' and entities' legal representatives, heirs, successors, or assigns; and (iv) any entity in which any Defendant has a controlling interest;

and it is further

**ORDERED** that the following claims, as stated in the Fourth Amended Class Action Complaint, are certified for class treatment:

1) Count I, a claim for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq. (the "Exchange Act") against Defendants;

2) Count II, a control person claim pursuant to Section 20(a) of the Exchange Act against Defendant Polen; and

3) Count III, an insider trading claim pursuant to Sections 10(b) and 20A of the Exchange Act against Defendant Polen; and it is further

**ORDERED** that the common issues for the class concern allegations that Plaintiff and members of the Class were all injured by Defendants' conduct, based on these common factual allegations: 1) during the Class Period, Defendants misrepresented and concealed material adverse information concerning issues relating to BD's Alaris pump and FDA scrutiny of the device that precipitated a hold on Alaris shipments; 2) when investors finally learned the truth about Alaris's significant issues, the Company's share price fell by $33.74, or nearly 12 percent, causing losses to all Class members; furthermore, trial of Plaintiff's claims will focus on common issues of falsity, materiality, scienter, and loss causation, and the evidence regarding these elements will be common to all Class members; and it is further

**ORDERED** that Plaintiff IPA satisfies the requirements of Rule 23(a) and is appointed as Class Representative; and it is further

**ORDERED** that Lead Counsel, Kessler Topaz Meltzer & Check, LLP, and Liaison Counsel Carella, Byrne, Cecchi, Brody & Agnello, P.C., satisfy the requirements of Rule 23(g) and are appointed Lead Class Counsel and Liaison Counsel for the Class, respectively.

/s/ Stanley R. Chesler
HON. STANLEY R. CHESLER
United States District Judge