**CARELLA BYRNE CECCHI BRODY & AGNELLO, PC**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700

*Liaison Counsel for the Class*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Sharan Nirmul
David A. Bocian
Joshua E. D'Ancona
Margaret E. Mazzeo
Vanessa M. Milan (admitted *pro hac vice*)
Nathaniel C. Simon (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Class Representative Industriens Pensionsforsikring A/S and Class Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIENS PENSIONSFORSIKRING A/S, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BECTON, DICKINSON AND COMPANY and THOMAS E. POLEN,<br><br>　　　　　　　　Defendants. | Case No. 2:20-cv-02155-SRC-CLW<br><br>Hon. Stanley R. Chesler, District Court Judge<br><br>Hon. Cathy L. Waldor, Magistrate Judge |

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................1

II.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS
        REASONABLE AND SHOULD BE APPROVED ......................................5

        A.      Class Counsel Is Entitled to a Reasonable Fee from the
                Common Fund.................................................................................5

        B.      The Court Should Award a Reasonable Percentage of the
                Common Fund.................................................................................6

        C.      The Requested Fee Is Reasonable Under Both the Percentage-
                of-Recovery Method and the Lodestar Method ...................................8

                1.      The Requested Fee Is Reasonable Under the Percentage-
                        of-Recovery Method ...................................................................8

                2.      The Reasonableness of the Requested Fee Is Confirmed
                        by a Lodestar Cross-Check .......................................................10

        D.      The Factors Considered by Courts in the Third Circuit Confirm
                that the Requested Fee Is Fair and Reasonable .................................12

                1.      The Size of the Common Fund Created and the Number
                        of Beneficiaries .......................................................................13

                2.      Absence of Objections from Class Members to Date...............14

                3.      The Skill and Efficiency of the Attorneys Involved.................14

                4.      The Complexity and Duration of the Litigation .......................16

                5.      The Risk of Non-Payment .........................................................19

                6.      The Significant Time Devoted to this Case by Plaintiff's
                        Counsel.....................................................................................20

                7.      The Fee Requested Is In-Line with Fees Awarded in
                        Similar Cases...........................................................................21

       8.    Impact of Governmental Investigations....................................21

       9.    The Requested Fee Is In-Line with Contingent Fee Arrangements Negotiated in Non-Class Litigation ..................22

III.    PLAINTIFF'S COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ....................................22

IV.    CLASS REPRESENTATIVE SHOULD BE AWARDED ITS REASONABLE COSTS UNDER THE PSLRA .........................................25

V.    CONCLUSION...................................................................................27

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Auto Parts, Inc. Sec. Litig.*,
2022 WL 20806294 (D. Del. June 13, 2022) ......................................................9

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
2013 WL 12153597 (D.N.J. Jan. 30, 2013).......................................................9

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)..........................................................................14

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ...................................................... 7, 21-22

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
772 F.3d 125 (2d Cir. 2014) .............................................................................27

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985).........................................................................................6

*Blum v. Stenson*,
465 U.S. 886 (1984) (Brennan, J., concurring) ................................................22

*Bodnar v. Bank of Am., N.A.*,
2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) ....................................................12

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................... 5-6

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ......................................................................7, 14

*Dartell v. Tibet Pharms, Inc.*,
2017 WL 2815073 (D.N.J. June 29, 2017).......................................................16

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............................................... 16-17

iii

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009) ...............................................................13, 22

*In re Genta Sec. Litig.*,
2008 WL 2229843 (D.N.J. May 28, 2008)..................................................16

*In re Gilat Satellite Networks, Ltd.*,
2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...........................................26

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................................................8

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ..................................................................6, 12

*Harshbarger v. Penn Mut. Life Ins. Co.*,
2017 WL 6525783 (E.D. Pa. Dec. 20, 2017)........................................... 7-8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..................................................................................13

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000).......................................................12, 15, 22

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013).....................................................................8

*Kanefsky v. Honeywell Int'l Inc.*,
2022 WL 1320827 (D.N.J. May 3, 2022)...............................................23, 24

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
2009 WL 4730185 (D.N.J. Dec. 4, 2009)....................................................8

*Local 703 v. Regions Fin. Corp.*,
2015 WL 5626414 (N.D. Ala. Sept. 14, 2015)...........................................10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)............................................27

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
2010 WL 547613 (D.N.J. Feb. 9, 2010) .................................................. 6-7

*Missouri v. Jenkins*,
491 U.S. 274 (1989)......................................................................................11

*In re Ocean Power Techs., Inc.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...................................................7, 22

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ...........................................................6

*In re Processed Egg Prods. Antitrust Litig.*,
2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ........................................................22

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ....................................................13, 21, 22

*In re Remicade Antitrust Litig.*,
2023 WL 2530418 (E.D. Pa. Mar. 15, 2023) ....................................................11

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) .............................................................7, 10

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
2008 WL 9447623 (D.N.J. Dec. 9, 2008).........................................................27

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001).....................................................................23

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012).........................................................19

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013) ...................................................10, 27

*Schuler v. Meds. Co.*,
2016 WL 3457218 (D.N.J. June 24, 2016)...................................................2, 13

*Stevens v. SEI Invs. Co.*,
2020 WL 996418 (E.D. Pa. Feb. 28, 2020)...................................................4, 12

*In re Suboxone Antitrust Litig.*,
2023 WL 8437034 (E.D. Pa. Dec. 4, 2023)................................................10, 12

v

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ...............................................................................7, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).............................................................................................6

*In re Veritas Software Corp. Sec. Litig.*,
  396 F. App'x 815 (3d Cir. 2010) ...........................................................................9

*In re ViroPharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016)...............................................4, 13, 23

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  2017 WL 4167440 (E.D. Pa. Sep. 20, 2017) .....................................................16

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir.
  1986) ..............................................................................................................15, 18

*In re Wilmington Tr. Sec. Litig.*,
  2018 WL 6046452 (D. Del. Nov. 19, 2018)..................................................*passim*

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................6

## Statutes

15 U.S.C. § 78u-4(a)(6) .......................................................................................7

15 U.S.C. § 78u4(a)(4)........................................................................................25

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure ("Rules"), Court-appointed Class Counsel Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz" or "Class Counsel") respectfully submits this Memorandum of Law in support of its Motion for: (i) an award of attorneys' fees for Plaintiff's Counsel[1] in the amount of 25% of the Settlement Fund; (ii) payment of $843,144.64 for expenses reasonably and necessarily incurred by Plaintiff's Counsel in prosecuting and resolving the Action; and (iii) reimbursement of $84,856.40 to Court-appointed Class Representative Industriens Pensionsforsikring A/S ("Industriens" or "Class Representative") for its costs directly related to representing the Class in the Action, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2]

## I.     INTRODUCTION

Following nearly four years of dedicated litigation efforts, Class Counsel successfully negotiated a settlement of the Action with Defendants. The Settlement, if approved by the Court, will resolve this litigation in its entirety in exchange for

---

[1] Plaintiff's Counsel consists of Class Counsel Kessler Topaz and Court-appointed Liaison Counsel Carella Byrne Cecchi Brody & Agnello, P.C. (f/k/a Carella Byrne Cecchi Olstein Brody & Agnello, P.C.) ("Carella Byrne").

[2] All capitalized terms not defined herein have the meanings set forth in the Stipulation and Agreement of Settlement dated as of December 19, 2023 (ECF No. 182-2) and in the Declaration of Joshua E. D'Ancona ("D'Ancona Declaration" or "D'Ancona Decl.") filed herewith. Citations to "¶ _" herein refer to paragraphs in the D'Ancona Declaration and citations to "Ex. _" herein refer to exhibits to the D'Ancona Declaration. All internal citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

Defendants' cash payment of $85 million. The Settlement represents an excellent result for the Class. It not only eliminates the risks of continued litigation—including overcoming Defendants' challenges to liability, loss causation, and damages, as well as the uncertainty, delay, and expense of litigating the Action through the completion of discovery, summary judgment, trial, and post-trial appeals—but it also recovers a significant portion of the Class's damages.[3]

In order to achieve this recovery, Class Counsel—as the sole Court-appointed lead counsel for the Class—undertook significant efforts, vigorously pursuing this Action (which the Court dismissed initially) against a highly-reputable defense firm on a fully contingent basis. As detailed in the D'Ancona Declaration,[4] the Settlement was reached only after Class Counsel conducted a far-reaching investigation

---

[3] Based on expert estimates employing various reasonable assumptions, the Class's maximum aggregate damages are between approximately $550 million and $850 million. ¶ 129. The Settlement represents approximately 10-15% of this damages range. While each securities class action reflects its own unique risks, the recovery obtained in this Action compares favorably to recoveries obtained in other securities cases and approved by courts. *See In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (noting "Third Circuit median recovery of 5% of damages in class action securities litigation"); *Schuler v. Meds. Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (finding recovery of 4% of estimated recoverable damages fell within range of previous settlement approvals).

[4] The D'Ancona Declaration is an integral part of this submission and, for the sake of brevity herein, Class Representative respectfully refers the Court to the D'Ancona Declaration for a detailed description of, *inter alia*: the history of the Action and Class Counsel's extensive litigation efforts (¶¶ 20-109); the settlement negotiations (¶¶ 110-13); and the risks of continued litigation (¶¶ 114-31).

2

(including over 200 witness interviews), drafted four detailed complaints, successfully briefed and argued a motion for leave to amend, opposed three motions to dismiss (defeating the third in substantial part), obtained certification of the Class, and pursued myriad sources for discovery, including propounding document subpoenas on 10 third parties and litigating three separate discovery disputes. As a result of these efforts, Class Counsel obtained and analyzed over two million pages of documents produced by Defendants and third parties and participated in five depositions (while preparing to take 20 more). Class Counsel also engaged in protracted settlement negotiations with Defendants, including the exchange of mediation briefing and participation in three mediation sessions (over the course of three months), with the assistance of David M. Murphy, Esq. of Phillips ADR Enterprises, P.C., an experienced and highly respected mediator. This dedicated effort resulted in a significant cash recovery for the Class.

As compensation for these efforts and the commitment to bringing the Action to a successful conclusion for the Class, as well as the significant risk of prosecuting and funding this Action with no guarantee of recovery, Class Counsel, on behalf of Plaintiff's Counsel, seeks attorneys' fees in the amount of 25% of the Settlement Fund. As set forth herein, the requested 25% fee (i.e., $21,250,000 plus interest) is well within the range of fees awarded in other securities class actions. Further, the requested fee represents a multiplier of approximately 1.4 on Plaintiff's Counsel's

lodestar, which is on the lower end of the range of multipliers typically awarded in class actions with significant contingency risk like this case.[5] Class Counsel also requests payment from the Settlement Fund of $928,001.04 in Litigation Expenses (which *includes* the amount requested by Class Representative). Moreover, Class Counsel's fee and expense request is authorized by and made pursuant to an agreement entered into with Class Representative—a sophisticated, institutional investor and precisely the type of fiduciary envisioned by Congress when enacting the PSLRA—at the outset of the Action.[6]

The reaction of the Class to date also supports Class Counsel's fee and expense request. Pursuant to the Court's Preliminary Approval Order (ECF No. 186), 200,814 Postcard Notices and 4,131 Notices have been mailed to potential Class Members and nominees.[7] These notices advise recipients that Class Counsel would be applying to the Court for attorneys' fees in an amount not to exceed 25%

---

[5] *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (noting multipliers "ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis").

[6] *See* Declaration of Jan Østergaard submitted on behalf of Industriens (Ex. 1), ¶¶ 8-9. *See also In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *15 (E.D. Pa. Jan. 25, 2016) ("Where the [l]ead [p]laintiff approves the [l]ead [p]laintiff's counsel's request[ed] fee award – as [l]ead [p]laintiff does here – the Court should afford the fee requested a ***presumption of reasonableness***.").

[7] *See* Declaration of Luiggy Segura submitted on behalf of the Court-authorized Claims Administrator JND Legal Administration, LLC ("JND") (Ex. 2), ¶ 10.

of the Settlement Fund, plus Litigation Expenses in an amount not to exceed $1 million, plus interest. Ex. 2, Exs. 1-3. While the April 1, 2024 deadline to object to Class Counsel's fee and expense request has not yet passed, to date, there have been no objections to the maximum fee and expense amounts set forth in the notices. ¶ 145.[8]

For the reasons discussed herein, Class Counsel respectfully submits that its requested fee is fair and reasonable under the applicable legal standards. Class Counsel also respectfully submits that the Litigation Expenses for which it seeks payment were reasonable and necessary for the successful prosecution of the Action and that the request pursuant to the PSLRA for reimbursement to Class Representative for the time it dedicated to the Action on behalf of the Class is likewise reasonable and appropriate. Accordingly, Class Counsel requests that its Motion for Attorneys' Fees and Litigation Expenses be granted in full.

## II. CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

### A. Class Counsel Is Entitled to a Reasonable Fee from the Common Fund

The propriety of awarding attorneys' fees from a common fund is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or

---

[8] Class Counsel will address any objections received in its reply to be filed on April 15, 2024.

a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at \*9 (D.N.J. July 29, 2013) ("[W]e agree with the long line of common fund cases that hold that attorneys whose efforts create, discover, increase, or preserve a common fund are entitled to compensation.") (alteration in original).

Further, as courts recognize, in addition to providing just compensation, awards of fair attorneys' fees from a common fund ensure that "competent counsel continue[s] to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). Indeed, the Supreme Court has emphasized that private securities actions, such as this Action, provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights*, *Ltd.*, 551 U.S. 308, 313 (2007).

**B.    The Court Should Award a Reasonable Percentage of the Common Fund**

An award of attorneys' fees and the method used to determine that award are

"within the discretion of the court." *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010). In the Third Circuit, the percentage-of-recovery method for evaluating fees is "generally favored" in cases, such as this one, involving a settlement that creates a common fund. *See Sullivan v. DB Invs.*, *Inc.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). The percentage-of-recovery method is almost universally preferred in common fund cases because it closely aligns the interests of counsel and the class. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016).[9] The Third Circuit recommends that the percentage award be "cross-check[ed]" against the lodestar method to ensure its reasonableness. *See Sullivan*, 667 F.3d at 330; *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 WL 6525783, at *2 (E.D. Pa. Dec. 20, 2017) ("The reasonableness of attorneys' fee

---

[9] The use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

awards in common fund cases ... is generally evaluated using a [percentage of recovery] approach followed by a lodestar cross-check.").

### C. The Requested Fee Is Reasonable Under Both the Percentage-of-Recovery Method and the Lodestar Method

#### 1. The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method

The requested 25% fee is reasonable under the percentage-of-recovery method. While there is no absolute rule, courts in this Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund, *see In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995), and most commonly range from 25% to 33% of the recovery. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (same).

A review of attorneys' fees awarded in securities class actions in this Circuit strongly supports the reasonableness of a 25% fee. *See, e.g.*, Order, *Chabot v. Walgreens Boots Alliance, Inc.*, No. 1:18-cv-02118-JPW, at 2-3 (M.D. Pa. Feb. 7, 2024), ECF No. 327 (awarding 30% of $192.5 million settlement); Order, *Howard v. Arconic Inc.*, No. 2:17-cv-01057-MRH, at 2 (W.D. Pa. Aug. 9, 2023), ECF No. 253 (awarding 33⅓% of $74 million settlement); Order, *Odeh v. Immunomedics, Inc.*, No. 2:18-cv-17645-ESK, at 2 (D.N.J. June 15, 2023), ECF No. 286 (awarding

8

29.5% of $40 million settlement); *In re Advance Auto Parts, Inc. Sec. Litig.*, 2022 WL 20806294, at *1 (D. Del. June 13, 2022) (awarding 25% of $49.25 million settlement); Order, *Pelletier v. Endo Int'l PLC*, No. 2:17-cv-05114, at 1-3 (E.D. Pa. Apr. 8, 2022), ECF No. 417 (awarding 25% of $63.4 million settlement); *Wilmington Tr.*, 2018 WL 6046452, at *8 (awarding 28% of $210 million settlement); Order, *San Antonio Fire & Police Pension Fund v. Dole Food Co.*, No. 1:15-cv-1140-LPS, at 2 (D. Del. July 18, 2017), ECF No. 100 (awarding 25% of $74 million settlement); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2013 WL 12153597, at *1 (D.N.J. Jan. 30, 2013) (awarding 27.5% of $164 million settlement); *see also In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 818-19 (3d Cir. 2010) (affirming fees of 30% on $21.5 million settlement).

In addition, Class Counsel's fee request is consistent with fees awarded by courts in other Circuits in similarly-sized or larger securities class action settlements. *See, e.g.*, Order, *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 1:15-cv-3187-SJC, at 2 (N.D. Ill. Oct.11, 2022), ECF No. 526 (awarding 27.5% of $105 million settlement); Order, *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, at 1-2 (C.D. Cal. Mar. 9, 2021), ECF No. 400 (awarding 25% of $154.7 million settlement); Order, *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031-TSE-MSN, at 2 (E.D. Va. June 7, 2019), ECF No. 462 (awarding 28% of $108 million settlement); Order, *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 1:08-

9

cv-5653-PAC, at 2-3 (S.D.N.Y. May 10, 2016), ECF No. 277 (awarding 28% of $110 million settlement); *Local 703 v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million settlement).

Thus, it is respectfully submitted that Class Counsel's 25% fee request is reasonable and comparable to customary fees awarded in these types of cases.

### 2.    The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check

As noted above, the Third Circuit recommends district courts use counsel's lodestar as a "cross-check" to determine whether a requested fee is reasonable. *See Sullivan*, 667 F.3d at 330; *In re Suboxone Antitrust Litig.*, 2023 WL 8437034, at *14 (E.D. Pa. Dec. 4, 2023). "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid*, 396 F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).

Here, through March 1, 2024, Plaintiff's Counsel have devoted over 29,000 hours to the prosecution and resolution of this Action. ¶ 158. Plaintiff's Counsel's lodestar—which is derived by multiplying the hours spent on the litigation by each firm's hourly rates for attorneys, paralegals, and other professional support staff—

10

is $15,527,405.50. *Id.*[10]

The hourly rates utilized by Plaintiff's Counsel in calculating their lodestar range from: (i) $780 to $1,300 per hour for partners; (ii) $750 per hour for counsel; (iii) $370 to $600 per hour for other attorneys; (iv) $225 to $405 per hour for paralegals; and (v) $370 to $660 per hour for in-house investigators. ¶ 158, fn. 25.[11] Class Counsel believes these hourly rates are within the range of reasonable rates for attorneys working on sophisticated class action litigation in this Circuit. *See, e.g., In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *28 (E.D. Pa. Mar. 15, 2023) (finding that class counsel hourly rates ranging from $115 to $1,325 "fall well within the range of rates charged by other attorneys in this market"); *Wilmington Tr.*, 2018 WL 6046452, at *10 n.4 (finding attorney hourly rates from $295 to $1,250 reasonable).[12]

---

[10] The Supreme Court has approved the use of current hourly rates to calculate the lodestar as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

[11] By way of comparison, Defendants' Counsel in the Action, Winston & Strawn LLP, reported hourly rates ranging from $725 to $875 for associates and as high as $1,795 for a partner in a recent fee application. *See Alex Morgan, et al. v. United States Soccer Fed'n, Inc.*, No. 2:19-cv-01717-RGK-AGR, at 7-9 (C.D. Cal. Nov. 1, 2022), ECF No. 334-1. These rates are in line with, or exceed, Plaintiff's Counsel's rates.

[12] The fee and expense declaration submitted on behalf of Kessler Topaz (*see* Ex. 3) includes a description of the legal background and experience of its attorneys, which support the hourly rates submitted. Plaintiff's Counsel's hourly rates are fair and reasonable for this legal market.

Accordingly, the requested 25% fee (i.e., $21,250,000 plus interest), represents a multiplier of approximately 1.4 on Plaintiff's Counsel's lodestar. ¶ 158. This multiplier falls well within the range of lodestar multipliers regularly awarded by courts in this Circuit. *See Suboxone*, 2023 WL 8437034, at *18 ("The Third Circuit has recognized that lodestar multipliers from one to four are frequently awarded in class cases."); *Stevens*, 2020 WL 996418, at *13 (noting multipliers "ranging from 1 to 8 are often used in common fund cases"); *Bodnar v. Bank of Am., N.A.*, 2016 WL 4582084, at *6 (E.D. Pa. Aug. 4, 2016) (finding 4.69 multiplier with respect to $9,075,000 fee award "appropriate and reasonable"); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000) (approving 2.7 multiplier and noting it to be "well within the range of those awarded in similar cases").

Accordingly, the lodestar cross-check firmly supports the reasonableness of the 25% fee request.

### D.   The Factors Considered by Courts in the Third Circuit Confirm that the Requested Fee Is Fair and Reasonable

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in common fund cases. *See, e.g.*, *Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."). Nonetheless, in exercising that broad discretion, the Third Circuit has noted that a district court should consider the following factors in determining a fee award:

12

(1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998). These factors "need not be applied in a formulaic way. . . and in certain cases, one factor may outweigh the rest." *Diet Drugs*, 582 F.3d at 545; *Schuler*, 2016 WL 3457218, at *9. Here, each of these factors supports the 25% fee request.

### 1. The Size of the Common Fund Created and the Number of Beneficiaries

The result achieved is a major factor to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *ViroPharma*, 2016 WL 312108, at *16.

Here, Class Counsel, on behalf of Class Representative, secured a Settlement that provides for a substantial and certain payment of $85,000,000. The Settlement provides a favorable recovery when viewed both in the aggregate and as a proportion

13

of estimated damages. ¶ 67; *see supra* n.3. Indeed, this recovery will benefit a large number of investors. To date, JND has mailed 200,814 Postcard Notices and 4,131 Notices to potential Class Members and nominees. *See* Ex. 2, ¶ 10. While the claim-submission deadline is not until June 14, 2024, a large number of Class Members are expected to submit Claims in order to be eligible to receive a payment from the Net Settlement Fund.

### 2.    Absence of Objections from Class Members to Date

The notices to the Class provide that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund. Ex. 2, Exs. 1-3. The notices also advise Class Members that they can object to the fee request and explain the procedures for doing so. *Id*. While the deadline for objecting has not yet passed, no objections have been received to date. ¶ 145; *See Cendant*, 264 F.3d at 235 ("[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement").

### 3.    The Skill and Efficiency of the Attorneys Involved

Class Counsel, assisted by Court-appointed Liaison Counsel, has achieved a highly favorable outcome for the benefit of the Class. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("[t]he single clearest factor reflecting the quality of class counsels' services to the class are the results obtained")

14

(alteration in original). The recovery obtained is the direct result of the significant efforts of skilled attorneys and staff working at their direction who possess substantial experience in the prosecution of complex securities class actions.[13] Class Counsel's success in identifying key confidential witnesses through its investigation, defeating Defendants' third motion to dismiss in substantial part, overcoming an opposition to a motion to amend to include option traders in the Class, obtaining certification of the Class (including options traders), and completing a substantial amount of fact discovery, created the circumstances in which Class Representative was able to negotiate an $85 million Settlement. In addition, the evident preparedness, experience, and skill of Class Counsel to litigate the case through trial and appellate levels provided the leverage to secure the very favorable recovery for the benefit of the Class.

The quality of opposing counsel is also relevant in evaluating the quality of the services rendered by Plaintiff's Counsel. *See, e.g.*, *Ikon*, 194 F.R.D. at 195; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Plaintiff's Counsel were opposed by Winston & Strawn LLP, a prominent firm with deep experience and skill

---

[13] The experience of Kessler Topaz is set forth in its firm resume. *See* Ex. 3-C.

in the securities litigation arena. The ability of Class Counsel to obtain a favorable outcome for the Class despite this formidable opposition further confirms the quality of their representation. *See Wilmington Tr.*, 2018 WL 6046452, at *8 ("Plaintiffs' Counsel's ability to successfully litigate against and negotiate with [Defendants' Counsel] further shows Plaintiffs' Counsel's legal prowess.").

### 4.    The Complexity and Duration of the Litigation

Securities litigation is regularly acknowledged to be particularly complex and expensive, usually requiring expert testimony on issues including loss causation and damages. *See, e.g.*, *Dartell v. Tibet Pharms, Inc.*, 2017 WL 2815073, at *10 (D.N.J. June 29, 2017) (approving counsel's one-third fee request and noting that "due to the complexity and nature of securities litigation, any further litigation would likely be time consuming as well as expensive due to the need for experts"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440 at *8 (E.D. Pa. Sep. 20, 2017) (approving counsel's fee request and noting that "[s]ecurities litigation is tough stuff"); *In re Genta Sec. Litig.*, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . .  Trial on [scienter and loss causation] issues would [be]

16

lengthy and costly to the parties"). Here, Class Counsel addressed numerous difficult issues in opposing Defendants' three motions to dismiss and in connection with class certification, many of which necessitated consultation with an economic expert.[14]

The $85,000,000 recovery is substantial in light of the complexity of this case and the significant risks and expenses the Class would have faced at trial. At the time the Settlement was reached, Class Counsel, on behalf Class Representative, had, *inter alia*: (i) conducted an extensive investigation into Defendants' allegedly fraudulent misrepresentations, including interviews with former BD employees and a thorough review of publicly available information (¶¶ 23-26, 32, 44-45); (ii) drafted four detailed complaints (¶¶ 27, 33, 46, 57); (iii) researched and opposed three rounds of motion to dismiss briefing (¶¶ 31, 37, 48); (iv) successfully moved for class certification (¶¶ 99-105); (v) engaged in extensive fact discovery, including participating in numerous meet and confers, obtaining and analyzing more than two million pages of documents, serving and responding to interrogatories, serving subpoenas on third parties, and deposing two fact witnesses and preparing to depose 20 more (¶¶ 63-98); (vi) researched, briefed and argued a motion to amend (¶¶ 57-60); and (vii) engaged in an arm's-length mediation process, including three separate

---

[14] The specific litigation risks faced in the Action are addressed in the D'Ancona Declaration (¶¶ 114-31) and in the accompanying Settlement Memorandum (§ II.C.2).

17

mediation sessions and the preparation of detailed mediation statements (¶ 110).

Had this Action continued, Class Representative, through Class Counsel, would have been required to carry its case through the completion of all fact discovery (including depositions, further interrogatories and a pending discovery dispute) as well as merits expert discovery. After the close of expert discovery, it would be highly likely that Defendants would move for summary judgment, which would have to be briefed and argued. Before trial, a pre-trial order would have to be prepared, proposed jury instructions submitted, and motions *in limine* filed and argued. Substantial time and expense would need to be expended in preparing the case for trial, and the trial itself would be expensive and highly uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of post-trial motions and a risky appellate process. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome.[15] Considering the magnitude, expense, complexity and risks of this securities case—especially when compared against the significant and certain recovery achieved by the Settlement—Class Counsel's fee request is

---

[15] *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("Even a victory at trial is not a guarantee of ultimate success. If [Class Representative was] successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.").

reasonable.

### 5.      The Risk of Non-Payment

Class Counsel undertook this Action on a contingent-fee basis—assuming the risk that the case would yield no or very little recovery and leave it uncompensated for its time and out-of-pocket expenses. As detailed in the D'Ancona Declaration, Class Counsel faced numerous significant risks in this case that could have resulted in no recovery or a recovery less than the Settlement Amount. "Courts routinely recognize that the risks created by undertaking an action on a contingency fee basis militate[] in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012). Here, the risk of non-payment was heightened following the Court's initial dismissal of the Action at the motion to dismiss stage.

Plaintiff's Counsel have not been compensated for any of their time or expenses since the case began in February 2020. Since that time (through March 1, 2024), Plaintiff's Counsel have expended 29,265 hours in the prosecution of this litigation with a resulting lodestar of $15,527,405.50 and incurred $843,144.64 in expenses.[16] Any fee award has always been at risk, and completely contingent on the

---

[16] Class Counsel will continue to perform legal work on behalf of the Class should the Court approve the Settlement. Additional resources will be expended assisting Class Members with their Claim Forms and related inquiries and working with the JND to ensure the smooth progression of claims processing. ¶ 158, fn. 26.

result achieved and on this Court's discretion in awarding fees and expenses. Unlike defense counsel—who typically receive payment on a timely and regular basis throughout a case, win or lose—Plaintiff's Counsel carried the significant risk of not only funding the expenses of this Action, but also that they would receive no compensation whatsoever. This factor strongly favors approval of the requested fee.

### 6. The Significant Time Devoted to this Case by Plaintiff's Counsel

As set forth above and detailed in the D'Ancona Declaration, since the inception of the case, Plaintiff's Counsel have expended substantial resources and effort towards the prosecution of this Action on behalf of the Class. This includes, *inter alia*, working extensively with an economic expert; seeking out and interviewing former BD employees with information to support the allegations and performing other investigative steps; researching complex issues of law; preparing and filing four detailed complaints; researching and briefing three motions to dismiss; briefing a motion to amend to include option traders' claims; engaging in substantial fact discovery; preparing Class Representative's motion for class certification, including an accompanying expert report on market efficiency and damages; reviewing and analyzing over two million pages of documents produced during discovery; deposing two fact witnesses and preparing to depose 20 more; preparing for mediation; and engaging in extensive settlement negotiations. ¶¶ 20-113. The foregoing represents a very significant commitment of time, personnel, and

20

out-of-pocket expenses by Plaintiff's Counsel, while taking on the risk of recovering nothing for these efforts.

### 7.     The Fee Requested Is In-Line with Fees Awarded in Similar Cases

As discussed above in Section II.C.1, the requested fee of 25% of the Settlement Fund is well within the range of fees awarded in similar cases, when considered as a percentage of the fund or on a lodestar basis. Accordingly, this factor strongly supports approval of the requested fee.

### 8.     Impact of Governmental Investigations

The Third Circuit has advised district courts to examine whether class counsel benefited from governmental investigations or enforcement actions concerning the alleged wrongdoing, because this can indicate whether or not counsel should be given full credit for obtaining the value of the settlement fund for the class. *See Prudential*, 148 F.3d at 338. While BD disclosed in May 2021 that the SEC Enforcement Division had commenced an investigation relating to matters concerning Alaris pumps, this was more than a year ***after*** this Action was filed and to date, no government investigation or prosecution has produced an admission of fault by Defendants. Accordingly, the entire value of the Settlement is attributable to the efforts undertaken by Plaintiff's Counsel in this litigation. This fact thus supports the reasonableness of the requested fee. *See, e.g.*, *AT&T*, 455 F.3d at 173.

21

### 9.    The Requested Fee Is In-Line with Contingent Fee Arrangements Negotiated in Non-Class Litigation

A 25% fee is also consistent with typical attorneys' fees in non-class cases. *See Ocean Power*, 2016 WL 6778218, at *29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g.*, *id*.; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"); *Blum v. Stenson*, 465 U.S. 886, 903 n.* (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Class Counsel's requested fee of 25% is fully consistent with these private standards.

Accordingly, the application of the Third Circuit's factors makes clear that Class Counsel's fee request is fair and reasonable.[17]

## III.    PLAINTIFF'S COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Class Counsel also respectfully requests that this Court approve payment of $843,144.64 for the expenses that Plaintiff's Counsel incurred in connection with

---

[17] Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Diet Drugs*, 582 F.3d at 541; *Prudential*, 148 F.3d at 339-40. This Settlement does not, because Class Counsel believes that an all-cash recovery is the best remedy for the injury suffered by the Class. In these circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees" *In re Processed Egg Prods. Antitrust Litig.*, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

22

this Action. All of these expenses, which are set forth in declarations submitted by Plaintiff's Counsel, were reasonably necessary for the prosecution and settlement of this Action. Counsel in a class action are entitled to recover expenses that were "adequately documented and reasonable and appropriately incurred in the prosecution of the class action." *ViroPharma*, 2016 WL 312108, at *18; *accord In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001); *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *12 (D.N.J. May 3, 2022).

The expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, document management costs, expert/consultant fees, online research, court reporting and transcripts, travel-related expenses, photocopying, postage/mail services, and mediation. These expense items are not duplicated in Plaintiff's Counsel's hourly rates.

The largest expense—totaling $545,734.00 or approximately 65% of Plaintiff's Counsel total expenses—was for the retention of Class Representative's economic expert, BVA Group. ¶ 165. As detailed in the D'Ancona Declaration, Class Counsel worked extensively with BVA Group at different stages of the Action. This expert was critical to the prosecution and resolution of the Action as its expertise allowed Class Counsel to fully frame the issues, gather relevant evidence, make a realistic assessment of provable damages, structure resolution of the claims,

23

and develop a fair and reasonable plan for allocating the Settlement proceeds to the Class. *Id*. In addition, Dr. Mason of BVA Group submitted two expert reports and was deposed in connection with the Class Certification Motion. *Id*.

The second largest component of Plaintiff's Counsel's expenses—i.e., $152,081.39 or roughly 18% of Plaintiff's Counsel total expenses—reflects the costs for an outside vendor to host the document database that enabled Class Counsel to effectively and efficiently search and review over two million pages of documents produced by Defendants and third parties in the Action, and host and review Class Representative's own documents for potential production. ¶ 166. The ability to code, search, and pull documents to be utilized as exhibits at depositions was of the utmost importance to the development of the record of evidence in this Action. In addition, this vendor also offered foreign data management capabilities which were required in this Action given Industriens' location in Europe. *Id*.

In addition to the foregoing expenses, Plaintiff's Counsel also incurred: (i) $63,125.00 for the Parties' formal mediation sessions and ongoing settlement negotiations conducted by Mr. Murphy; (ii) $37,215.45 for online research; (iii) $13,555.35 for travel-related expenses; (iv) $10,873.05 for court reporters, videographers, and transcripts in connection with the depositions Class Counsel took or defended in the Action; and (v) $5,596.38 for document-reproduction costs. ¶¶ 168-69, Exs. 3-B, 4-B. The notices informed recipients that Class Counsel would

24

seek reimbursement of Litigation Expenses (which might include reimbursement of the reasonable costs incurred by Class Representative as discussed below) in an amount not to exceed $1 million, plus interest. The total amount of expenses requested is below the amount set forth in the notices and, to date, no objections to the maximum expense request set forth in the notices have been received. ¶ 162. As such, Class Counsel's request for Litigation Expenses should be approved.

## IV.   CLASS REPRESENTATIVE SHOULD BE AWARDED ITS REASONABLE COSTS UNDER THE PSLRA

Class Counsel also seeks an award of $84,856.40 in costs incurred by Class Representative directly related to its representation of the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u4(a)(4). Here, Class Representative Industriens seeks an award based on the time dedicated by its employees in furthering and supervising the Action.

Specifically, Class Representative took an active role in the Action since its inception and has been fully committed to pursuing the claims on behalf of the Class. During the course of the litigation, Class Representative, *inter alia*: communicated with Class Counsel regarding litigation strategy and significant case developments; reviewed and commented on court filings and other material documents; worked with Class Counsel to respond to discovery requests, including by drafting and

finalizing interrogatory responses and searching for and producing potentially relevant documents from numerous custodians; consulted with Class Counsel regarding settlement negotiations; and evaluated and approved the proposed Settlement. *See* Ex. 1, ¶¶ 4-6. In addition, a representative from Industriens prepared for and provided testimony at a deposition in connection with the Class Certification Motion. *Id.*, ¶ 5. These efforts required several representatives of Industriens to dedicate considerable time and resources to the Action that they would have otherwise devoted to their regular duties. *See Wilmington Tr.*, 2018 WL 6046452, at *10 (awarding institutional lead plaintiffs their costs related to time spent on case where "their employees took an active role in the litigation, including reviewing significant pleadings and briefs, communicating regularly with Lead Counsel, authorizing settlement discussions, monitoring the progress of settlement negotiations, and approving the settlements").[18] The amount requested by Class Representative is based on the number of hours employees from Industriens committed to the Action, multiplied by a reasonable hourly rate for each employee, and is supported by a declaration that provides the name, title, and hours of each

---

[18] *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where, as here, "the tasks undertaken by employees of [l]ead [p]laintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation").

employee.

Courts routinely grant awards to plaintiffs for their time and effort spent in similar cases. *See, e.g.,* Order, *In re Equifax Inc. Sec. Litig.*, No. 1:17-cv-03463-TWT, at 4 (N.D. Ga. June 26, 2020), ECF No. 327 (awarding $121,375.00 to Union Asset Management Holding AG in PSLRA case); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 772 F.3d 125, 132-133 (2d Cir. 2014) (affirming $453,003.04 award to representative plaintiffs for time spent by their employees); *Schering-Plough*, 2013 WL 5505744 (awarding aggregate of $109,865.31 to group of four plaintiffs); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $144,657.14 to New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008) (awarding $150,000 to lead plaintiffs). Accordingly, the award sought by Class Representative is reasonable and justified and should be granted.

## V.    CONCLUSION

For the reasons stated herein and in the D'Ancona Declaration, Class Counsel respectfully requests that the Court: (i) award attorneys' fees in the amount of 25% of the Settlement Fund; (ii) award $843,144.64 for Plaintiff's Counsel's reasonable expenses, plus interest; and (iii) award $84,856.40 to Class Representative for its costs related to representing the Class in the Action.

Dated:  March 18, 2024

s/ James E. Cecchi
**CARELLA BYRNE CECCHI
BRODY & AGNELLO, PC**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Liaison Counsel for the Class*

Respectfully submitted,


Sharan Nirmul
David A. Bocian
Joshua E. D'Ancona
Margaret E. Mazzeo
Vanessa M. Milan (admitted *pro hac vice*)
Nathaniel C. Simon (admitted *pro hac vice*)
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
dbocian@ktmc.com
jdancona@ktmc.com
mmazzeo@ktmc.com
vmilan@ktmc.com
nsimon@ktmc.com

*Counsel for Lead Plaintiff Industriens
Pensionsforsikring A/S and Class Counsel
for the Class*

28

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the

CM/ECF system. Those attorneys registered with the Electronic Filing System will

receive notice of this filing by ECF and email. I further certify that a courtesy copy

of this filing will be served upon the Court.

Dated:  March 18, 2024

_s/ James E. Cecchi_
James E. Cecchi

**CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

_Liaison Counsel for the Class_

29